## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION | Case No. 3:25-md-3140-MCR-HTC<br>District Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

## MOTION TO MODIFY AMENDED
## COMMON BENEFIT ORDER NO. 1

Keller Postman ("KP") submits this Motion to Modify Amended Common Benefit Order No. 1, Dkt. 378 ("CBO No. 1"), establishing common benefit preliminary procedures and guidelines.  Most of the order appropriately limits the Court's jurisdiction to plaintiffs who voluntarily choose to benefit from the multidistrict ("MDL") proceedings.  But the Court also presumptively authorizes a holdback from each and every one of an attorney's clients—including ones in state court or in no court at all ("non-MDL cases")—by sheer dint of that attorney representing a client proceeding in the MDL.  Dkt. 378 at 4-5 & n.3.  The CBO sweeps too broadly and should be modified to avoid such overbreadth.

CBO No. 1 purports to bind all "Participating Counsel" to pay a "common benefit assessment . . . on all filed and unfiled cases or claims in state or federal court in which they share a fee interest" if the Court ever "enters an Order establishing a common benefit assessment."  *Id.* at 6.  And all "Participating Counsel are entitled

to receive the MDL common benefit work product as well as any state court work product of those attorneys who are Participating Counsel." *Id.* at 5. The Court's stated sources of authority for the order are the "common benefit doctrine" and the Court's "inherent managerial power." *Id.* at 2-3.

CBO No. 1 applies to "all cases . . . included as part of [the] MDL" and any plaintiff who is represented by Participating Counsel. *Id.* at 4 ("Scope of Order"). "Participating Counsel," in turn, is broadly defined as: (1) counsel who voluntarily signs the Participation Agreement; (2) "all attorneys with a fee interest in any cases pending, later filed in, transferred to, or removed to this Court as part of MDL No. 3140, regardless of whether or not the attorney signs the Participation Agreement, and regardless of whether or not the attorney also has cases outside the MDL (filed or unfiled)"; and (3) attorneys who are not Participating Counsel but access or receive common benefit work product. *Id.* at 4-5. The Order includes a caveat to the second category, but the caveat does *not* alter the definition of Participating Counsel:

> The fact that a case filed by an attorney in state court is removed and then transferred to the MDL does not automatically subject that attorney's non-MDL cases to a common benefit holdback unless the attorney signs a Participation Agreement or otherwise obtains common benefit work product by virtue of involvement or participation in the MDL or participates in a global settlement negotiated by MDL leadership. If, at some future time, the Court enters an Order establishing a common benefit holdback, Plaintiffs Leadership may argue that any unfiled case or a case filed in, transferred in, or removed

to the MDL in fact benefitted from the common benefit work performed in the MDL and should be subject to the common benefit holdback.

*Id.* at 5 n.3.

All told, CBO No. 1 defines Participating Counsel to include all counsel who represent even a single client in the MDL, regardless of whether that counsel takes MDL work product or that client elects to accept a global, MDL-negotiated settlement. And if a case is filed by an attorney in state court and ultimately removed and transferred to the MDL, that Participating Counsel *might* be required to pay a holdback for *all* of the firm's clients who never set foot—voluntarily or involuntarily—in the MDL. *Id.* at 4-5 & n.3. That contingency depends upon whether Plaintiffs' Leadership decides to argue later that those non-MDL cases "in fact benefitted from the common benefit work performed in the MDL." *Id.* at 5 n.3. Not whether counsel took MDL common-benefit work product, but whether the cases benefitted from the MDL's work in any way.

CBO No. 1 exceeds the Court's authority. KP does not dispute that under the appropriate circumstances, a court may assess plaintiffs to pay for the work of leadership counsel. But that authority must come from somewhere. And there are only two recognized sources of that authority: an agreement between the attorneys or the common fund doctrine.

Under the common fund doctrine, a court may order that reasonable fees be deducted from the assets of a common fund it has jurisdiction to oversee. The

doctrine first requires a common fund, typically created as part of a settlement. Without a common fund (e.g., global settlement), a court lacks the authority under the doctrine to tax *anyone*.  Even if there is eventually a common fund, a court's authority is limited to the claimants who actually participate in it.  The common fund doctrine does not permit a court to impose a common benefit tax on claimants that do not collect a slice of the common fund, and it certainly does not permit a court to issue a holdback from claimants that are not in the MDL.  It is legally irrelevant whether those non-MDL claimants are represented by counsel who made an appearance for an MDL plaintiff.

