UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Cases | Case No. 3:25-md-3140<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

**PLAINTIFFS' LEADERSHIP COUNSEL'S OPPOSITION TO KELLER POSTMAN'S MOTION TO MODIFY AMENDED COMMON BENEFIT ORDER NO. 1**

Keller Postman LLC ("KP"), a non-Plaintiffs' Leadership law firm with one case in the MDL, filed a Motion to Modify Amended Common Benefit Order No. 1, ECF No. 378 ("CBO No. 1"), on the ground that CBO No. 1 "exceeds the Court's authority." ECF No. 399 at 3. Not so. CBO No. 1 imposes no assessment or holdback on any recovery—it is a procedural, docket-management, case-management order that falls well within the limits of the Court's inherent managerial power. *See In re Air Crash Disaster at Fla. Everglades*, 549 F.2d 1006, 1008, 1012–21 (5th Cir. 1977)[1]; *In re Diet Drugs*, 582 F.3d 524, 546–47 (3d Cir. 2009); *In re Vioxx Prods. Liab. Litig.*, 802 F. Supp. 2d 740, 770 (E.D. La. 2011).

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) (adopting the case law of the former Fifth Circuit before October 1, 1981, as precedent in this Circuit).

1

KP's Motion was denied without prejudice on the basis that KP's objections to CBO No. 1 are neither timely nor ripe. ECF No. 400. Plaintiffs' Leadership Counsel respectfully submit this Opposition to note their objections to KP's Motion, *see* ECF No. 400 at 2 n.1, which presents an incorrect and overly circumscribed view on the Court's authority to compensate common benefit work performed by court-appointed counsel in consolidated litigation.

First, KP's assertion that CBO No.1 is *ultra vires* is unfounded. KP concedes that a court may assess plaintiffs' counsel to pay for the work performed by court-appointed leadership counsel, but asserts that such assessments are limited to particular circumstances inapplicable in their case. *See* ECF No. 399 at 3. KP's motion, however, ignores the fact that CBO No. 1 assesses no one. No holdback is imposed, and no common benefit fund is allocated or created. Absent a mischaracterization of CBO No. 1's effects, there is no question that CBO No. 1 is a proper exercise of this Court's inherent managerial authority to establish rules and procedures for tracking for time and expenses and potential future compensation for common benefit work in this MDL, the same type of order KP, when appointed to MDL leadership, has implemented.

Second, while the existence and specifics of any future holdback or common benefit fund remain to be determined, "[t]he [common benefit] doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to

its cost are unjustly enriched at the successful litigant's expense." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). KP misstates the law by asserting that the Court's authority to impose assessments on recoveries is limited to only (1) cases that participate in a common fund settlement, or (2) counsel who voluntarily sign a participation agreement. To the contrary, well-settled, binding precedent supports the Court's authority to levy an assessment and compensate counsel who perform common benefit work beyond circumstances where a case participates in a common fund settlement, and certainly encompasses an assessment of fees from all cases in an MDL. *See Mills v. Electric Auto–Lite Co.,* 396 U.S. 375 (1970) ("The fact that this suit has not yet produced, and may never produce, a monetary recovery from which the fees could be paid does not preclude an award based on this rationale"); *In re Air Crash Disaster*, 549 F.2d at 1018 ("In the present case there is not a fund in the sense of identified items already in the hands of a court appointee, but this is not a necessity."). Consent, in the form of a signed participation agreement, likewise provides a valid basis for imposing a common benefit assessment, but the Court's authority also permits a holdback in circumstances where counsel access and use MDL common benefit work product to obtain a recovery. *See In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d 170, 188 (S.D.N.Y. 2020).

Accordingly, KP's claim that CBO No. 1's definition of Participating Counsel must be limited to two categories should be rejected. Whether the Court has the

3

power to validly assess a particular case or counsel may, for non-MDL cases, depend on the ultimate nature of the relationship between that case and the MDL. But there is nothing improper about CBO No. 1 including both counsel with MDL and non-MDL cases and non-Participating Counsel who access and use MDL common benefit work product in the definition of Participating Counsel. In particular, although CBO No. 1 merely sets forth procedures for potential Participating Counsel to track time and expenses for possible future reimbursement, courts imposing assessments have repeatedly concluded that their equitable and inherent authority permits assessments from these categories of counsel. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804-DAP, ECF No. 4428 (May 9, 2022), at 11 (attached as Ex. A) (identifying categories of plaintiffs and counsel assessed).

