# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

IN RE: DEPO-PROVERA (DEPOT
MEDROXYPROGESTERONE
ACETATE) PRODUCTS LIABILITY
LITIGATION

This Document Relates to:
All Cases; including:
*Toney v. Pfizer*, No. 3:24-cv-624
*Schmidt v. Pfizer*, No. 3:25-cv-81
*Valera-Arceo v. Pfizer*, No. 3:25-cv-98
*Wilson v. Pfizer*, No. 3:25-cv-100
*Blonski v. Pfizer*, No. 3:25-cv-167

Case No. 3:25-md-3140

Judge M. Casey Rodgers
Magistrate Judge Hope T. Cannon

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR OPPOSITION TO PFIZER INC., PHARMACIA LLC, AND PHARMACIA & UPJOHN CO. LLC'S MOTION FOR SUMMARY JUDGMENT BASED ON FEDERAL PREEMPTION

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................... iii

INTRODUCTION ............................................................................1

STATEMENT OF THE CASE ...........................................................3

I.    REGULATORY FRAMEWORK ..............................................3

II.   FACTUAL BACKGROUND...................................................5

    A.    Decades Of Evidence Link Depo-Provera To Meningiomas...............5

        1.    Scientists learned how progestins fuel meningiomas ................6

        2.    For decades, Pfizer's own studies and reports
            identified a risk..................................................7

        3.    Epidemiological data underscored the risk ...............................8

        4.    Stopping MPA shrinks meningiomas .........................................9

    B.    Pfizer Proposed One Warning Implicating Progestins As
        A Class..........................................................................10

    C.    FDA Sent Pfizer A CRL Inviting Pfizer To Fix Deficiencies ...........10

    D.    FDA Approved A Safer Product .........................................12

ARGUMENT ................................................................................12

I.    LEGAL STANDARD ...............................................................12

    A.    Preemption Requires Showing Federal Law Made It
        Impossible To Add The Required Warning .......................12

    B.    Pfizer Misstates The Legal Standard....................................14

II.   PFIZER DID NOT FULLY INFORM FDA OF THE
    JUSTIFICATIONS FOR A MENINGIOMA WARNING ...........................15

    A.    Pfizer's 2024 PAS Was Inadequate ...................................15

        1.    Pfizer omitted material information ...........................................16

             a.    Pfizer withheld epidemiological data before
                  and after its 2024 PAS .....................................16

             b.    Pfizer omitted epidemiological studies about
                  other progestins ..............................................19

             c.    Pfizer obfuscated the biomechanisms and
                  withheld its own studies ..................................19

             d.    Pfizer withheld information foreign regulators
                    found significant ............................................20

        2.    Pfizer ran a flawed process .........................................22

    B.    Pfizer Mischaracterized The Science .................................................24

    C.    Pfizer Fails To Show It Fully Informed FDA .....................................25

        1.    Pfizer's omitted information was important ............................25

        2.    Pfizer cites distinguishable cases ...............................................29

        3.    Expert testimony supports facts underlying
             preemption ...................................................................30

III.    FDA DID NOT REJECT AN ADEQUATE WARNING IN AN
ACTION WITH FORCE OF LAW .............................................................31

    A.    FDA Did Not Reject An Adequate Warning ......................................31

    B.    The CRL Lacks Preemptive Effect .....................................................35

    C.    Pfizer's Arguments Fail .......................................................................35

    D.    FDA Never Rejected An Adverse-Reaction Warning .......................38

IV.    DESIGN-DEFECT CLAIMS ARE NOT PREEMPTED .............................38

CONCLUSION ..................................................................................................40

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

Page

CASES

*3M Combat Arms Earplug Prods. Liab. Litig.*, *In re*, 2021 WL 533538
    (N.D. Fla. Feb. 12, 2021)...................................................................39

*Avandia Mktg., Sales & Prods. Liab. Litig.*, *In re*, 945 F.3d 749
    (3d Cir. 2019).........................................................14, 17, 24, 34, 36

*Blackburn v. Shire*, 2022 WL 16729466 (11th Cir. Nov. 7, 2022),
    *cert. denied*, 144 S. Ct. 92 (2023)..............................................12, 30

*Burton v. Abbvie, Inc.*, 2023 WL 6396667 (C.D. Cal. Sept. 25, 2023)...................20

*Carson v. Monsanto Co.*, 92 F.4th 980 (11th Cir. 2024)........................................13

*Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG
    Pharms., Inc.*, 2025 WL 1024103 (D. Mass. Mar. 12, 2025),
    *appeal pending*, No. 25-1334 (1st Cir.)..........................................37

*Dobbs v. Wyeth Pharms.*, 797 F. Supp. 2d 1264 (W.D. Okla. 2011)......................31

*Dolin v. GlaxoSmithKline LLC*:

    901 F.3d 803 (7th Cir. 2018)...........................................................30

    951 F.3d 882 (7th Cir. 2020).........................................................29

*Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, *In re*, 118 F.4th
    322 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 2792 (2025).....................13, 14,
                                                                             15, 26, 30, 34

*Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333 (D.N.J. 2021)...................39, 40

*Holley v. Gilead Scis., Inc.*, 2023 WL 6390598 (N.D. Cal. Sept. 28,
    2023) ........................................................................................40

*Incretin-Based Therapies Prods. Liab. Litig.*, *In re*:

    142 F. Supp. 3d 1108 (S.D. Cal. 2015), *vacated and remanded*,
    524 F. Supp. 3d 1007 (S.D. Cal. 2021) ........................................37

    524 F. Supp. 3d 1007 (S.D. Cal. 2021) ........................................37

*Kaiser v. Johnson & Johnson*, 947 F.3d 996 (7th Cir. 2020) ...................................40

*Lauderdale v. Organon USA, Inc.*, 2022 WL 3702113 (W.D. Ark.
Aug. 26, 2002) .......................................................................................29

*Lyons v. Boehringer Ingelheim Pharms., Inc.*, 491 F. Supp. 3d 1350
(N.D. Ga. 2020) ...........................................................................28, 37, 38

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019) ...........1, 2, 3, 4, 13,
14, 16, 23, 27, 28,
31, 34, 36, 37, 38, 40

*Mutual Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013) .......................................39, 40

*Pfaff v. Merck & Co.*, 627 F. Supp. 3d 134 (E.D.N.Y. 2022) .................................38

*Rheinfrank v. Abbott Lab'ys, Inc.*, 119 F. Supp. 3d 749 (S.D. Ohio
2015), *aff'd*, 680 F. App'x 369 (6th Cir. 2017) ...........................................37

*Suboxone (Buprenorphine/Naloxone) Film Prods. Liab. Litig., In re*,
761 F. Supp. 3d 1069 (N.D. Ohio 2024) ......................................................39

*Taxotere (Docetaxel) Prods. Liab. Litig., In re*, 508 F. Supp. 3d 71
(E.D. La. 2020) .....................................................................................28

*Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig., In re*, 2023 WL
7281665 (N.D. Ill. Nov. 3, 2023) ...............................................................40

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318 (2015) ...............................13

*Wyeth v. Levine*, 555 U.S. 555 (2009) ...........................................1, 3, 13, 15, 34, 39

