# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Cases; including:<br>*Toney v. Pfizer*, No. 3:24-cv-624<br>*Schmidt v. Pfizer*, No. 3:25-cv-81<br>*Valera-Arceo v. Pfizer*, No. 3:25-cv-98<br>*Wilson v. Pfizer*, No. 3:25-cv-100<br>*Blonski v. Pfizer*, No. 3:25-cv-167 | Case No. 3:25-md-3140<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR OPPOSITION TO PFIZER INC., PHARMACIA LLC, AND PHARMACIA & UPJOHN CO. LLC'S MOTION FOR SUMMARY JUDGMENT BASED ON FEDERAL PREEMPTION**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

INTRODUCTION ........................................................................................1

ARGUMENT ...............................................................................................2

I.  FDA'S APPROVAL OF A MENINGIOMA WARNING CONFIRMS PLAINTIFFS' CLAIMS ARE NOT PREEMPTED ....................................................................................2

    A.  FDA's 2025 Approval Confirms The CRL Was Not Agency Action With The Force Of Law.................................3

    B.  FDA's 2025 Approval Rejected Pfizer's Flawed Warning, Not Any And All Meningioma Warnings...........................4

    C.  FDA's Approval Confirms Pfizer Failed To Fully Inform FDA ..............................................................................5

II.  PFIZER'S ARGUMENTS DO NOT SUPPORT PREEMPTION ..........................................................................6

    A.  Pfizer's Argument That FDA Rejected A Warning For Increased Risk Of Meningioma Has No Merit ....................................6

    B.  Pfizer's Argument Based On "New Information" Fails ......................9

    C.  FDA's Decisions Do Not Impact Design-Defect Claims ...................10

CONCLUSION...........................................................................................10

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

Page

CASES

*Avandia Mktg., Sales & Prods. Liab. Litig.*, *In re*, 945 F.3d 749
(3d Cir. 2019)....................................................................................3, 5

*Carlin v. Superior Ct.*, 920 P.2d 1347 (Cal. 1996)......................................................6

*Carson v. Monsanto Co.*, 72 F.4th 1261 (11th Cir. 2023)........................................3

*Fosamax (Alendronate Sodium) Prods. Liab. Litig.*, *In re*, 118 F.4th
322 (3d Cir. 2024), *cert. denied*, 145 S. Ct. 2792 (2025)...........................2, 9

*Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299 (2019) ......1, 2, 3, 4, 5, 6, 9

*Silverstein v. Boehringer Ingelheim Pharms., Inc.*, 2020 WL 6110909
(S.D. Fla. Oct. 7, 2020)..................................................................................7

*Wyeth v. Levine*, 555 U.S. 555 (2009) ........................................................................6

*Xarelto (Rivaroxaban) Prods. Liab. Litig.*, *In re*, 2017 WL 3188456
(E.D. La. July 17, 2017) ................................................................................10

REGULATIONS

21 C.F.R. § 201.57(c)(6)(i) .........................................................................................7

21 C.F.R. § 314.110 .....................................................................................................3

ADMINISTRATIVE MATERIALS

Final Rule, Applications for Approval to Market a New Drug;
Complete Response Letter; Amendments to Unapproved
Applications, 73 Fed. Reg. 39,588 (July 10, 2008)........................................3

Food & Drug Admin., *Guidance for Industry:  Clinical Studies
Section of Labeling for Human Prescription Drug and
Biological Products — Content and Format* (Jan. 2006),
https://www.fda.gov/media/72140/download#page=5.19 ...........................8

ii

**INTRODUCTION**

To establish the "demanding defense" of preemption, Pfizer must show by "clear evidence" that it (1) "fully informed the FDA of the justifications for the warning required by state law"; and (2) "the FDA, in turn, informed [Pfizer] that the FDA would not approve changing the drug's label to include that warning." *Merck Sharp & Dohme Corp. v. Albrecht*, 587 U.S. 299, 313-14 (2019). Pfizer must establish FDA took "action carrying the force of law" to "prohibit[ ] [Pfizer] from adding any and all warnings to the drug label that would satisfy state law." *Id.* at 313-14, 316. FDA has now approved adding a meningioma warning to Depo-Provera's label. Pfizer therefore cannot make these showings.