The Court's "inherent authority" likewise does not authorize the CBO's overbreadth here.  An MDL court has broad discretion to coordinate and administer its docket, but inherent managerial power does not permit the Court to derogate *substantive rights* such as private property or contract.  The Court does not have the inherent power to fundamentally alter the substance of KP's contracts with its clients.  Even if "inherent authority" did permit the Court to alter substantive rights, it provides authority only over *this* Court's docket, not every docket in every court in which a lawyer happens to appear.  It is not a license to claim jurisdiction over cases not before this Court.  It is once again irrelevant that *counsel* who represents an MDL plaintiff also represents other unfiled clients or clients who pursued their cases in other courts.  Counsel is appearing in this Court as a fiduciary and an agent

for specifically identified clients. That appearance does not empower the Court to order counsel to do anything with respect to its many other clients, whether they have similar types of injuries in state court or allege antitrust or privacy claims in arbitration.

The Court may assess non-MDL cases if the claimants (or their lawyers on their behalf) consent to pay a common benefit assessment through a Participation Agreement, and that agreement is incorporated into a Court order. But any agreement must be both knowing and voluntary. Simply representing a client that is in the MDL cannot be "deemed" consent. KP has not signed the Participation Agreement and has no intention of doing so. Keller Decl. ¶ 15.

This matter is both ripe and timely. KP has a client whose case is in the MDL. That case was filed in state court, removed by defendants (over KP's objection), and ultimately transferred to the MDL. After that transfer, KP is defined as Participating Counsel. *See* Dkt. 378 at 4. It is true that CBO No. 1's footnote means KP's clients *might* avoid a holdback in the future. *See id.* at 5 n.3. But that *potential* does not allow KP's clients to understand their rights today and creates an unfair disadvantage that is immediate and palpable. Participating Counsel are entitled to common-benefit work product, with the quid pro quo that they expressly agree to pay any Court-awarded assessment in the future. But CBO No. 1 treats KP as Participating Counsel who is *eschewing* the benefit of common-benefit work product, and yet its

non-MDL clients *may still* be required to pay an assessment. KP's clients should not be required to wait years to determine if they will be required to give a quo without receiving any quid.

Undersigned counsel spent considerable effort attempting to negotiate this modification with Plaintiffs' Leadership prior to filing this motion. *See* Declaration of Ashley Keller ("Keller Decl.") ¶¶ 4-13. Plaintiffs' Leadership was initially receptive, and claimed it had no intention of seeking a common benefit unless (a) KP took common-benefit work product or (b) had clients participate in an MDL-negotiated global settlement. *Id.* ¶ 7. Leadership initially took the view that the CBO No. 1 only authorized an assessment under those scenarios. *Id.* But Leadership recently communicated that it could read the order as KP does and could envision scenarios where it would seek to enforce the order to the maximum extent possible. *Id.* ¶ 13. Reserving that power necessarily subjects clients, presently, to an order that overreaches. KP has the right to object now before any further judicial action is taken.

## BACKGROUND

Keller Postman began investigating the connection between Depo-Provera and meningioma in early 2024, and began filing cases on behalf of its clients in state courts across the country in late 2024, before this MDL was formed. Keller Decl. ¶ 2. One such client is Ms. Vicki Daniels. Ms. Daniels filed a complaint in the Circuit

Court of St. Clair County, Illinois on December 31, 2024.  Dkt. 1-1, *Daniels v. Pfizer,*

*Inc.*, No. 3:25-cv-00798-MCR-HTC (N.D. Fla. Feb. 7, 2025).  In February 2025,

Defendants removed Ms. Daniels's case to the Southern District of Illinois.  *Id.* at

Dkt. 1.  Ms. Daniels moved to remand her case back to state court, *id.* at Dkt. 6, but

it was ultimately transferred, over Ms. Daniels's objection, to this Court by the

Judicial Panel on Multidistrict Litigation, *id.* at Dkt. 1.  Ms. Daniels is the only client

represented by KP whose case has been consolidated into this MDL.