## ARGUMENT

**I.      CBO No. 1 is a Proper Exercise of This Court's Authority.**

While the Court has already correctly denied without prejudice KP's Motion as untimely, ECF No. 400, an evaluation of KP's claim that CBO No. 1 "exceeds the Court's authority," ECF No. 399 at 3, must begin with what CBO No. 1 actually provides.

CBO No. 1 sets forth "preliminary procedures and guidelines" for "potential," "future applications" for common benefit fees and/or expenses. ECF No. 378 at 1 ("This Order merely provides guidance so that, should the issue become ripe, any

attorneys applying for common benefit fees and/or expenses will have notice of the standards that will be employed in assessing those applications."). CBO No. 1 defines common benefit work product, *id.* at 3-4, and establishes how Counsel, whether Participating or Non-Participating, may access the common benefit work product of the MDL. *Id.* at 4-6. CBO No. 1 also directs Court-appointed leadership to create a Litigation Fund to hold the assessments necessary to fund common benefit activity in the litigation, defines appropriate "Shared Costs" that may be paid from that fund, and provides rules and guidelines on the work and expenses that may be eligible for reimbursement in the future. *Id.* at 6-24. Relevant here, CBO No. 1 orders no assessment or holdback on a future recovery from any case.

It is beyond dispute that it is within the Court's authority to establish rules and procedures to establish the metes and bounds of common benefit work that may at some future date be eligible for common benefit compensation. "A district court that supervises a multidistrict litigation 'has—and is expected to exercise—the ability to craft a plaintiffs' leadership organization to assist with case management,'" including "'the power to fashion some way of compensating the attorneys who provide class-wide services.'" *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 617 F. App'x 136, 141 (3d Cir. 2015) (quoting *In re Diet Drugs*, 582 F.3d at 547); *see In re Air Crash Disaster*, 549 F.2d at 1016; *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128-30 (2d Cir. 2010) (Kaplan, J., concurring) ("There is a

5

"desirability—indeed, the compelling need—to have pretrial proceedings managed or at least coordinated by lead counsel or a steering or executive committee [which] demands the existence of a source of compensation for their efforts on behalf of all."); Manual for Complex Litigation, 4th § 22.62 (discussing that during process for selecting and organizing lead counsel, judges can establish guidelines for reporting time and expenses among other requirements).

Accordingly, it appears KP's putative objection arises not from CBO No. 1 itself, but rather from a misreading of the Order. Specifically, KP claims that CBO No. 1 "sweeps too broadly" because it "presumptively authorizes a holdback from each and every one of an attorney's clients." ECF No. 399 at 1. In support, KP misquotes CBO No. 1, saying it "purports to bind all 'Participating Counsel' to pay a 'common benefit assessment . . . on all filed and unfiled cases or claims in state or federal court in which they share a fee interest' if the Court ever 'enters an Order establishing a common benefit assessment.'" ECF No. 399 at 1 (quoting CBO No. 1 at 6) (ellipses in ECF No. 399). But this quotation is inaccurate, it modifies the language from CBO No. 1 and alters its meaning. CBO No. 1 in fact says:

> Participating Counsel and Non-Participating Counsel *who access or receive the common benefit work product of the MDL pursuant to a written agreement with leadership counsel agree that*, if at some future point the Court enters an Order establishing a common benefit assessment, that assessment must be paid on all filed and unfiled cases or claims in state or federal court in which they share a fee interest.

CBO No. 1, ECF No. 387 at 6 (emphasis added).

6

Therefore, despite repeatedly conceding that courts may assess non-MDL cases if the claimants or their lawyers provide written consent to a participation agreement incorporated into a Court Order, e.g. ECF No. 399 at 5, 20, KP's Motion, through the selective use of ellipses and snippet re-organization, elides the limitation in the text of the supposedly offending portion of CBO No. 1's text that expressly restricts applicability to those "who access or receive the common benefit work product of the MDL pursuant to a written agreement with leadership counsel." CBO No. 1, ECF No. 387 at 6. A re-writing of the Court's Order does nothing to validate KP's objection. KP simply cannot contort CBO No. 1 into imposing a presumptive holdback or purported common benefit assessment that does not exist in the Order.