*Xarelto (Rivaroxaban) Prods. Liab. Litig., In re*, 2017 WL 3188456
(E.D. La. July 17, 2017) ...........................................................................39

*Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281
(6th Cir. 2015) .....................................................................................40

*Zofran (Ondansetron) Prods. Liab. Litig., In re*, 57 F.4th 327
(1st Cir. 2023) ............................................................................29, 30, 31, 37

STATUTES AND REGULATIONS

Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 *et seq.* ............................3

21 C.F.R.:

§ 201.57(c)(6)(i)............................................................................4, 24

§ 201.57(c)(7) ...............................................................................4, 38

§ 314.70(b)(2)(v)(A) ........................................................................4

§ 314.70(c)(6)(iii)(A) .......................................................................4

§ 314.110(a) ..................................................................................10

§ 314.110(a)(1)..........................................................................5, 34, 35

§ 314.110(a)(2) ...........................................................................5, 31

§ 314.110(a)(3) ...............................................................................5

§ 314.110(b)..................................................................................35

§ 314.110(b)(1) ...............................................................................5

§ 314.125(b)(6) ...............................................................................4

ADMINISTRATIVE MATERIALS

Final Rule, Applications for Approval to Market a New Drug;
        Complete Response Letter; Amendments to Unapproved
        Applications, 73 Fed. Reg. 39,588 (July 10, 2008)......................................35

## INTRODUCTION

Brand-name drug manufacturers are responsible for up-to-date labels at all times. *See Wyeth v. Levine*, 555 U.S. 555, 570-71 (2009). Yet for decades, as evidence amassed that Pfizer's drug Depo-Provera caused brain tumors known as meningiomas, Pfizer refused to study or warn about that risk. It ignored biomechanistic and epidemiologic studies and doctors' reports. Pfizer first assessed the risk seriously only after foreign regulators probed in 2023, decades after science established a causal association.

Pfizer raises a preemption defense, which requires it to show by clear evidence that it was "impossible . . . to comply with both state and federal" warning obligations. *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 303 (2019). To establish this "demanding defense," Pfizer must show "it fully informed the FDA of the justifications for the warning required by state law and that the FDA, in turn, informed [Pfizer] that the FDA would not approve changing the drug's label to include that warning." *Id*. at 313-14. It cannot.

First, for decades, Pfizer failed to study meningioma risk, despite mounting evidence and the obligation to update warnings. When it finally did so, Pfizer conducted an incomplete literature search and buried its analysis linking risk level to dosage. It did not communicate with FDA about Depo-Provera's risk until it applied for a label change in 2024, and even then it omitted crucial information and

peer-reviewed studies about how Depo-Provera nourishes meningiomas and creates a statistically-significant risk of them. Pfizer's own employees doubted whether Pfizer gave FDA the "full picture."

Second, FDA never rejected an adequate warning, because Pfizer never offered one. Its flawed warning implicated a class of drugs, not just Depo-Provera, from low-dose oral tablets to high-dose injections. Science did not support this broad, undifferentiated warning. FDA's Complete Response Letter ("CRL") informed Pfizer its submission was inadequate to support Pfizer's warning "in [its] present form."

Far from "prohibit[ing] [Pfizer] from adding any and all warnings" that would "satisfy state law," *Albrecht*, 587 U.S. at 313-14, FDA invited Pfizer to "address" the deficiencies through resubmission. FDA's CRL lacked finality and the force of law necessary to preempt state-law claims. Moreover, Pfizer's 2025 submission dropped three low-dose, oral products for which the science did not support a warning and instead proposed to warn about two higher-dose, injectables, including Depo-Provera. Pfizer identified information it had withheld *before* FDA's CRL as the basis for amending, highlighting the omitted information's materiality and confirming FDA's CRL was an intermediate step, lacking preemptive force.

Relying on pre-*Albrecht* cases, Pfizer advances the false premise that, whenever FDA responds to a proposed warning that mentions the *injury* at issue, it is "impossible" for a manufacturer to comply with its state-law obligations. This argument ignores the requirement that Pfizer must have fully informed FDA and that FDA must have responded to the required warning, not an inadequate one. Merely mentioning the injury at issue cannot automatically preempt if, as in *Wyeth*, the generalized warning was inadequate to prevent that injury. 555 U.S. at 559-60, 572-73. FDA's CRL cannot preempt here, where Pfizer omitted important information and the science did not support its flawed warning.

Nor has Pfizer advanced a persuasive preemption defense to Plaintiffs' design-defect claims, because FDA never made it impossible for Pfizer to design and seek approval for a safer version.

## STATEMENT OF THE CASE

## I.    REGULATORY FRAMEWORK

In enacting and amending the Federal Food, Drug, and Cosmetic Act, Congress determined that "state rights of action provided appropriate relief for injured consumers" and will not be "invalidated" absent a "direct" conflict with federal law. *Wyeth*, 555 U.S. at 567, 574. A "central premise of federal drug regulation [is] that the manufacturer bears responsibility for the content of its label

at all times," including "ensuring that its warnings remain adequate." *Albrecht*, 587 U.S. at 312.

When a drug's risk becomes apparent, "the manufacturer has 'a duty to provide a warning that adequately describes that risk.'" *Id.* (cleaned up). It can apply to update the label through a "Prior Approval Supplement" ("PAS"). 21 C.F.R. § 314.70(b)(2)(v)(A). ███████████████████████████

████████████████████████████████████████████████

████████████████████████████████. The changes-being-effected ("CBE") regulation allows manufacturers to add a warning for which there is "evidence of a causal association" "to reflect newly acquired information," without prior FDA approval. 21 C.F.R. § 314.70(c)(6)(iii)(A).

The label's Warnings and Precautions section describes "clinically significant adverse reactions" and "must be revised to include a warning about a clinically significant hazard as soon as there is reasonable evidence of a causal association with a drug; a causal relationship need not have been definitely established." *Id.* § 201.57(c)(6)(i). The Adverse Reactions list "undesirable effect[s], reasonably associated with use of a drug." *Id.* § 201.57(c)(7).

FDA cannot approve labeling that is "false or misleading in any particular." *Id.* § 314.125(b)(6). If FDA "will not approve" a PAS "in its present form," it "send[s] the applicant a complete response letter" that "describe[s] all of [its]

4

specific deficiencies." *Id.* § 314.110(a)(1). This letter "reflects FDA's complete review of the data submitted in [the] application." *Id.* § 314.110(a)(2). FDA may find "the data submitted" "inadequate to support" approving the warning. *Id.* § 314.110(a)(3). After receiving the letter, an applicant may seek a follow-up meeting with FDA or "[r]esubmit the application . . . , addressing all deficiencies identified." 21 C.F.R. § 314.110(b)(1).

## II.    FACTUAL BACKGROUND

### A.    Decades Of Evidence Link Depo-Provera To Meningiomas

Pfizer manufactures Depo-Provera, a brand-name drug used primarily for birth control. Depo-Provera's active ingredient is medroxyprogesterone acetate ("MPA" or, in injectable form, "DMPA"), a progestin. MPA is a synthetic form of progesterone, a hormone that regulates women's reproductive physiology, including pregnancy. Ex.1 (Kessler ¶ 81); Ex.2 (Michaels 7-8). Depo-Provera prevents pregnancy by suppressing ovulation. Ex.3 (Butowski 82).