FDA's 2024 Complete Response Letter ("CRL") did not render it impossible for Pfizer to comply with state law. The CRL provisionally rejected Pfizer's flawed proposal and invited Pfizer to "resubmit" and address "deficiencies." Pfizer's response confirms the CRL was an intermediate step lacking preemptive force. Pfizer agreed FDA's review was incomplete. It amended its application in 2025 to drop low-dose MPA products and propose new language. It cited science available *before* the CRL as the basis for amending, highlighting its failure to fully inform FDA. Pfizer's 2025 amendment underscores its 2024 proposal's flaws.

FDA's 2025 approval forecloses Pfizer's preemption defense. It defeats Pfizer's claim FDA prohibited "any and all" required warnings. Attempting to evade the import of FDA's approval, Pfizer claims FDA still rejected the warning Plaintiffs

sought. But state-law claims evaluate the *adequacy* of the warning given, not an alternative warning; the manufacturer is responsible for its label at all times. *Albrecht*, 587 U.S. at 312.

Finally, Pfizer improperly speculates that FDA would have rejected a meningioma warning in July 2024 or earlier. It bases this counterfactual prediction – about how a fully informed FDA *would have* responded to an *adequate* warning – on FDA's rejection of Pfizer's *inadequate* warning. But such speculation is legal error and cannot preempt state law. *See id.* at 315 (a "hypothetical" "conflict is insufficient to warrant . . . pre-emption"). FDA never rejected an adequate warning.

## ARGUMENT

### I. FDA'S APPROVAL OF A MENINGIOMA WARNING CONFIRMS PLAINTIFFS' CLAIMS ARE NOT PREEMPTED

Impossibility preemption is a "demanding defense." *Albrecht*, 587 U.S. at 313. Pfizer must prove it "fully informed" FDA of the justifications for the warning state law required and FDA prohibited it from adding "any and all" such warnings with "agency action carrying the force of law." *Id.* at 313-14, 316. Pfizer fails that "very high bar." *In re Fosamax Prods. Liab. Litig.*, 118 F.4th 322, 355 (3d Cir. 2024). FDA's December 2025 approval of a meningioma warning for Depo-Provera confirms FDA never rejected a proper warning: (1) FDA's November 2024 CRL lacked the force of law required to preempt; (2) the CRL addressed Pfizer's flawed warning, not a warning for high-dose, injectable MPA, which FDA later approved;

2

and (3) FDA was not fully informed when it issued the CRL, because Pfizer failed to disclose material information available before the CRL's date.  Pls. Ex. 21.

A.    **FDA's 2025 Approval Confirms The CRL Was Not Agency Action With The Force Of Law**

Pfizer cannot establish FDA took "action carrying the force of law" to "prohibit[ ]" it from adding "any and all" warnings state law required.  *Albrecht*, 587 U.S. at 313-14, 316; *accord Carson v. Monsanto Co.*, 72 F.4th 1261, 1267-68 (11th Cir. 2023) (en banc) (same).  On its face, FDA's CRL is not an "action carrying the force of law."  It is a provisional communication that identifies deficiencies and invites correction, with "no implication as to the ultimate approvability" of the warning.  73 Fed. Reg. 39,588, 39,589 (July 10, 2008); *see also* 21 C.F.R. § 314.110. Indeed, the CRL informed Pfizer that FDA could not approve Pfizer's PAS "in [its] present form" and invited Pfizer to "resubmit" to cure "deficiencies."  Pls. Ex. 21.

Pfizer's subsequent actions confirm the CRL lacks preemptive force.[1]  Pfizer "agree[d]" FDA's review was not "complete[ ]" and "amended" its PAS in 2025 to drop three low-dose, oral products and warn only about two higher-dose injectables, including Depo-Provera.  Pls. Exs. 22, 42.  Pfizer also provided information it previously withheld, all of which was available "at the time that the FDA rejected the proposed warning."  *In re Avandia*, 945 F.3d 749, 759 (3d Cir. 2019).

---

[1] Pfizer (at 3) recognizes that "FDA permits resubmission of a PAS" after sending a CRL, thus conceding the CRL cannot preempt.  *See also* Pls. Br. 14-15.