At all times, KP has sought to move Ms. Daniels's case forward, and has done

so with its other clients who have cases filed in other state courts, including

California and Pennsylvania.  KP has engaged multiple experts, completed briefing

on initial motions, served discovery, and begun the monumental task of reviewing

millions of pages of documents produced by defendants.  In other words, KP is

pursuing its clients' cases, and working them up, diligently and completely.  KP is

not relying on the work of Plaintiffs' Leadership, or "free riding."

## ARGUMENT

### A. The Common Fund Doctrine

The "American Rule" generally holds that each party is responsible for the

fees charged by her retained counsel.  *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,

421 U.S. 240, 259, 264-65 (1975); *In re Roundup Prods. Liab. Litig.*, 544 F. Supp.

3d 950, 958 (N.D. Cal. 2021).  MDL leadership often ask courts to enter common

benefit orders for purposes of equity and so-called "free riding," but authority for a common benefit order "'must actually come from somewhere.'"  *In re Hair Relaxer Mktg. Sales Pracs. & Prods. Liab. Litig.*, No. 23-cv-0819, 2024 WL 3904650, at *3 (N.D. Ill. Aug. 22, 2024) (quoting *Roundup*, 544 F. Supp. 3d at 960).  There are only two sources of authority on which to base a common benefit order: the common fund doctrine or voluntary agreement of the parties.[1]

The "common fund doctrine" is rooted in the common law of trust but has increasingly become the trend in MDLs.  *Roundup*, 544 F. Supp. 3d at 958; *Hair Relaxer*, 2024 WL 3904650, at *3; *see also Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) (awarding reasonable compensation to attorneys that represented successful creditor who recovered property taken under control of the court and administered for all to share); *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881) (allowing single bondholder to recover his attorneys' fees from common fund); *see also Johnson vs. NPAS Solutions, LLC*, 975 F.3d 1244, 1255-56 (11th Cir. 2020) ("*Greenough* and *Pettus* are the seminal cases establishing the rule . . . that attorneys' fees can be paid from a 'common fund.'").  "The common fund exception recognizes that a plaintiff who litigates and recovers a specific piece of property or pot of money—one that benefits a discrete group of people in addition to themselves—is entitled to reasonable attorneys' fees from that recovery."  *Roundup*,

---

[1] Voluntary agreement of the parties is discussed *supra* Section C.

544 F. Supp. 3d at 958.  "Such reimbursement works to spread the plaintiff's fees and costs proportionately among those who benefited from the lawsuit, preventing the plaintiff from shouldering the entire cost of litigating alone."  *Id.*

But the Eleventh Circuit has rejected an expansive interpretation of the common fund doctrine, *see NPAS*, 975 F.3d at 1259, and the common fund doctrine applies only if the litigation "results in a settlement where the defendant establishes a fund for paying claims made by similarly situated people."  *Id.* at 959.  The "[C]ourt's authority over a common fund 'comes from the equitable jurisdiction that the district court exercises over the fund, by way of the litigation.'"  *Hair Relaxer*, 2024 WL 3904650, at * 3 (quoting *Roundup*, 544 F. Supp. 3d at 959)).  Here, there is as of yet no discrete "fund or property" created from which counsel fees could be paid.  *Roundup*, 544 F. Supp. 3d at 959 (requiring the creation of "some fund or property interest" to be "established as a result of a victory" for the common-fund doctrine to apply); *see also Turner v. Murphy Oil USA, Inc.*, 422 F. Supp. 2d 676, 680 (E.D. La. 2006) (recognizing that to receive fees based on the common fund doctrine, the attorney must "create, preserve, protect, increase, or discover a common fund").  Nor is the Court's Common Benefit Order contingent on claimants participating in such a fund.

**B. The Court's Common Benefit Order Exceeds Its Authority.**

The common-fund doctrine does not permit the Court to tax cases that do not benefit from a common fund, and it does not permit the Court to issue a holdback from non-MDL cases (either unfiled or filed in other courts) that do not participate in a common fund settlement. Likewise, the Court's inherent authority neither permits it to alter substantive rights nor expands the Court's jurisdiction to non-MDL cases. *In re Genetically Modified Rice Litig.*, 764 F.3d 864, 874 (8th Cir. 2014) ("Even if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and [the defendant]." (emphasis in original)); *Hair Relaxer*, 2024 WL 3904650, at *2 ("The Court's jurisdiction does not extend to cases that are not actually before it even if the plaintiffs in those cases might benefit from work performed in the MDL."); *Roundup*, 544 F. Supp. 3d at 964.