With no assessment imposed on any case (MDL or non-MDL), all that remains is KP's complaint that the order applies to cases in the MDL as well as to "Participating Counsel," a term defined to include (1) attorneys who sign the Participation Agreement, (2) MDL Plaintiffs' Counsel (regardless of whether the attorney also has cases outside the MDL, and (3) attorneys who obtain access to the common benefit work product of the MDL. ECF No. 399 at 2-3 (citing CBO No. 1 at 4-5). Here again, KP's motion misrepresents CBO No. 1, claiming the Order "applies to any plaintiff who is represented by Participating Counsel." *Id.* at 2. In this way, KP's attempt to re-write CBO No. 1 as imposing obligations on non-MDL cases through the definition of Participating Counsel misses the mark. CBO No. 1,

however, imposes no holdback on any case, and "merely provides guidance" so that the attorneys who may choose to apply for common benefit fees or expenses have notice of the standards that will be employed in assessing those future applications. CBO No 1, ECF No. 378 at 1. There is nothing improper with an MDL court setting forth rules for counsel appearing before it—including MDL Counsel and Non-Participating Counsel accessing MDL common benefit work product pursuant to a written agreement—so that Counsel (not any individual plaintiffs) have notice of how they may seek compensation for common benefit work and expenses should they choose to do so.[2]

## II. Although Its Objections Are Not Ripe, KP Misstates the Court's Authority to Impose Assessments.

KP argues that courts only have the power to assess common benefit fees from two categories of cases: (1) cases that participate in a common fund settlement, and (2) cases who consent. ECF No. 399 at 24 (arguing "[T]he Court may not tax a case that does not participate in [a global] settlement absent a claimant's counsel agreeing to the tax."). But neither the common benefit doctrine nor a district court's inherent

---

[2] Such basic, procedural guidance is recognized not only by black letter caselaw, but also in the common benefit orders entered in MDL's where KP partners and associates have been appointed to leadership positions, including *3M Combat Arms*, MDL 2885; *Zantac*, MDL 2924; *Paragard*, MDL 2974; and *Acetaminophen ASD/ADHD*, MDL 3043. *See* Ex. B (3M ECF No. 488), Ex. C (3M ECF No. 1659); Ex. D (Zantac ECF No. 1408); Ex. E (Acetaminophen ASD/ADD ECF No. 39); Ex F (Paragard ECF No. 131).

authority are so limited. The scope of a future assessment will depend on individual facts and circumstances for each case and counsel. Although not yet ripe with respect to Ms. Daniels, KP, or any of KP's other clients, a court's authority to assess MDL cases that do not participate in a common fund recovery or consent is well-established, *see In re Air Crash Disaster,* 549 F.2d at 1016, and a court's authority to assess non-MDL cases that neither participate in a common fund recovery nor consent is permissible under certain circumstances. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804-DAP, Ex. A at 11; *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 181; *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d 822, 833–34 (D. Ariz. 2022), *aff'd sub nom. In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897 (9th Cir. 2023); *In re Avandia*, 617 F. App'x at 141-44; *see also In re Zyprexa Prods. Liab. Litig.*, 467 F. Supp. 2d 256, 265 (E.D.N.Y. 2006) ("A transferee court in a federal multidistrict litigation has the power to determine the compensation for appointed lead counsel and to impose its fee calculation on all federal plaintiffs, even if their cases are 1) before other federal courts rather than the transferee court, or 2) not yet in a federal court, but ultimately are in such a court.").

A. **The Common Benefit Doctrine is not Limited to Cases that Participate in a Common Fund Settlement.**

Treating the common benefit doctrine as distinct and severable from the Court's inherent managerial authority, KP begins by arguing that "[t]he common-fund doctrine does not permit the Court to tax cases that do not benefit from a

9

common fund." ECF No. 399 at 9-13.[3] The Supreme Court, however, rejected such limits nearly 100 years ago.[4] *See Mills,* 396 U.S. at 392-93 (citing *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 166 (1939)).