FDA approved Depo-Provera as an injectable contraceptive in 1992. The label carried no warning, precaution, or adverse reaction about meningioma. Ex.1 (Kessler ¶ 98). Providers administer a 150mg-intramuscular injection of Depo-Provera every three months. Ex.2 (Michaels 12). Millions of women have used injectable MPA, including Depo-Provera. *Id.* at 13. Pfizer also sells other MPA-

containing products, including Depo-SubQ Provera 104 ("SubQ") (a shot under

skin) and Provera, PremPro, and Premphase (oral tablets).  Ex.3 (Butowski 82).

Meningiomas are associated with significant morbidity, including paralysis,

strokes, and seizures.  Ex.1 (Kessler ¶¶ 102, 110).  ███████████████████

████████████████████████████████████

### 1.    Scientists learned how progestins fuel meningiomas

Almost a century ago, doctors suspected that sex hormones, like

progesterone, contributed to meningioma development.  Ex.4 (Lange 4-5).  In the

1980s, scientists began understanding the biological mechanisms linking

progesterone to meningioma growth through proteins called progesterone

receptors.  Ex.3 (Butowski 27); Ex.1 (Kessler ¶ 144).

Scientists discovered progesterone receptors were likely functional, because

they were found in meningioma cells' nuclei.  Ex.8 (Carroll-1993).  In 1995,

scientists confirmed progesterone receptors were functional and "transcriptionally

active," Ex.3 (Butowski 36-38),[1] indicating that progestins "may play an important

role in meningioma growth," Ex.9 (Carroll-1995 3-4).  These discoveries

demonstrated progesterone receptors are "involved in meningioma proliferation,"

Ex.1 (Kessler ¶ 150).

---

[1] Ex.3 (Butowski 40-41) (1990 studies finding relationship between progestins and meningiomas).

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████

### 2. For decades, Pfizer's own studies and reports identified a risk

Early reports put Pfizer on notice. ██████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████

Since the 1980s, Pfizer also received adverse event reports ("AERs")
documenting meningiomas after using MPA products. Doctors, like a
neurosurgeon in 1997, told Pfizer that Depo-Provera "accelerated" meningioma
growth. Ex.11 (PF-MDL-DP-02047808) (report). *See* Ex.1 (Kessler ¶ 255) (10
providers reporting association between MPA and meningioma); Ex.11 (PF-MDL-
DP-02047808) (1997: neurosurgeon believed Depo-Provera had causal effect on
patient's meningiomas).[2] ████████████████████████████████

████████████████████████████████████████████████

---

[2] Ex.18 (Cottin 2004) (patient receiving high-dose MPA develops meningioma).

███████████████████████████████████████████

███████

By 2022, Pfizer had received more than 50 meningioma AERs for MPA

products. ███████████████████████████████████

███████████████████████████████████████████

█████████████████████████████

### 3.    Epidemiological data underscored the risk

By the 2000s, epidemiological (or observational) studies reported increased

meningioma risk from hormones and certain progestins.  *E.g.*, Ex.1 (Kessler ¶ 181)

(hormones); Ex.12 (Jhawar 2003) (same); Ex.13 (Gil 2011) (progestin); Ex.14

(Hoisnard 2022) ("strong association" between three non-MPA progestins and

meningioma); Ex.1 (Kessler ¶¶ 179-192).

Later, epidemiological studies consistently found a strong, statistically-

significant link between MPA and meningioma.  A 2017 study of 212 women

found meningioma risk "highest among 3 monthly-injection" DMPA users.  Ex.1

(Kessler ¶ 194) (odds ratio of 3.13).[3]  *See also* Ex.15 (Supartoto-2016 3) (67.7% of

patients exposed to a "3-monthly injection" contraception (like Depo-Provera)

developed meningioma).  A March 2024 publication found "an excess risk of

---

[3] An odds ratio of 3.13 indicates the odds of an event occurring in the
exposed group are 3.13 times greater (or 200% higher) than in the non-exposed
group.

meningioma was associated with the use of . . . [MPA]." Ex.16 (Roland-2024 6) (odds ratio of 5.55 or 400% higher odds).

One of the largest studies was a September 2024 observational study by Griffin of 1,983 U.S.-meningioma-patients. He reported a statistically-significant association between injectable MPA and cerebral meningioma (68% increased odds), but none between oral MPA and meningioma. Ex.17 (Griffin 2024). ▮

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████████████

███████████████████████████████

### 4.    Stopping MPA shrinks meningiomas

In the 2000s, physicians reported that, when people halted MPA, their meningiomas shrank, a phenomenon known as positive dechallenge. ▮x.1 (Kessler ¶ 252) (three cases); *id.* ¶¶ 209, 211-213. Some neuro-oncologists were taught "to consider stopping" MPA for patients with meningioma. Ex.3 (Butowski 23). Other cases reported meningiomas stopped growing or decreased after patients stopped using progestin. *E.g.*, Ex.1 (Kessler ¶ 218) (meningioma "unexpectedly shrunk" after stopping progestin; doctor noted such "rapid meningioma regression" was rare); *see also id.* ¶¶ 214-242, 249 (same).

*    *    *

████████████████████████████

████████████████████████████████

█████████████████████████████

████████████████████████

### B.    Pfizer Proposed One Warning Implicating Progestins As A Class

On February 5, 2024, Pfizer submitted a PAS for all five of its MPA-containing products.  Pfizer proposed adding to the Warnings and Precautions section of each label:

> Meningiomas have been reported following long-term administration of progestins, including medroxyprogesterone acetate.  [Drug name] should be discontinued if a meningioma is diagnosed.  Caution is advised when recommending Depo-Provera CI to patients with a history of meningioma.

Ex.1 (Kessler ¶¶ 121-124).



### C.    FDA Sent Pfizer A CRL Inviting Pfizer To Fix Deficiencies

On November 1, 2024, FDA sent Pfizer a CRL, pursuant to 21 C.F.R. § 314.110(a), responding to Pfizer's 2024 PAS.  FDA "determined [it]

cannot approve these applications in their present form," because "[t]he findings of the available observational studies alone do not support the addition of a warning on Meningioma risk to medroxyprogesterone acetate (MPA)-containing products." Ex.21 (PF-MDL-DP-00000050).