3

FDA's December 2025 approval further confirms the 2024 CRL lacked preemptive force. The approval "refer[s]" back to Pfizer's February 2024 PAS and calls Pfizer's June 2025 submission an "amendment." Defs. Ex. 32; *accord* Sept. 29, 2025 Tr. 66:21-22 (recognizing Pfizer's 2025 filing was an "amendment").

**B.    FDA's 2025 Approval Rejected Pfizer's Flawed Warning, Not Any And All Meningioma Warnings**

The preemption question is narrow: Did FDA's 2024 CRL prohibit Pfizer from adding "any and all" warnings state law required? *Albrecht*, 587 U.S. at 313-14. FDA's 2025 approval of a meningioma warning reinforces the answer is "no."

To the extent the CRL prohibited anything, it was Pfizer's inadequate warning. Pls. Br. 31-34. ███████████████████████████████████

███████████████████████████████████████████████

████████████████████████████  Pfizer proposed that flawed warning, even though bioavailability data "in its possession" for decades revealed that low-dose, oral MPA tablets had "no risk of meningioma." *Id.* ¶¶ 350, 381. Pfizer's 2024 proposal also was too narrow, warning only patients with a "history of meningioma" instead of anyone prescribed the drug. Pls. Ex. 36 at -010.

In 2025, FDA approved a label change requiring monitoring of *all* Depo-Provera patients for meningioma. *See* Defs. Ex. 30 at 2, 8. FDA's approval confirms the CRL did not prohibit Pfizer from offering an adequate warning. Once Pfizer correctly tailored the warning to high-dose, injectable MPA products and provided

4

FDA with some of the key information it previously withheld, *see infra* pp. ███,

FDA approved a meningioma warning. FDA never rejected an adequate warning.[2]

### C.    FDA's Approval Confirms Pfizer Failed To Fully Inform FDA

Pfizer cannot show FDA was fully informed of the justifications for a

meningioma warning "at the time" of the CRL. *See Avandia*, 945 F.3d at 759. ███



██████████████████████████████████. Despite arguing (MSJ

Br. 28) that the information was "cumulative" and "immaterial," Pfizer now

concedes (at 1) the Griffin study and PRAC's July 2024 decision requiring a

meningioma warning in Europe "made a difference" to FDA's approval. ███

██████████████████████████. Pfizer withheld a full analysis

of the relevant biological mechanisms and at least six epidemiological studies

published before the CRL showing MPA is "significantly associated" with

meningioma. Pls. Br. 16-18; *see id.* at 19-23 (detailing other key information Pfizer

withheld). Thus, no clear evidence demonstrates Pfizer "fully informed" FDA of

the "justifications" for a required warning. *Albrecht*, 587 U.S. at 314.

---

[2] Thus, Pfizer's assertion (at 8-10) of preemption before July 2024 is an egregious overreach. Pfizer makes no effort to satisfy *Albrecht*'s test for preemption for earlier periods. *See* Pls. Br. ███.

## II.   PFIZER'S ARGUMENTS DO NOT SUPPORT PREEMPTION

### A.   Pfizer's Argument That FDA Rejected A Warning For Increased Risk Of Meningioma Has No Merit

Pfizer erroneously argues (at 5-8) FDA rejected the warning Plaintiffs sought: that Depo-Provera carries an increased risk of meningioma for all users.

1.   Pfizer proceeds from an incorrect assumption. Plaintiffs have no duty to specify the wording of the warning state law requires. *E.g.*, *Carlin v. Superior Ct.*, 920 P.2d 1347, 1351 (Cal. 1996) (plaintiff must prove "only" that defendant "did not adequately warn"). As the manufacturer responsible for its label "at all times," it is *Pfizer*'s duty to provide a label that adequately prevents the injury. *Albrecht*, 587 U.S. at 312.[3] Even had FDA rejected an increased-risk warning (it did not, *see infra* pp. ▮), FDA did not prevent Pfizer from warning of the specific meningioma risk from high-dose, injectable MPA. *See Wyeth v. Levine*, 555 U.S. 555, 572 & n.5 (2009) (no preemption where warning failed to address specific risk).