**1. The Common Fund Doctrine Does Not Support Taxing Cases that Do Not Participate in a Common Fund.**

If there is eventually a common fund, the common fund doctrine would at most support assessing claimants who *participate* in the common fund. *See Roundup*, 544 F. Supp. 3d at 959; *Hair Relaxer*, 2024 WL 3904650, at * 3. But here, CBO No. 1 sweeps more broadly because it applies to "all cases now pending, . . . later filed in, transferred to, or removed to this Court." Dkt. 378 at 4. If, for example,

a case is filed in the MDL but settled before any MDL settlement, it does not benefit

from the common fund and cannot be taxed under the common fund doctrine.

When applied to plaintiffs with cases filed in non-MDL courts or claimants

with unfiled cases, "any plausible support from the common fund doctrine

disappears entirely—the court is exercising authority over disputes that are not

before it and over property that is not before it, without any clear limit on the court's

reach." *Roundup*, 544 F. Supp. 3d at 963. Anticipating that a common fund will

exist can only serve as a source of potential authority over claimants who directly

benefit from it. By definition, that does not include claimants with non-MDL cases

who choose *not* to participate in an MDL-administered settlement. That those

claimants may have the same counsel as clients who may (but may not) participate

in an MDL-administered settlement does not make *them* beneficiaries of the

common fund.

Yet CBO No. 1 applies to all clients of "Participating Counsel," which

includes: "all attorneys with a fee interest in any cases pending, later filed in,

transferred to, or removed to this Court," and "attorneys who were not otherwise

Participating Counsel but who obtain access to or receive the common benefit work

product of MDL No. 3140." Dkt. 378 at 4-5. Being represented by an attorney who

simply has a "fee interest" in a *different* case in the MDL, or by at attorney who

accesses "common benefit work product" is not enough to justify a holdback based

11

on the common fund doctrine. *See Roundup*, 544 F. Supp. 3d at 965 (explaining that "it does not matter for purposes of assessing the scope of an MDL court's authority to reach nonparties" if the "common benefit work performed in the MDL paved the way for plaintiffs with state court cases"); *cf. Genetically Modified Rice Litig.*, 764 F.3d at 874 ("[E]quity is insufficient to overcome limitations on federal jurisdiction.").

The Court's addition of a footnote does not fix the problem. *Compare* Dkt. 378 at 5-6 (defining Participating Counsel to indisputably include counsel with a case transferred into the MDL and noting that all Participating Counsel must pay any future assessment on all filed and unfiled cases), *with id.* at 5 n.3 (noting that having a case "transferred to the MDL does not automatically subject that attorney's non-MDL cases to a common benefit holdback," but leaving the definition of Participating Counsel unchanged). CBO No. 1 now purports to leave the decision to Plaintiffs' Leadership about whether having a case transferred to the MDL subjects that attorney's non-MDL clients to a common benefit holdback, depending on whether that counsel "in fact benefitted from the common benefit work performed in the MDL and should be subject to the common benefit holdback." *Id.* at 5 n.3. The law does not afford Leadership that optionality. An incidental benefit from "common benefit work performed in the MDL" is woefully insufficient to warrant a departure from the American Rule. *See Roundup*, 544 F. Supp. 3d at 965. And now,

KP cannot know whether it is forgoing the benefits of being Participating Counsel until the game is already over, when it is too late to benefit from the MDL work product it is deliberately not taking or to submit time for reimbursement.

The common fund doctrine only applies to claimants who benefit from a common fund. Practically speaking, if KP reaches a settlement (or judgment) for its clients *before* the MDL reaches any settlement, the KP settlement could not plausibly be part of a "common fund" overseen by this Court. Likewise, if Plaintiffs' Leadership negotiates a settlement that does not include state-court plaintiffs, the state-court plaintiffs could not be part of a common fund in which they are ineligible to participate.[2] Yet, CBO No. 1 purports to bind those non-MDL claimants in both scenarios, perhaps at Plaintiffs' Leadership's discretion. Assessing entirely separate recoveries under the guise of the common fund stretches that doctrine past its breaking point. *Roundup*, 544 F. Supp. 3d at 963.