As the Supreme Court has repeatedly explained, *Sprague* upheld a district court's power to grant reimbursement for a plaintiff's litigation expenses from other plaintiffs "not parties before the court" even though she had sued only on her own behalf and not for a class, because her success would have a stare decisis effect entitling others to recover out of specific assets of the same defendant. *See Mills*, 396 U.S. at 393; *Sprague*, 307 U.S. at 167 ("[T]he absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree—hardly touch(es) the power of equity in doing justice as between a party and the beneficiaries of his litigation."). And *Mills* held that the rationale of the common fund cases, "must logically extend, not only to litigation that confers a monetary benefit on others, but also to litigation 'which corrects or prevents an abuse which

---

[3] Even assuming that KP's claim that "[a]nticipating that a common fund will exist can only serve as a source of potential authority over claimants who directly benefit from it," ECF No. 399 at 11, is correct (it is not), KP's argument makes plain why its objection is untimely: At this time there is no "MDL-administered settlement" nor any other settlement, and there are no claimants who have made any decision regarding participation in such a hypothetical settlement. *See id.* at 13 n.2.

[4] KP's motion cites *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885) and *Internal Imp. Fund Trustees v. Greenough*, 105 U.S. 527 (1881), but fails to distinguish (or discuss) their progeny.

would be prejudicial to the rights and interests' of those others." *Hall v. Cole*, 412 U.S. 1, 7 (1973) (quoting *Mills*, 396 U.S. at 396).

Unsurprisingly, the Eleventh Circuit has followed this precedent and recognized that the "common fund" exception to the American Rule, permits "fee reimbursement" including:

> (1) when litigation indirectly confers substantial monetary or nonmonetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named defendant who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members.

*Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991). And, in an opinion binding on this Court, the Fifth Circuit held—in a case with no "common fund"—that an MDL Court has the power to direct that appointed leadership counsel be compensated and that requiring the payment come from other attorneys is permissible. *In re Air Crash Disaster,* 549 F.2d at 1016; *see also In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 644, 655 (E.D. Pa. 2003) ("Several multidistrict cases have followed *In re Air Crash* in providing fees for lead and liaison counsel and management committees for common benefit work.").

Ignoring both the Supreme Court and Eleventh Circuit precedent directly on point, KP claims that "the Eleventh Circuit has rejected an expansive interpretation of the common fund doctrine." ECF No. 399 at 9 (citing *Johnson vs. NPAS Solutions, LLC*, 975 F.3d 1244, 1255-56 (11th Cir. 2020)). But *NPAS* says nothing about a

court's authority to distribute common benefit fees and expenses. *NPAS*, to the contrary, is a class case that cites early common fund cases, *Greenough* and *Pettus,* for the proposition that it is improper to provide class representatives with incentive awards that compensate them for their personal time. *See NPAS*, 975 F.3d at 1258-59 (concluding that whether an "incentive award constitutes a salary, a bounty, or both, . . . Supreme Court precedent prohibits it").[5]

Persons who obtain the benefits of a lawsuit without contributing to its prosecution "are unjustly enriched at the successful litigant's expense." *Boeing*, 444 U.S. at 478 (citing *Mills*, 396 U.S. at 392). For this reason, courts across the country "have enforced reasonable attorneys' fee awards in MDLs that did not reach global settlements or that involved plaintiffs who settled before the global settlement was reached." *In re C.R. Bard, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, 2019 WL 385416, at *12 (S.D.W. Va. Jan. 30, 2019); *see In re Zyprexa*, 594 F.3d at 129-30 (affirming holdback of common benefit funds); *In re Diet Drugs*, 582 F.3d at 547-48 (holding district court acted properly in assessing common benefit fee on individual plaintiffs who opted out of global settlement); *In re Genetically Modified Rice Litig.*, 835 F.3d 822, 830 (8th Cir. 2016) ("There is no separate requirement that

---

[5] KP's motion seems to erroneously attribute a statement about the limited applicability of the common fund doctrine to *NPAS*, ECF No. 399 at 9 (using *id.* following a citation to *NPAS*), but that quotation appears nowhere in *NPAS*, which, as explained above, says nothing relevant to KP's objection to CBO No. 1.

the court also have jurisdiction over the corpus of the settlement, as though this were a quasi-*in rem* proceeding.").