FDA invited Pfizer "to resubmit" its application to address "the deficiencies." *Id.* (PF-MDL-DP-00000051).  Pfizer could "request a meeting or teleconference" to discuss needed steps "before the applications may be approved."  *Id.* ███████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████████

█████████████████

████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████ Both were available

*before* FDA's CRL.  PRAC based its conclusion, in part, on analysis of

bioavailability data that Pfizer shared with PRAC in July 2024 but withheld from

FDA until June 2025. ███████████████████████████████████

████████████████████████████████████████████████████

██████████

### D.    FDA Approved A Safer Product

In 2004, Pfizer obtained FDA approval to sell SubQ, a safer design.  Ex.24

(PF-MDL-DP-06950773).  SubQ is injected subcutaneously on the same quarterly

schedule as Depo-Provera and contains 104mg instead of 150mg of MPA. ████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████

## ARGUMENT

## I.    LEGAL STANDARD

### A.    Preemption Requires Showing Federal Law Made It Impossible To Add The Required Warning

In deciding preemption, this Court views facts, including expert testimony,

and evaluates whether "clear evidence" supports the drugmaker's affirmative

defense.  *Blackburn v. Shire*, 2022 WL 16729466, *2 (11th Cir. Nov. 7, 2022)

(denying preemption after "[t]aking" expert's testimony "in [plaintiff's] favor as

we must" on summary judgment).  Preemption is a "demanding" defense Pfizer

bears the burden of proving.  *Carson v. Monsanto Co.*, 92 F.4th 980, 997-98 (11th Cir. 2024).  Courts "start with the assumption" that federal law does not preempt "unless that was the clear" "purpose of Congress."  *Wyeth*, 555 U.S. at 565.  Pfizer must meet a "very high bar," showing, by clear evidence, it is "impossible to comply" with both state and federal requirements.  *In re Fosamax Prods. Liab. Litig.*, 118 F.4th 322, 355 (3d Cir. 2024).

Clear evidence is evidence (1) Pfizer "fully informed the FDA of the justifications for the warning required by state law"; and (2) "the FDA, in turn, informed [Pfizer] that the FDA would not approve a change to the drug's label to include that warning."  *Albrecht*, 587 U.S. at 303.  Pfizer must show FDA took "action carrying the force of law" to "prohibit[ ] [Pfizer] from adding any and all warnings to the drug label that would satisfy state law."  *Id.* at 313-14, 316.

Expert testimony on "contested brute facts" is "relevant" to preemption.  *Id.* at 317.  A CRL's "meaning and scope" "might depend on what information" FDA had.  *Id.*  The Court cited *Markman* hearings as analogous to interpreting agency decisions as a legal question.  *Id.* at 316.  Courts construing patents may rely on "testimony of scientific witnesses" for technical matters.  *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331-32 (2015).

### B.    Pfizer Misstates The Legal Standard

Instead of addressing its labeling's inadequacy, Pfizer misstates the governing standard by erroneously asserting (19) that, when FDA sends a complete response letter concerning the injury, courts find preemption.  But no FDA final action can preempt *unless* FDA is "fully informed" of the justifications for the warning and the warning would prevent the injury.  *Albrecht*, 587 U.S. at 314.

Courts also reject the preemption defense where FDA informs the manufacturer its submitted information is "inadequate" to support the warning and invites the manufacturer to redress.  *See In re Avandia Mktg., Sales & Prods. Liab. Litig.*, 945 F.3d 749, 758-60 (3d Cir. 2019).  Nor do courts find preemption where, as in *Albrecht* and *Fosamax*, FDA rejects a misleading warning.  Pfizer dismisses (20) those cases as not involving a warning about the "specific" claimed injury, but the manufacturer did purport to offer "a warning for atypical femoral fractures." *Fosamax*, 118 F.4th at 350.  FDA nonetheless rejected it as "misleading" (focused on "stress fractures") and "not adequately supported."  *Id*. at 354, 360.

It does not matter that the misleading language in Merck's warning mentioned the injury, whereas Pfizer's warning misled by implicating all progestins, doses, and administration methods even though scientific data did not support that broad warning.  Ex.1 (Kessler ¶¶ 348-351).  A CRL can "deny" an

14

application in its "present form" if the "proposed labeling is false or misleading *in any particular*." *Fosamax*, 118 F.4th at 360.

It is long settled that merely mentioning the injury in a warning can be inadequate. In *Wyeth*, FDA previously approved a warning about the injury – gangrene and amputation. 555 U.S. at 559-60. But Wyeth could not carry its preemption-defense burden where it failed to prevent injury by omitting "a specific warning about the risks of IV-push administration" and not providing "FDA with an evaluation or analysis" about "the specific dangers" of this administration method. *Id.* at 561, 572-73. Merely mentioning meningioma does not adequately warn of the specific risk: high-dose, injectable MPA (like Depo-Provera).

## II.    PFIZER DID NOT FULLY INFORM FDA OF THE JUSTIFICATIONS FOR A MENINGIOMA WARNING

### A.    Pfizer's 2024 PAS Was Inadequate

FDA's CRL told Pfizer its "observational studies *alone*" did not "support" its proposed warning. Ex.21 (CRL) (PF-MDL-DP-00000050) (emphasis added). Three implications follow: (1) FDA required *more* observational studies; (2) FDA required information *beyond* observational studies (*e.g.*, mechanism, bioavailability analysis); or (3) FDA concluded Pfizer's submission failed to support its warning implicating *all* progestins and *low-dose*, *oral* MPA products. *Infra* pp.32-33 (describing interpretations).

Pfizer could have cured these shortcomings by giving FDA information available before the CRL but did not.  And as Pfizer acknowledged in its 2025 resubmission, dropping low-dose oral MPA products, science did not substantiate its 2024 warning.  Pfizer therefore cannot show it "fully informed" FDA of "the justifications" for a warning state law required.  *Albrecht*, 587 U.S. at 314.

<ol>
<li>

**1.    Pfizer omitted material information**

**a.    Pfizer withheld epidemiological data before and after its 2024 PAS**

</li>
</ol>

Pfizer omitted key information from its 2024 PAS.  While it gave FDA two epidemiological studies about MPA and meningioma, it omitted others relevant to FDA's assessment, including:

- **Supartoto** (2016):  21 of 31 patients taking hormonal contraception who developed meningiomas from a "3-monthly injection" contraception (like Depo-Provera).  Ex.15 (Supartoto 3).  Dr. Butowski (neuro-oncology expert) notes this study found progesterone-containing contraception was "significantly associated" with increased meningioma risk.  Ex.3 (Butowski 91) (odds ratio:  2.47).

- **Wahyuhadi** (2018):  "Of 95 patients with meningioma who used hormonal contraceptives, 88.42% of them use injectable hormonal contraceptives" with "DMPA" (Depo-Provera) "for 3 months."  Ex.27 (Wahyuhadi 39-40).  Three-month injectables, like Depo-Provera, "carry[] the highest risk

16

compared to other hormonal contraceptive[s]." Ex.3 (Butowski 91) (hormonal-contraception has 12.31 times higher risk).

- **Pourhadi** (2023):  Study of 789,901 women finding progestin-only therapy associated with increased risk of meningioma compared to no hormone-therapy use.  Ex.28 (Pourhadi 1). ██████████████████

██████████████████████████████████████

██████

*After* submitting, but before receiving the CRL,[4] Pfizer withheld three more published articles linking MPA to meningioma, even though preemption requires it to have "fully informed [FDA] of the justifications for the [proposed] warning at the time that the FDA rejected the proposed warning."  *Avandia*, 945 F.3d at 759.

**Griffin**, a 2024 study finding a statistically-significant, increased meningioma risk for injectable-MPA users, was the largest epidemiological study to date, dwarfing the populations in Pfizer's two studies – *e.g.*, Griffin (480 cerebral meningiomas) versus Dewata (171) and Roland (9).  Ex.17 (Griffin); Ex.1 (Kessler ¶ 369.2).  It showed the risk increased the longer patients were exposed, a hallmark of a causal association.  Analyzing meningioma patients exposed to oral versus injectable MPA, Griffin reported higher meningioma risk for the latter – a

---

[4] ██████████████████████████████████
██████████████████████████████

comparison missing from Pfizer's two referenced studies (nor in the Al-Shaar abstract Pfizer provided). ███████████████████

████████████████████████████

███████████████████████████

██████████████████████████ This

omission is dispositive and precludes preemption.