2.   FDA did not reject a warning about Depo-Provera's increased risk of meningioma for all users. Warnings and Precautions "must be revised to include a warning about a clinically significant hazard as soon as there is reasonable evidence

---

[3] Plaintiffs identified numerous deficiencies in Pfizer's 2024 PAS and did not monolithically argue, as Pfizer contends (at 1, 6), that "increased risk" language was the sine qua non of their failure-to-warn claims. *See supra* p. ▮ (flawed warning applied to all progestins and implicated low-dose, oral MPA). The pilot actions are not limited to "increased risk." *E.g.*, Toney Compl. ¶¶ 91, 125-126, 140.

of a causal association with a drug." 21 C.F.R. § 201.57(c)(6)(i). By approving a meningioma warning in that section, FDA necessarily recognized Depo-Provera's "increased" meningioma risk. *E.g.*, *Silverstein v. Boehringer Ingelheim Pharms., Inc.*, 2020 WL 6110909, at *8 (S.D. Fla. Oct. 7, 2020) ("reasonable evidence of a causal association" means that "the different or increased risks are actual and real").

Although Pfizer never sought to add the phrase "increased risk" to the Warnings and Precautions, FDA approved such a warning. FDA unilaterally added: "Monitor patients for signs and symptoms of meningioma" to the Warnings and Precautions, underscoring its recognition of the *increased meningioma risk* Depo-Provera poses for all patients. Defs. Ex. 31 at 2. FDA also added: "Cases of meningiomas have been reported following repeated administration of medroxyprogesterone acetate, primarily with long term use." *Id.* at 8. In other words, repeatedly taking Depo-Provera risks a higher likelihood of meningioma.

3.  Edits to Pfizer's other proposals confirm FDA did not reject an "increased risk" warning. ███████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████. FDA expanded that warning to: "Monitor patients for signs and symptoms of meningioma." Defs. Ex. 31 at 2. Thus, *all* Depo-Provera patients, not just those with a history of meningioma, are at increased risk; Pfizer (at 1, 3, 7) misrepresents the agency's actions when it claims

7

FDA recommends warning only patients with a history of meningioma.  Moreover, negotiations between the FDA and the manufacturer over a label's language are not preemptive agency action with the force of law.  ███████████████████ ██████████████████████████████████.

4.    Pfizer's argument (at 4) that FDA prohibited warning about "possible increased risk" of meningioma because FDA omitted that language from the Patient Counseling Information ("PCI") section is misplaced.  FDA simply moved (but did not delete) that language from the PCI section to the Patient Information section, which the PCI instructs doctors to tell patients to read.  The Patient Information now states:  "Depo-Provera CI can cause serious side effects, including . . . possible increased risk for growth of a meningioma."  Defs. Ex. 30 at 24-25.[4]

5.    Pfizer's argument (at 3-4) that FDA rejected its attempt to summarize the Roland and Griffin studies in the Clinical Studies section of the label is another red herring.  FDA deleted the proposed descriptions because its guidelines prohibit such summaries in the Clinical Studies section – not because FDA rejected an "increased risk" warning.  This section is reserved for:  efficacy studies and prospective clinical studies that evaluate a safety endpoint.[5]  Roland and Griffin are neither.

---

[4] Contrary to Pfizer's argument (at 7), the PCI directing doctors to counsel "patients with a history of meningioma about the possible risk of *worsening* meningioma," Defs. Ex. 30 at 19 (emphasis added), is logical:  only patients with past or current meningiomas could experience "worsening."

[5] *See* https://www.fda.gov/media/72140/download#page=5.19.

### B. Pfizer's Argument Based On "New Information" Fails

Pfizer improperly speculates (at 8-10) FDA "would have rejected" a proper meningioma warning before September 2024. But FDA's refusal to approve Pfizer's flawed warning does not mean it would have rejected an adequate warning. *See supra* p. ▮ (discussing flaws). FDA can "deny" an application if the "proposed labeling is false or misleading in any particular." *Fosamax*, 118 F.4th at 360. Therefore, Pfizer's speculation about how FDA may have responded to an adequate warning is improper. *See Albrecht*, 587 U.S. at 314. A "hypothetical" "conflict is insufficient" to preempt: the "possibility of impossibility" does not establish an "irreconcilabl[e]" conflict between federal and state law. *Id.* at 314-15.