## 2. The Court's Inherent Authority Does Not Empower the Court to Modify Substantive Rights or Assess Cases Outside the MDL.

A district court is empowered to manage its docket for the "orderly and expeditious disposition of cases." *Dietz v. Bouldin*, 579 U.S. 40, 45 (2016) (internal quotation marks omitted). "It has long been understood that certain implied powers

---

[2] Conversely, if a non-MDL claimant joins a global settlement, she can be taxed under the common fund doctrine even if her counsel is not a Participating Counsel as defined in CBO No. 1.

must necessarily result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (cleaned up). But a court's inherent authority is limited. The Eleventh Circuit addressed this limitation in *NPAS*: there, class counsel argued for an incentive award for a class representative based on equity and ubiquity. 975 F.3d at 1259-60. The Eleventh Circuit examined the contours of the common fund doctrine and found that service awards were outside that authority. The court then rejected the argument that the award should still issue because it would be equitable and is common practice, noting that although incentive awards might be common, "that state of affairs is a product of inertia and inattention, not adherence to law." *Id.* at 1260. Because there was no independent authority for the award, the Eleventh Circuit reversed the district court.

As relevant here, a court's inherent authority extends only to procedural matters and cannot be used to modify *substantive* rights of plaintiffs. Even if inherent authority did permit the Court to modify substantive rights, a court does not have inherent authority over cases that are not before it.

### a. Courts have inherent authority over procedural matters, but not to alter substantive rights.

Docket management is entirely procedural. *See e.g.*, *Chambers*, 501 U.S. at 44 (cataloguing various inherent procedural powers that courts may exercise). For

example, if two cases allege the same type of injury, a court may decide which goes to trial first and need not apply a first-to-file rule. A court may decide whether to hold a *Daubert* hearing and what format the hearing will follow. A court may decide how many days a trial should last—and how the time should be allocated between the various parties. An MDL court may appoint leadership, set deadlines, use the contempt power if necessary for discipline, all to manage the litigation and bring it to a close. And a court may do each of these things even though there is no statute, rule, or common-law doctrine that explicitly says (for example): "a court may decide how long a trial will last." That is why the authority is "inherent" rather than explicit. *See Dietz*, 579 U.S. at 45 ("[The rules] make no provision, for example, for the power of a judge to hear a motion in limine, a motion to dismiss for forum non conveniens, or many other standard *procedural devices* trial courts around the country use every day." (emphasis added)).

What a court may not do in the name of inherent authority is change the *substantive* law governing the relationship between the parties. This includes the *substantive* contract right between an attorney and its client. A court may not rely on its inherent authority to order a client to pay one attorney even though she chose to hire a different attorney. That authority must come from somewhere else, especially where the client is not even before the court, but instead proceeding beyond the tribunal's jurisdiction.

15

CBO No. 1 purports to bind *counsel* and not *plaintiffs*, but counsel are not parties, and appearing in court to represent a particular party is not a license for a court to alter an attorney's contractual arrangements with anybody, let alone clients who the attorney is *not* appearing for. Attorneys are fiduciaries and agents for their clients. When an attorney negotiates a settlement that a client accepts, *all* the settlement proceeds belong to the client. The client then pays the attorney out of those funds pursuant to their contractual arrangement, subject to all the ethical restraints, fiduciary duties, and background contract principles that govern retention agreements. Some attorneys negotiate hourly-fee contracts with their clients; others negotiate contingency-fee contracts. But unless and until the clients pay their lawyers under this arrangement, the settlement dollars belong to the clients. *See, e.g.*, *Kenseth v. C.I.R.*, 259 F.3d 881, 883-84 (7th Cir. 2001) (a contingent-fee lawyer is not an owner of his client's claim).[3] If there is a dispute, all the funds must be escrowed in an account *holding only client funds. See* Ill. R. Pro. Conduct R. 1.15 (eff. July 1, 2023); R. Regulating Fla. Bar Rule 5-1.1. The Court's order, therefore, purports to modify private contractual rights: to require KP clients who chose to hire KP to pay a fee to other "Participating Counsel," presumably Plaintiffs' Leadership,

---

[3] In theory, some claimants who have counsel with cases in the MDL could have chosen to hire their attorneys based on an hourly-fee schedule. CBO No. 1 would still bind those claimants to pay an assessment, even though a future settlement would belong to the clients (and none of it to their attorneys).

lawyers they have never heard of let alone retained. There is no authority for such sweeping relief.