Accordingly, KP's motion to modify CBO No. 1 to only apply to claimants who benefit from any future common fund or from counsel who voluntarily sign a participation agreement is unsupported. Directly relevant here, KP is counsel of record in the case *Daniels v. Pfizer, Inc. See* ECF No. 399 at 22. Ms. Daniels's case is currently pending in the MDL, *id.*, and should it remain in the MDL,[6] biding precedent provides that this Court would have power to assess Ms. Daniels's case and award the assessment as compensation to counsel that have contributed to the common benefit. *See* ECF No. 399 at 18 n.4 (citing *In re Air Crash Disaster*, 549 F.2d at 1018).

### B. The Common Benefit Doctrine and the Court's Inherent Authority May Permit Assessment of Cases Not Filed in the MDL.

KP's next step is to assert that to the extent a common benefit assessment is justified by the Court's inherent authority,[7] such authority over non-MDL claimants

---

[6] Plaintiffs' Leadership Counsel takes no position on any pending or future motion to remand.

[7] KP asserts that "[a] court may not rely on its inherent authority to order a client to pay one attorney even though she chose to hire a different attorney." ECF No. 399 at 15. KP, however, seems to ignore that it cites *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) as "cataloging various inherent procedural powers that courts may exercise," ECF No. 399 at 14. *Chambers* expressly lists among those inherent powers, the power to assess attorney's fees against counsel, including under the common fund doctrine. *Chambers*, 501 U.S. at 45 (citing *Sprague*, 307 U.S. at 164).

is limited to those who voluntarily consent. ECF No. 399 at 17-20. Plaintiffs' Leadership Counsel agrees that consent is one source of authority for a common benefit assessment, and does not claim that courts possess unbounded inherent authority to tax any case, lawyer, or law firm, no matter how removed from an MDL. That said, "there is ample authority for the proposition that common benefit fee assessments on attorneys with cases not before the MDL judge is permitted and appropriate in certain circumstances." *In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804-DAP, Ex. A at 12; *see, e.g.*, *In re Avandia*, 617 F. App'x at 141; *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 180; *In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th at 911.

For example, drawing on the common benefit doctrine's origins in unjust enrichment and quantum meruit, MDL courts have authority to assess recoveries in a non-MDL cases if the plaintiffs or their counsel access and actually use MDL common benefit work product. *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804-DAP, Ex. A at 13 ("MDL courts appear virtually unanimous on their authority to subject a recovery in a non-MDL forum to an appropriate assessment if the plaintiffs or their counsel ***actually used*** common benefit work product."); *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 185 (observing that when counsel use MDL common benefit work product in state-court or unfiled cases, courts are "unanimous in upholding assessments in such circumstances.")

14

(collecting cases); *In re Bard IVC Filters Prods. Liab. Litig.*, 603 F. Supp. 3d at 833-34.

Courts have also concluded that their equity powers extend over MDL counsels' other, non-MDL cases "to preempt an extreme version of the free-rider problem: the lawyer who files only one case in the MDL to gain access to common benefit work and then leverages the knowledge gained from that work to settle dozens or hundreds of unfiled claims." *See In re Nat'l Prescription Opiate Litig.*, No. 1:17-md-2804-DAP, Ex. A at 12 (citing *In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 181); *see In re Oil Spill by the Oil Rig Deepwater Horizon*, 2012 WL 161194, *2 (E.D. La. Jan. 18, 2012) (implementing hold back requirement on "all actions filed in or removed to federal court that have been or become a part of the MDL, whether or not a motion to remand has been filed, and to state court plaintiffs represented by counsel who have participated in or had access to the discovery conducted in this MDL.").