But Pfizer also withheld two other key epidemiological studies. It cited an abstract of **Roland**, but never gave FDA the full March 2024 published version before the CRL. Dr. Kessler observes the "fact that this article was peer-reviewed and published in a high-impact journal gives [its] publication . . . additional significance." Ex.1 (Kessler ¶ 369.1). And Pfizer omitted the 2024 **Bailey** abstract finding MPA use is a "significant risk factor for meningioma" in "premenopausal women." Ex.30 (Bailey).

By withholding these six epidemiological studies, Pfizer deprived FDA of information crucial to assessing Depo-Provera's meningioma risk. Dr. Kessler's unrebutted opinion is that these "large, epidemiological studies, with statistically-significant findings of an association between MPA and meningioma," were "significant" omissions that would have provided FDA with important material not captured in Pfizer's PAS. Ex.1 (Kessler ¶ 370).

**b.    Pfizer omitted epidemiological studies about other progestins**

Pfizer also omitted studies about the increased meningioma risk from *non-MPA* progestins.  *Supra* p.8; *see also* Ex.1 (Kessler ¶ 373.2) (Weill 2021: "strong, dose dependent association" between cyproterone acetate and meningioma); *id.* ¶ 373.4 (Mikkelsen 2021).  FDA tells companies to analyze "whether the adverse event is known to be caused by related drugs," including "those in the same pharmacological class," *id.* ¶ 170, ███████████

████████████████████████████████████████

████████████████████████████████████████

████████████████

Pfizer's failure to provide FDA "the significant number of studies" demonstrating an association between other progestins and meningioma "deprived the FDA" of key information.  *Id.* ¶ 375.  Withholding that information "makes the risk associated with MPA appear as an isolated anomaly rather than part of a well-documented and understood drug class effect."  Ex.3 (Butowski 91).

**c.    Pfizer obfuscated the biomechanisms and withheld its own studies**

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████

 It omitted 1993 and 1995

discoveries that progesterone receptors within meningiomas were functional and

could affect meningioma growth when exposed to a progesterone-like hormone.

*Supra* pp.6-7.

It also withheld its own relevant clinical and animal studies.  *Supra* p.7.

### d.    Pfizer withheld information foreign regulators found significant

Foreign regulatory action is relevant to preemption.  *E.g.*, *Burton v. Abbvie,*

*Inc.*, 2023 WL 6396667, *6 (C.D. Cal. Sept. 25, 2023).  But Pfizer did not give

FDA the information it gave foreign regulators.



Pfizer told FDA that PRAC's conclusion – "reasonable evidence of a causal relationship between MPA and meningioma" – supported its 2025 PAS, underscoring its significance.

Pfizer did not inform FDA that its Canadian Depo-Provera label listed meningioma as an "Adverse Reaction" since 2006. Ex.1 (Kessler ¶ 388). Or that, in 2007, the Austrian Health Authority alerted Pfizer about "serious" adverse events of meningioma and that progestins "promote" meningioma growth. Ex.34 (PF-MDL-DP-04756667).

---

5

## 2.    Pfizer ran a flawed process



. Pfizer's deficient analytical process likely contributed to its failure to submit information to FDA. Pfizer ignored mounting evidence of the causal association between Depo-Provera and meningioma.



*   *   *

Dr. Kessler's unrebutted expert opinion concluded Pfizer's 2024 PAS "omitted important information" "relevant" to FDA's assessment of the association between MPA and meningiomas and therefore did "not provide the FDA with a 'full picture.'" Ex.1 (Kessler ¶¶ 401-404); *see also* Ex.3 (Butowski 91-92). *Albrecht* demands more.

**B.      Pfizer Mischaracterized The Science**

Pfizer's 2024 PAS mischaracterized the risk.  Pfizer states:  "High dose

cyproterone:  Cyproterone, an anti-androgen and progestin, is associated with a

small increase in the risk of meningioma."  Ex.36 (PAS) (PF-MDL-DP-00000038).

███████████████████████████████████

███████████████████████████████████

██████████████████████

Pfizer also reduced to a single clause the extensive research explaining the

biological mechanisms linking Depo-Provera as meningioma-causing:

"progesterone, androgen and estrogen receptors have been identified in

meningiomas."  Ex.36 (PAS) (PF-MDL-DP-00000038).  Minimizing the direct,

biologically plausible mechanism created "a false impression" for FDA "of a mere

statistical correlation rather than a causal relationship supported by decades of

molecular research."  Ex.3 (Butowski 90).

Finally, Pfizer's "Overall Conclusion" was that "a definite sole association

cannot be established, due to multiple . . . factors."  Ex.36 (PAS) (PF-MDL-DP-

00000046).  That is the wrong inquiry.  Pfizer must revise its Warnings and

Precautions "as soon as there is reasonable evidence of a causal association with a

drug; a causal relationship need not have been definitely established."

21 C.F.R. § 201.57(c)(6)(i).

### C.    Pfizer Fails To Show It Fully Informed FDA

#### 1.    Pfizer's omitted information was important

Pfizer claims (21-23) it gave FDA all "material" information in its 2024 PAS, based on its assessment of "relevan[ce]." But "[Pfizer] is not the arbiter"; only "FDA[] can determine what information is 'material' to *its own* [labeling] decision." *Avandia*, 945 F.3d at 759. FDA's CRL states FDA required more information; therefore, Pfizer's choice to withhold key information is dispositive. *Supra* pp.15-16.

Pfizer highlights (22) Roland (2023) as the best evidence it gave FDA all "material" information. Pfizer claims (31) it pointed FDA "to the Roland (2023) data" and cites Ex.21, a full English-translated version of Roland's article. But Ex.21 misrepresents what Pfizer provided: ████████████████ ██████████████████████████████████ ██████████████████████████████ Pfizer similarly mischaracterizes what it conveyed about Roland. Pfizer (31) recites Roland's observation about "high risks of meningioma" from "use of cyproterone acetate," but failed to discuss that in the 2024 PAS. Ex.36 (PAS) PF-MDL-DP-00000042). Pfizer's hindsight analysis – identifying this key conclusion – belatedly identifies what Pfizer should have included.

**Epidemiological studies:**  Pfizer dismisses (30) the six epidemiological studies it omitted, *supra* pp.16-18, as "cumulative."  But "consistency" of the causal association is a critical factor.  Ex.1 (Kessler ¶ 312).

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████.  Griffin was the largest epidemiological study to date and offered multiple important conclusions absent from Pfizer's submissions. *Supra* pp.17-18.  FDA's CRL said "the available observational studies" (Pfizer's two epidemiological studies) "alone" did not support the proposed warning.  Pfizer cannot now argue that depriving FDA of six additional epidemiological studies is simply "cumulative."[7]

**Biological mechanisms:**  Pfizer contends (29) its sentence – "progesterone, androgen and estrogen receptors have been identified in meningiomas" – fully

---

[7] Pfizer cites (26) DOJ's 2018 *amicus* brief to claim that purportedly "cumulative" information is unnecessary.  In rejecting reliance on that brief, the Third Circuit held courts do not defer to DOJ's litigation position about preemption.  *Fosamax*, 118 F.4th at 356 n.27.

informed FDA of the biological mechanisms between progestin exposure and meningiomas. This lone sentence obscures decades of research on that subject, including the stronger association of meningiomas to progestins compared to estrogen and androgen. *Supra* pp.5-7.