In any event, it is untrue, as Pfizer claims (at 9), that the "only thing that changed" between the November 2024 CRL and FDA's December 2025 approval was Griffin's publication and PRAC's approval of a meningioma warning for MPA-containing products. During that interval, Pfizer overhauled its application to drop a meningioma warning for low-dose, oral products for lack of scientific support.

Moreover, Griffin and PRAC's decision were not "new information." ▮▮▮▮

▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮; *see also* Pls. Br. 33. Worse, Pfizer shared its analysis of its own bioavailability data with PRAC in July 2024 but withheld it from FDA until June 2025. *See* Pls. Br. 11-12, 21. Pfizer's

2025 amendment conceded that information is not "irrelevant" to preemption, as it now claims (at 10).[6]  Indeed, the bioavailability data explains why Pfizer revised its proposed warning.  Pfizer possessed the data for decades but failed to analyze it until 2024; it was not "new."[7]

### C.    FDA's Decisions Do Not Impact Design-Defect Claims

FDA's approval of a warning on Depo-SubQ does not "doom" (at 8) Plaintiffs' design-defect claims.  No *preemption* theory supports this argument, and Pfizer cites no case.  Depo-SubQ is safer than Depo-Provera, *see* Pls. Br. 12, even if both products now have meningioma warnings they previously lacked.  Warning and design-defect claims are distinct state-law causes of action that may proceed in parallel.  *E.g.*, *In re Xarelto Prods. Liab. Litig.*, 2017 WL 3188456, at *6 (E.D. La. July 21, 2017).

### CONCLUSION

Pfizer's motion for summary judgment based on preemption should be denied.

---

[6] Pfizer's 2025 PAS states that, "[d]ue to the results of observational studies and the 1% bioavailability of oral MPA, the association between MPA exposure at low oral doses . . . and meningioma is expected to be weak."  Defs. Ex. 33 at 19.

[7] *Compare* Pls. Ex. 36 at -037 (2024 Clinical Overview 2.5.3 Clinical Pharmacology:  "No new information") *with* Defs. Ex. 33 at 8-9 (2025 Clinical Overview 2.5.3 Clinical Pharmacology:  discussing analysis of bioavailability data predating 2024 PAS).

Dated: February 20, 2026

/s/ *Christopher A. Seeger*
Christopher A. Seeger
(admitted *pro hac vice*)
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com

*Lead Counsel for Plaintiffs and
Counsel for Plaintiff Blonski*

David C. Frederick
(admitted *pro hac vice*)
Ariela M. Migdal
(admitted *pro hac vice*)
Jimmy A. Ruck
(admitted *pro hac vice*)
Kellogg, Hansen, Todd,
   Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
amigdal@kellogghansen.com
jruck@kellogghansen.com

Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
   Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Toney*

Michael A. Sacchet
(admitted *pro hac vice*)
Heather McElroy
(admitted *pro hac vice*)
Ciresi Conlin LLP
225 S. 6th Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 361-8220
Fax: (612) 314-4760
mas@ciresiconlin.com
hmm@ciresiconlin.com

Ellen Relkin
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
erelkin@weitzlux.com

*Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Schmidt*

*Co-Chairs Law & Briefing*

11

Tracy A. Finken, Esq.
Anapol Weiss
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
(215) 735-0773 (Direct Dial)
tfinken@anapolweiss.com

*Counsel for Plaintiff Valera-Arceo*

Virgina M. Buchanan
Levin, Papantonio, Proctor, Buchanan,
  O'Brien, Barr & Mougey, P.A.
316 South Baylen Street (32502)
P.O. Box 12308
Pensacola, FL 32591
Telephone: (850) 435-7023
vbuchanan@levinlaw.com

*Counsel for Plaintiff Wilson*

12

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that this brief is no more than 10 pages in length

and therefore complies with the Court's Order dated January 23, 2026, Dkt. 526.

Dated:  February 20, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
  Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Toney*