Of course, an attorney can agree to pay a portion of what she is owed per the contingency agreement with her client. The order is on solid ground announcing its power to enforce the bargain of the Participation Agreement: in exchange for Plaintiffs' Leadership's assistance and work product, attorneys agree to pay a court-ordered common-benefit assessment. But KP has *not* signed the Participation Agreement. Without a contractual promise to pay an assessment, "inherent authority" is not available to alter KP's contractual rights with *any* of its clients, *particularly* the ones who have never set foot in the MDL.

### b. Assuming a court does have inherent authority to alter substantive rights, that authority extends only to cases before the court.

Assuming arguendo that the Court's inherent authority extends beyond procedure and confers power to alter substantive rights and hold back funds from litigants, that authority is limited to those cases actually before the Court. *See Roundup*, 544 F. Supp. 3d at 962. The Court's authority to manage this litigation "does not alter the inherent limits on a district court to manage only *its* docket at the exclusion of cases beyond the MDL." *Hair Relaxer*, 2024 WL 3904650, at *4 (emphasis added); *Roundup*, 544 F. Supp. 3d at 963 ("Under [inherent authority], district courts merely have the power to manage 'their' dockets."); *see also In re Genetically Modified Rice Litig.*, 764 F.3d at 874 ("Thus, notwithstanding 28 U.S.C.

§ 1407, the district court does not have the power to order parties in cases not before it to contribute to the Fund.").[4]

Every Court of Appeals to consider the issue has rejected inherent authority as a justification for assessing non-MDL claimants who did not voluntarily agree to participate in the MDL. In *Genetically Modified Rice Litigation*, lead counsel argued that an assessment could be withheld by the defendant or paid by the state-court plaintiffs' counsel (and not the plaintiffs themselves), who were also counsel to plaintiffs in the MDL. 764 F.3d at 874. The Eighth Circuit rejected this argument, holding that the "state-court plaintiffs at issue neither agreed to be part of the federal MDL nor participated in the MDL Settlement Agreement. Even if the state plaintiffs' *attorneys* participated in the MDL, the district court overseeing the MDL does not have authority over separate disputes between state-court *plaintiffs* and [the defendant]." *Id.* (emphasis in original). The Eighth Circuit affirmed that "the authority for consolidating cases on the order of the judicial panel on multi-district litigation is merely procedural and does not expand the jurisdiction of the district court to which the cases are transferred." *Id.* at 873 (quoting *In re Showa Denko*

---

[4] *In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1008, 1012-21 (5th Cir. 1977) and Dkt. 378 at 2-3, holds that courts have the power to award compensation to lead counsel from other plaintiff counsel with cases "pending before the court," *id.* at 1018; *see also id.* at 1010 n.5, but largely relies on common-fund cases. The court did not address whether that authority extends to cases not before it. *Id.* ("[W]e accordingly do not specifically consider the authority of the district court to assess a fee in cases not formally before it.").

*K.K. L-Tryptophan Prods. Liab. Litig. II*, 953 F.2d 162, 165 (4th Cir. 1992) (cleaned up)).  Even if equity supported taxing plaintiffs' counsel who benefited from MDL leadership's work, "equity is insufficient to overcome limitations on federal jurisdiction."  *Id.* at 874.

And although not directly discussing inherent authority, the Fourth Circuit recognized that 28 U.S.C. § 1407 provides a procedure for transferring cases to a single district for coordinated pretrial proceedings, but "[a]s in any other case, a transferee court's jurisdiction in multi-district litigation is limited to cases and controversies between persons who are properly parties to the cases transferred."  *Showa Denko*, 953 F.2d at 165-66.  "Claimants who have not sued and plaintiffs in state and untransferred federal cases have not voluntarily entered the litigation before the district court nor have they been brought in by process.  The district court simply has no power to extend the obligations of its order to them."  *Id.* at 166.