KP claims that there is "unrebutted" appellate authority that CBO No.1 exceeds the Court's authority. ECF No. 399 at 20. But the Ninth Circuit rejected this same argument, explaining, in *In re Bard IVC Filters*, that "none of these cases stands for the broad proposition . . . that a district court *always* lacks authority to order common benefit assessments against recoveries in non-MDL cases. 81 F.4th at 909. "Rather, these cases stand for the unremarkable proposition that a district

court lacks authority to order assessments against the recoveries of claimants who are 'complete strangers' to the MDL the court is managing." *Id.*

KP also claims that a district court's incorporation of the terms of a participation agreement into a court order provides the court with authority to enforce the private agreement. ECF No. 399 at 20. KP is correct that counsel that consents to an assessment in exchange for common benefit work product cannot voluntarily accept the benefit of the bargain and then later have a valid objection to the bargain's costs. However, the circuit courts that have considered the effect of participation agreements have agreed that agreements themselves are "not the source of the District Court's authority. Rather, the District Court's authority over this dispute arose from its responsibilities to appoint and supervise a coordinating committee of counsel." *In re Avandia*, 617 F. App'x at 143; *In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th 897, 908 (9th Cir. 2023) ("The agreement was simply incorporated into an order the [d]istrict [c]ourt was empowered to issue.").

As a general matter, it is beyond dispute that the Court may "establish fee structures designed to compensate committee members for their work on behalf of all plaintiffs involved in consolidated litigation." *Smiley v. Sincoff*, 958 F.2d 498, 501 (2d Cir. 1992); *see, e.g.*, *In re Air Crash Disaster*, 549 F.2d 1006, 1016 (5th Cir. 1977). "[A]n MDL court's authority to order contributions to compensate leadership counsel derives from its 'managerial' power over the consolidated litigation, and, to

some extent, from its inherent equitable power." *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 2018 WL 2095729, at *6 (E.D. La. May 7, 2018) (cleaned up). And Courts have repeatedly held that these powers are broad enough to authorize assessments on recoveries arising from the Firms' clients' unfiled claims. *See In re Gen. Motors LLC Ignition Switch Litig.*, 477 F. Supp. 3d at 190.

Whether KP's or KP's clients' relationship to this MDL is ultimately one of "complete strangers" remains to be seen. *See In re Bard IVC Filters Prod. Liab. Litig.*, 81 F.4th at 910-11 (distinguishing district court's decision in *Roundup* based on factual differences including "the scope of the requested assessments," "whether access to the common benefit work product provided a benefit to participating counsel," "whether the common benefit work prompted the defendant to settle," and more). But it is apparent that facts and circumstances may exist that would justify and support the Court's assessment of non-MDL cases, even absent consent. Accordingly, KP's motion to modify CBO No. 1 to only apply to claimants who benefit from any future common fund or from counsel who voluntarily sign a participation agreement should be denied.

## CONCLUSION

KP's Motion to Modify Amended CBO No. 1 should be denied.

DATED: August 22, 2025                                  Respectfully submitted,

17

/s/ Christopher A. Seeger
Christopher A. Seeger
New Jersey State Bar No. 04231990
David R. Buchanan
New Jersey State Bar No. 042741993
Caleb Seeley
New Jersey State Bar No. 303522019
Seeger Weiss LLP
55 Challenger Boulevard
Ridgefield Park, NJ 07660
Tel.: (973) 639-9100
cseeger@seegerweiss.com

*Plaintiffs' Lead Counsel*

Bryan F. Aylstock
Savannah T. Green
Aylstock, Kreis & Overholtz, PLLC
17 East Main
Street Suite 200
Pensacola, FL 32502
Tel.: (850) 202-1010
baylstock@awkolaw.com

*Plaintiffs' Co-Lead Counsel*

Ellen Relkin
**WEITZ & LUXENBERG, P.C.**
700 Broadway
New York, NY 10003
erelkin@weitzlux.com
Tel: 212-558-5500
Fax: 212-344-5461

*Plaintiffs' Co-Lead Counsel*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1 (F)

I hereby certify that this Motion and memorandum in support contains 4,399 words and complies with the Court's Local Rule 7.1(F).

*/s/ Christopher A. Seeger*
Christopher A. Seeger

## CERTIFICATE OF SERVICE

I hereby certify that on August 22, 2025, I caused the foregoing Plaintiffs' Leadership Counsel's Opposition to Keller Postman's Motion to Modify Amended Common Benefit Order No. 1 to be filed with the Clerk of the Court using the CM/ECF system, which will send notification to all counsel of record.

*/s/ Christopher A. Seeger*
Christopher A. Seeger