Pfizer claims it supported this sentence with a citation to the Agopiantz 2023 study. But to fully inform FDA, Pfizer needed to supply FDA with an "analysis" concerning the relevant dangers, not a mere citation. *Albrecht*, 587 U.S. at 313. Furthermore, Agopiantz does not fully explain *how* progesterone receptors stimulate meningioma growth. Unlike Carroll 1995, it omits that progesterone receptors are expressed in meningioma cells' nuclei, so the receptor is active and *therefore* can cause meningioma growth. Ex.3 (Butowski 30). Pfizer does not challenge that these mechanistic findings from the 1990s are material evidence of causation. Ex.4 (Lange 4-9); Ex.2 (Michaels 84-89). These omissions create the "false impression" that progesterone receptors in meningiomas are a "mere statistical correlation" rather than evidence of a "causal relationship." Ex.3 (Butowski 90).

**Bioavailability data:** Pfizer failed to *analyze* its bioavailability data and responds (29-30) that FDA possessed it. Pfizer's argument flips the burden – placing the onus on FDA to analyze *Pfizer's* data. But a brand-name manufacturer "bears responsibility for the content of its label at all times." *Albrecht*, 587 U.S. at

312; *see also In re Taxotere Prods. Liab. Litig.*, 508 F. Supp. 3d 71, 83 (E.D. La. 2020) (rejecting preemption because manufacturer "did not analyze or highlight" available data for FDA).

**Foreign regulatory action:**  Citing *Lyons v. Boehringer Ingelheim Pharmaceuticals, Inc.*, Pfizer claims (31-33) foreign actions are "immaterial" because foreign labels stem from different regulatory standards.  *Lyons* states that warnings approved for a foreign label are not "newly acquired evidence" under the CBE regulation *if* FDA reviewed "substantially similar evidence."  491 F. Supp. 3d 1350, 1365 (N.D. Ga. 2020). ███████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████ Pfizer did not convey that information to FDA until 2025.  *Supra* p.21. ████████████████

█████████████████████████████████████████████

████████████████████████████████ Instead, Pfizer claims (32) FDA received "relevant" reports, which says nothing about whether FDA analyzed "substantially similar evidence."

**Other progestins and Pfizer's studies:**  Pfizer points (30-31) to a single PAS page discussing the non-MPA progestin "cyproterone," but its discussion mischaracterized the studies.  *Supra* p.24.  Citing Roland alone does not excuse Pfizer's failure to provide a "significant number of studies" demonstrating an

association between certain progestins and meningioma.  Ex.1 (Kessler ¶ 375);
*see also supra* p.19.  *See Lauderdale v. Organon USA, Inc.*, 2022 WL 3702113,
*10-11, *12 (W.D. Ark. Aug. 26, 2002) (denying preemption because studies
about "progestin-only" contraceptives "document[ed] a causal relationship
between [similar] drugs").

Pfizer claims (26-27) it need not flag its own clinical and animal studies or
"reiterate" analysis from a 2002 AER provided to FDA. ███████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████ It also asserts (27) other missing
studies or reports cannot be shown to "have changed FDA's mind," given the
information provided to FDA.  At best, Pfizer's argument is hypothetical – not
"clear evidence" it fully informed FDA.

### 2.    Pfizer cites distinguishable cases

Pfizer relies (23, 28) on *In re Zofran Products Liability Litigation*, but the
First Circuit faced an inapposite scenario:  there was "no doubt" FDA had the three
studies plaintiffs identified.  57 F.4th 327, 342 (1st Cir. 2023).  Before Novartis's
PAS, a citizen petition "prominently presented" them to FDA.  *Id.* at 334, 342.
Similarly, in *Dolin v. GlaxoSmithKline LLC* (21), "GSK disclosed the relevant
data."  951 F.3d 882, 891 (7th Cir. 2020).  The court earlier had noted "FDA

completed its own analysis of the same data" plaintiff claimed supported a label change. 901 F.3d 803, 813 (7th Cir. 2018).

In *Fosamax* – unlike here – Merck "repeatedly and voluntarily sent relevant articles to the FDA" for almost two decades. 118 F.4th at 346. Thus, the Third Circuit found no "clear error" in the district court's ruling Merck fully informed FDA.

By contrast, Pfizer did not analyze the meningioma risk until 2023, despite decades of mounting evidence. It had no communication with FDA, and, when it finally sent a PAS, Pfizer failed to provide FDA with important materials. *Supra* pp.10-12.[8]

### 3.    Expert testimony supports facts underlying preemption

Pfizer disputes (23-25) the relevance of experts. The Eleventh Circuit recently denied preemption based on expert testimony. *See Blackburn*, 2022 WL 16729466, *2 (citing "regulatory expert" testimony defendant "could have changed the label to include a stronger" warning). Pfizer cites (23) *Zofran* in arguing expert testimony is "irrelevant," because preemption is a question of law. But while the

---

[8] Pfizer (27-28) mischaracterizes Plaintiffs' experts as disagreeing about the appropriate "amount of information" Pfizer should have given FDA. Dr. Kessler's opinion that Pfizer should analyze studies does not mean Pfizer provided "too much information." He concluded: "Pfizer omitted important information" that was relevant to FDA's assessment. Ex.1 (Kessler ¶ 404). Dr. Butowski agrees. Ex.3 (Butowski 90-91).

First Circuit found expert testimony on *legal questions* "likely inadmissible," it noted experts "can opine" on "underlying factual questions, including providing interpretations of pharmaceutical studies." 57 F.4th at 340.

Plaintiffs' experts do just that. All opine about Pfizer's omissions, the proposed label's inaccuracies, and whether reasonable evidence of a causal association existed. These factual inquiries underlie the legal question of preemption. *See Dobbs v. Wyeth Pharms.*, 797 F. Supp. 2d 1264, 1272 (W.D. Okla. 2011).

## III. FDA DID NOT REJECT AN ADEQUATE WARNING IN AN ACTION WITH FORCE OF LAW

The second prong of the preemption test requires Pfizer to show FDA informed it, after being fully advised of the risk, that FDA "prohibited" Pfizer from adding "any and all" warnings state law required. *Albrecht*, 587 U.S. at 313-14. Pfizer cannot make this showing. FDA's CRL said nothing about rejecting a warning *focused* on high-dose, injectable MPA. Indeed, Pfizer did not present this proposal to FDA in its 2024 PAS. FDA's CRL rejected Pfizer's flawed, overly broad warning and invited Pfizer to "resubmit" its application. Ex.21 (PF-MDL-DP-00000050).

### A. FDA Did Not Reject An Adequate Warning

FDA's CRL confirms FDA responded to Pfizer's flawed warning but never informed Pfizer it would prohibit an adequate warning. The CRL's text is open to

at least three interpretations – none of which satisfies Pfizer's burden to show by clear evidence that a fully informed FDA rejected the required warning.