The Ninth Circuit reached the same conclusion.  *See Hartland v. Alaska Airlines*, 544 F.2d 992, 1001-02 (9th Cir. 1976); *see also In re Bard IVC Filters Prod. Liab. Litig.*, 81 F. 4th 897, 909-11 (9th Cir. 2023) (holding that non-MDL cases may be taxed when those claimants' counsel voluntarily enter a participation agreement but noting the "unremarkable proposition that a district court lacks authority to order assessments against the recoveries of claimants who are 'complete strangers' to the MDL the court is managing").  In *Hartland*, an MDL court required a holdback from

a state-court plaintiff and an unfiled claimant. 544 F.2d at 1001. Upon review, the Ninth Circuit issued a writ of mandamus to correct this "usurpation of power" and ordered the holdbacks returned to the non-MDL claimants. *Id*. The court held that the MDL court "had not even a semblance of jurisdiction" to order non-litigants to contribute to a common benefit fund. *Id.*; *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 765 (9th Cir. 1977) (holding that unfiled claimant who negotiated her own settlement could not be taxed by the MDL); *Roundup*, 544 F. Supp. 3d at 964 ("It's one thing to require holdbacks in your own cases for the purpose of ensuring those cases are litigated and adjudicated properly; it's quite another to insist that you need to manage your docket by issuing orders affecting disputes that are not before you.").

This authority is persuasive and unrebutted at the appellate level. The Eleventh Circuit would surely follow it. Inherent authority thus does not justify CBO No. 1.

## C. KP Has Not Voluntarily Consented to a Common Benefit Assessment.

Counsel can agree to pay a common-benefit assessment through a Participation Agreement; if the court incorporates such an agreement into a court order, the court then has authority to enforce the bargain. *See Bard IVC Filters*, 81 F.4th at 906-07. "When a district court incorporates the terms of an agreement into a court order, a breach of the agreement would be a violation of the order." *In re*

*Avandia Mktg., Sales Pracs. & Prods. Liab. Litig.*, 617 F. App'x 136, 143 (3d Cir. 2015) (quotation omitted); *see also Bard IVC Filters*, 81 F. 4th at 911 (concluding that when counsel for non-MDL cases "knowingly and voluntarily" enters into an agreement to pay common benefit fees in exchange for access to common benefit work, counsel cannot complain the court "lacked authority to enforce its orders incorporating that agreement"). But such an agreement must be made "knowingly and voluntarily." *Id.* And, generally, agreements create continuing obligations on both sides—e.g., paying assessments in return for access to common benefit work product. *Avandia*, 617 F. App'x at 142.

KP has not signed the Participation Agreement. Keller Decl. ¶ 14. It has made no promise to Plaintiffs' Leadership that it will pay assessments, and Plaintiffs' Leadership has not promised KP that it will share common benefit work product. KP cannot be "deemed" to voluntary consent to such an agreement simply because one of its client's cases was removed and transferred to the MDL. Furthermore, lawyers owe each and every client an individual duty of diligence, which includes pursuing a matter as necessary to vindicate a client's cause and acting within the client's best interests. *See* Ill. R. Pro. Conduct R. 1.3 (eff. Jan. 1, 2010); R. Regulating Fla. Bar R. 4-1.3. If a lawyer determines that its client's interests would be best served by filing her claim in federal court, that cannot subject the lawyer to an involuntary agreement with respect to the common benefit assessment. In other

words, an MDL court cannot condition access to federal court for one plaintiff on that plaintiff's lawyers agreeing to place within the MDL court's jurisdiction all the clients it represents. Voluntary agreement cannot justify the breadth of CBO No. 1.

**D. This Dispute Is Ripe and Timely.**

This matter is ripe. KP filed a client's case in Illinois state court that was removed by defendants and ultimately transferred to the MDL. Dkt. 1-1, *Daniels v. Pfizer, Inc.*, No. 3:25-cv-00798-MCR-HTC (N.D. Fla. Feb. 7, 2025). At that point, KP involuntarily became a "Participating Counsel" pursuant to CBO No. 1 because it has a fee interest in a case transferred to this Court as part of MDL No. 3140. Dkt. 378 at 4. CBO No. 1 states that KP's non-MDL cases *might* not automatically be subject "to a common benefit holdback unless [KP] signs a Participation Agreement or otherwise obtains common benefit work product by virtue of involvement or participation in the MDL." *Id.* at 5 n.3. But that contingency does not alter the definition of Participating Counsel, which KP is under the order as written. And it is a second-class Participating Counsel. If it takes common-benefit work product, all of its cases *will* be subject to a holdback. If it forgoes common-benefit work product, all of its cases *might* be subject to a holdback. That uncertainty has a direct and tangible impact on KP and its clients today.