First, FDA, which reviews "data submitted in [the] application," 21 C.F.R. § 314.110(a)(2), may have required additional observational studies beyond those "submitted in [the] application," such as those Pfizer omitted. Second, FDA may have required information beyond observational studies, such as the missing bioavailability analysis, class, mechanism, and preclinical data. *Supra* pp.19-21.  FDA's critique was not that a proper warning about Depo-Provera's meningioma risk was unwarranted; rather, it needed more than what Pfizer submitted (reinforcing the significance of Pfizer's omissions).

███████████████████████████████████████

██████████████████████████████████  Pfizer sought a warning applicable to all progestins, not just Depo-Provera.  Ex.1 (Kessler ¶ 348). But studies available before the 2024 PAS, including some Pfizer submitted, reported no increased meningioma risk for certain progestins.  *Id.* ¶ 351 (Roland 2023) (Clinical Overview at 17:  "no excess risk" of meningioma for three progestins); Ex.39 (Lee 2006) (no increased risk for oral contraceptives or HRT). Indeed, Pfizer's 2025 PAS replaced "progestins" with "medroxyprogesterone acetate."  Ex.1 (Kessler ¶¶ 124, 406).

Pfizer's proposed 2024 warning also applied equally to all doses ("high" and "low") and routes of administration ("oral" and "injectable") for MPA – spanning 0.3mg oral tablets to 1000mg intramuscular injections. *Id.* ¶ 349. ████

████████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

██████████████████████████████████

███████████████████████████████████

██████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████

█████████████████████

Nothing about FDA's correspondence satisfies the Supreme Court's test, which requires Pfizer to establish FDA "would not approve" the warning state law

---

[9] In October 2024, Pfizer's letters to European physicians stated meningioma's risk did "not apply for lower doses of oral formulations of MPA." Ex.40 (Letter).

requires. *Albrecht*, 587 U.S. at 303; *accord Wyeth*, 555 U.S. at 572 & n.5 (warning addressed IV-injection generally, not specific dangers of IV-push method). The CRL did not tell Pfizer it would disapprove a warning about high-dose, injectable Depo-Provera based on lack of evidence. This absence is determinative, because a CRL must "describe all of the specific deficiencies that [FDA] has identified." 21 C.F.R. § 314.110(a)(1). If a deficiency is not described, then FDA has not rejected a warning on that basis.

███████████████████████████████████████

███████████████████████████████

██████████████████████████    As in *Avandia*, "it is clear" from the CRL that "FDA did not consider [Pfizer's PAS] 'not approvable' because it was unconvinced of the need for a strong warning on [high-dose injectable MPA]; rather, the FDA considered the [PAS]" inadequate in its "present form" because it contained "'deficiencies'" Pfizer needed "to ameliorate prior to the FDA's making a final determination." 945 F.3d at 759-60. At bottom, FDA could not approve a warning that "did not contain a specific warning about the risks of [the particular] administration" method – here, high-dose injectable MPA. *Wyeth*, 555 U.S. at 561. And the "possibility" FDA communicated a conflict between federal and state law "is not enough." *Albrecht*, 587 U.S. at 314. Courts do not read "ambiguous" CRLs to preempt. *Fosamax*, 118 F.4th at 356 n.27.

## B.    The CRL Lacks Preemptive Effect

Regulatory context reinforces the conclusion the CRL lacked preemptive effect.  CRLs "inform[] sponsors of changes that must be made before an application can be approved, with no implication as to the ultimate approvability of the application."  73 Fed. Reg. 39,588, 39,589 (July 10, 2008).  They are a provisional communication identifying "deficiencies" and inviting redress. 21 C.F.R. § 314.110(a)(1).  ████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████  The CRL therefore was tentative and lacking preemptive effect.

## C.    Pfizer's Arguments Fail

Pfizer misses the most fundamental point of the preemption inquiry.  FDA could not have informed Pfizer it would disapprove a warning about the actual risk of high-dose, injectable MPA because Pfizer proposed a flawed, overbroad warning.  *Supra* pp.32-33.  Dr. Kessler's unrebutted opinion is Pfizer's proposed "inadequate and inaccurate" warning "would not properly or fully inform" of Depo-Provera's meningioma risk.  Ex.1 (Kessler ¶ 355).  Pfizer's amended 2025 resubmission (dropping three products) – based on science available *prior* to the CRL – confirms its flawed 2024 warning.  That defeats Pfizer's preemption defense.

Instead, Pfizer attempts to circumvent this glaring issue by shifting responsibility to FDA.  Pfizer assumes (33) that, if FDA found Pfizer's warning misleading, it could have corrected the issue or told Pfizer the data was inadequate, as in *Avandia*.  But FDA's CRL informed Pfizer – in text Pfizer ignores – that its submitted data "alone" did not support Pfizer's proposed warning, signaling more was required.  *Supra* pp.31-32.  The standard is whether Pfizer fully informed FDA of the justifications for an adequate warning, not whether FDA was able to ask Pfizer the right questions, piece together relevant data, see through Pfizer's obfuscations, and discern how best to draft a warning label.

Regardless, it was not FDA's burden to re-draft Pfizer's label to warn properly; rather, the manufacturer bears "ultimate responsibility for its label." *Albrecht*, 587 U.S. at 312.  Indeed, FDA's statement that Pfizer's submitted data "alone" failed to support Pfizer's proposed warning confirms FDA itself could not have written a warning, as Pfizer erroneously suggests (33).

Because FDA has never prohibited "all" adequate warnings about Depo-Provera and meningioma, Pfizer could have added one – using CBE or a supportable PAS – as soon as the science supported a causal association.  Pfizer argues (34) the CRL prevented it from using CBE before 2024 to offer the required warning.  But the CRL responded to an inadequate warning with less-than-full information.  *Supra* pp.16-21.  Courts may not speculate FDA would have rejected

36

a proper warning had Pfizer proposed it (or used CBE) when reasonable causal evidence emerged (1990s). *E.g.*, Ex.3 (Butowski 43-44); Ex.4 (Lange 4). Pfizer's failure to invoke CBE is especially relevant here, where FDA never indicated disapproval of a warning focused on Depo-Provera. The "possibility of impossibility is not enough." *Albrecht*, 587 U.S. at 314.

Pfizer cites (19-20) inapposite cases, pre-dating *Albrecht*, that did not apply its clear-evidence framework. In *Rheinfrank v. Abbott Laboratories, Inc.*, 119 F. Supp. 3d 749, 766 (S.D. Ohio 2015), the court followed a decision reversed after *Albrecht*. Other cases Pfizer cites are distinguishable because the manufacturers, unlike Pfizer, fully informed FDA of the risk. *In re Incretin-Based Therapies Prods. Liab. Litig.*, 142 F. Supp. 3d 1108, 1124 (S.D. Cal. 2015). On remand, *Incretin* found preemption based on the manufacturer fully informing FDA of the risk. 524 F. Supp. 3d 1007 (S.D. Cal. 2021). In *Zofran*, the manufacturer – unlike Pfizer – fully informed FDA of the risk through years of communication, and FDA then approved a label "fundamentally incompatible" with the warning plaintiffs sought. 57 F.4th at 337-38, 342; *accord, e.g.*, *Cleveland Bakers & Teamsters Health & Welfare Fund v. AMAG Pharms., Inc.*, 2025 WL 1024103, *3 (D. Mass. Mar. 12, 2025) (manufacturer provided the only disputed study). In *Lyons*, FDA twice rejected the proposed warning "based on" plaintiff's data and analyses. 491

F. Supp. 3d at 1367. *See also Pfaff v. Merck & Co.*, 627 F. Supp. 3d 134, 144

(E.D.N.Y. 2022) (FDA previously rejected warning plaintiffs sought).