KP is forgoing MDL work-product that Participating Counsel are entitled to, and the benefit of the bargain must be that its clients are definitively not subject to a

holdback.  KP believes, based on the decisions of every court of appeals to address the issue, that it should not be improperly defined as a Participating Counsel.  Keller Decl. ¶ 15.  As such KP will not submit time and expense reports to the Common Benefit Special Master, *id.*, and KP's work surely will not be authorized by Lead Counsel, both of which would be required for KP to seek reimbursement of this work.

This motion is timely.  KP raised this issue with Plaintiffs' Leadership before its client was removed to federal court, and Leadership asked KP to wait to file a motion until they could raise the issue with the Court.   Keller Decl. ¶¶ 5, 7, 9.  KP provided Leadership with proposed revisions to CBO No. 1 that it would have found sufficient to avoid the need for this motion, but those revisions were not incorporated into CBO No. 1.  *Id.* ¶ 10.  After the Court amended CBO No. 1 more narrowly, KP sought to avoid burdening the Court and asked Leadership to agree privately to not exercise its option under CBO No. 1, footnote 3.  *Id.* ¶ 12.  Despite initially telling KP that they would make such an agreement, Leadership thereafter refused, instead reserving their right to argue that KP's non-MDL cases benefitted from the common benefit work performed in the MDL and should be subject to the common benefit holdback.  *Id.* at ¶ 13.

KP does not dispute that this Court has the authority to order payments to MDL leadership out of a global settlement (regardless of whether the claimant was

filed in the MDL or represented by Participating Counsel), or that it has the authority to enforce agreements made by counsel regarding their non-MDL cases that are incorporated into a Court order. But the Court may not tax a case that does not participate in such a settlement absent a claimant's counsel agreeing to the tax. And the Court may not tax all of an attorney's non-MDL cases simply because that attorney represents an unrelated client whose case is in the MDL. Neither the common benefit doctrine, nor the Court's inherent authority permit the Court to exercise jurisdiction over non-MDL cases. The Court should modify CBO No. 1 to state that a tax may be held back only on cases participating in a common fund settlement or from counsel who voluntarily sign a participation agreement.

## CONCLUSION

Amended CBO No. 1 should be modified to only apply to claimants who benefit from any future common fund or from counsel who voluntarily sign a participation agreement.

Dated: August 8, 2025

Respectfully submitted,

KELLER POSTMAN LLC

By: */s/ Ashley Keller*
Ashley Keller (FL Bar #1029118)
ack@kellerpostman.com
2333 Ponce de Leon Blvd., Suite R240
Coral Gables, FL 33134
Telephone: (312) 741-5220
Facsimile: (312) 971-3502

Nicole C. Berg (IL Bar #6305464)
ncb@kellerpostman.com
Ashley Barriere (IL Bar #6340155)
ashley.barriere@kellerpostman.com
150 N. Riverside Plaza, Suite 4100
Chicago, IL 60606

Warren D. Postman (DC Bar #995083)
wdp@kellerpostman.com
John J. Snidow (DC Bar #1531799)
jj.snidow@kellerpostman.com
John M. Masslon II (DC Bar #1631595)
john.masslon@kellerpostman.com
1101 Connecticut Ave. NW, Suite 1100
Washington, DC 20036

*Attorneys for Plaintiff*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (B), (C)**

The undersigned hereby certifies that between May 2025 and July 2025, Keller Postman conferred with members of Plaintiffs' Leadership, including Plaintiffs' Lead Counsel on the issues raised in this Motion.  Counsel for Plaintiff and Plaintiffs' Leadership were unable to agree on a resolution.

*/s/ Ashley Keller*
Ashley C. Keller

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (F)**

I hereby certify that this Motion and memorandum in support contains 6,024 words and complies with the Court's Local Rule 7.1(F).

*/s/ Ashley Keller*
Ashley C. Keller

**CERTIFICATE OF SERVICE**

I hereby certify that on August 8, 2025, I caused the foregoing Motion to Modify Amended Common Benefit Order No. 1 to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Ashley Keller*
Ashley Keller