### D.    FDA Never Rejected An Adverse-Reaction Warning

The same standard governs Plaintiffs' adverse-reaction and contraindication

claims: Pfizer must show it fully informed FDA of the justifications for listing

meningioma as an adverse reaction and FDA "prohibited [it] from" doing so.

*Albrecht*, 587 U.S. at 313-14. Pfizer ignores this claim, waiving any preemption

defense. ████████████████████████████████████

████████████████████████ And FDA never stated "it would not

approve" such an amendment. FDA had no reason to address the lower adverse-

reactions standard, because Pfizer never proposed adding a meningioma warning to

that section of the label. 21 C.F.R. § 201.57(c)(7).

Plaintiffs' additional claims, including negligence, fraudulent

misrepresentation, and breach of warranty, are not preempted for the same reasons

their failure-to-warn claims are not preempted.

## IV.    DESIGN-DEFECT CLAIMS ARE NOT PREEMPTED

Plaintiffs allege Pfizer designed Depo-Provera defectively compared to a

lower dose, subcutaneous version with the same quarterly injection schedule.

These claims are not preempted because FDA never told Pfizer it would reject a

safer formulation; rather, it *approved* one – SubQ – in 2004. *Supra* p.12.

Nothing prevented Pfizer from designing a safer drug "from the get-go" (before FDA approved Depo-Provera), a claim known as a "pre-approval" design-defect claim. *Gaetano v. Gilead Scis., Inc.*, 529 F. Supp. 3d 333, 341 (D.N.J. 2021); *see Blonski* Am.Compl. ¶ 170. Judge Fallon and other MDL courts have rejected preemption of such claims. *E.g.*, *In re Xarelto Prods. Liab. Litig.*, 2017 WL 3188456, *4-6 (E.D. La. July 17, 2017); *In re Suboxone Film Prods. Liab. Litig.*, 761 F. Supp. 3d 1069, 1082-83 (N.D. Ohio 2024).

Pfizer does not contest Plaintiffs' pre-approval design-defect claims and has waived any defense. *See In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2021 WL 533538, *3 (N.D. Fla. Feb. 12, 2021). It argues only that federal law preempts claims it should have redesigned Depo-Provera *after* approval, but it cannot show preemption of either claim, because Pfizer never informed FDA of the justification for a safer dose and administration method, and FDA never told Pfizer it would reject them. *See Wyeth*, 555 U.S. at 572-73 (Wyeth never "supplied the FDA" with analysis "concerning the specific dangers posed by the [administration] method," so Court could not "credit Wyeth's contention that the FDA would have prevented it").

Pfizer cites (35) *Mutual Pharmaceutical Co. v. Bartlett*, 570 U.S. 472, 484 (2013), which concerned federal laws' constraints on *generic* drugmakers and a drug that was "chemically incapable of being redesigned." As a brand

manufacturer, Pfizer was neither incapable of nor legally prevented from designing a safer dosage and administration method. *E.g.*, *Holley v. Gilead Scis., Inc.*, 2023 WL 6390598, *2-3 (N.D. Cal. Sept. 28, 2023) (no preemption of claim manufacturer should have designed "lower dose"). Pfizer's reliance on *Bartlett*'s "stop-selling" rationale therefore "is misplaced": Plaintiffs do not argue Pfizer should have stopped selling Depo-Provera, but it could have designed a safer version. *See Kaiser v. Johnson & Johnson*, 947 F.3d 996, 1011 (7th Cir. 2020).

Pfizer cites (35) *Yates v. Ortho-McNeil-Janssen Pharmaceuticals, Inc.*, 808 F.3d 281 (6th Cir. 2015), a criticized[10] pre-*Albrecht* case rejecting a design-defect claim. The Sixth Circuit "speculate[d]" about whether FDA would have rejected the safer alternative. *Id.* at 299. No such speculation is necessary; FDA approved a safer design in 2004. *Yates* also held that redesigning the drug would have required FDA approval, *id.* at 298, but this does not equal preemption: *Albrecht* held that speculation cannot preempt, and federal law does not preempt until FDA has told the manufacturer it would "not approve" the change. *E.g.*, *Gaetano*, 529 F. Supp. 3d at 342.

## CONCLUSION

The Court should deny Pfizer's Motion.

---

[10] *E.g.*, *In re Tepezza Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2023 WL 7281665, *3 (N.D. Ill. Nov. 3, 2023) (collecting cases explaining "*Yates* misapplies the 'stop-selling' rationale in th[e] [design-defect] context").

Dated: September 19, 2025

/s/ *Christopher A. Seeger*
Christopher A. Seeger
(admitted *pro hac vice*)
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com

*Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Blonski*

David C. Frederick
(admitted *pro hac vice*)
Ariela M. Migdal
(admitted *pro hac vice*)
Jimmy A. Ruck
(admitted *pro hac vice*)
Kellogg, Hansen, Todd,
   Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20037
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
amigdal@kellogghansen.com
jruck@kellogghansen.com

Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
   Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Toney*

Michael A. Sacchet
(admitted *pro hac vice*)
Heather McElroy
(*pro hac vice* pending)
Ciresi Conlin LLP
225 S. 6th Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 361-8220
Fax: (612) 314-4760
mas@ciresiconlin.com
hmm@ciresiconlin.com

Ellen Relkin
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
erelkin@weitzlux.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Schmidt*

*Co-Chairs Law & Briefing*

Tracy A. Finken, Esq.
ANAPOL WEISS
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
(215) 735-0773 (Direct Dial)
tfinken@anapolweiss.com

*Counsel for Plaintiff Valera-Arceo*

Virgina M. Buchanan
Levin, Papantonio, Proctor, Buchanan,
  O'Brien, Barr, & Mougey, P.A.
316 South Baylen Street (32502)
P.O. Box 12308
Pensacola, Florida 32591
Telephone: (850) 435-7023
vbuchanan@levinlaw.com

*Counsel for Plaintiff Wilson*

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this brief complies with the word limit of Local Rules 7.1(F) and 56.1(E) and contains 8,000 words, excluding the parts exempted by those Rules.

Dated:  September 19, 2025

<u>/s/ *Christopher A. Seeger*</u>
Christopher A. Seeger
(admitted *pro hac vice*)

*Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Blonski*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of September 2025, a true and correct copy of this **Memorandum in Support of Their Opposition to Pfizer Inc., Pharmacia Llc, and Pharmacia & Upjohn Co. LLC's Motion for Summary Judgment Based on Federal Preemption** was filed electronically with the Clerk of Court and served upon all parties via CM/ECF.

/s/ *Christopher A. Seeger*
Christopher A. Seeger
(admitted *pro hac vice*)

*Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Blonski*

2