# EXHIBIT B

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTRONE ACETATE) PRODUCTS LIABILITY LITIGATION | C.A. No. N25C-10-202 DEP |

**BRIEF IN SUPPORT OF THIS COURT'S PARTICIPATION IN JOINT HEARING ON THE ADMISSIBILITY OF EXPERT TESTIMONY**

Dated: March 20, 2026

Of Counsel:

Jennifer M. Hoekstra
Alystock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
jhoekstra@awkolaw.com

Christopher A. Seeger
Caleb Seeley (*Pro Hac Vice*)
Seeger Weiss LLP
Telephone: (973) 639-9100
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
cseeley@seegerweiss.com

/s/ Elazar A. Kosman
David Felice (#4090)
Elazar A. Kosman (#7077)
Bailey & Glasser, LLP
3801 Kennett Pike, Suite D-300
Wilmington, Delaware 19808
Telephone: (302) 504-6333
dfelice@baileyglasser.com
ekosman@baileyglasser.com

*Attorneys for Plaintiffs Bratcher, Cutshaw, Eddy, Hillary, Irwin, Smith, and Thornton*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

I.    Effective management of mass tort litigation requires coordination. .................1

II.   State and federal courts frequently hold joint hearings to determine the
      admissibility of expert testimony under differing standards..............................2

III.  Coordination presents no offense to comity or jurisdiction. .............................5

i

# TABLE OF AUTHORITIES

**Cases**

*Dunlavey v. Takeda Pharms. Am., Inc.*,
  2012 WL 3715456 (W.D. La. Aug. 23, 2012)................................................1, 6

*In re Asbestos Litig.*,
  2014 WL 7150472 (Del. Super. Ct. Dec. 4, 2014) .............................................7

*In re Bausch & Lomb Contacts Lens Sol. Prod. Litig.*,
  906 N.Y.S.2d 778 (Sup. Ct. 2009).................................................................4, 7

*In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*,
  524 F. Supp. 2d 1166 (N.D. Cal. 2007) ..........................................................4, 7

*In re Neurontin Prod. Liab. Litig.*,
  897 N.Y.S.2d 671 (Sup. Ct. 2009)..................................................................4, 7

*In re Phenylpropanolamine (PPA)*,
   2003 WL 22417238 (N.J. Super. Ct. Law Div. July 21, 2003) ......................3, 7

*In re Welding Fume Prods. Liab. Litig.*,
  2005 WL 1868046 (N.D. Ohio Aug. 8, 2005)..................................................4, 7

*State v. Wright*,
  821 A.2d 330 (Del. Super. Ct. 2003) ................................................................7

**Rules**

Del. Super. Civ. R. 1.........................................................................................6

Del. Judges' Code of Judicial Conduct Canon 1 .................................................6

Del. Judges' Code of Judicial Conduct Canon 2 .................................................6

ii

**Other Authorities**

Alexander B. Aikman, *Managing Mass Tort Cases: A Resource Book for State Court Trial Judges* (1995) ...............................................................................1, 2

Federal Judicial Center, *Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges* (2011)...........................................2

Federal Judicial Center, *Manual for Complex Litigation* (4th ed. 2004) ......1, 2, 3, 6

Federal Judicial Center, *Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges* (2009)...................................................2

Judge Barbara Rothstein, *Federal-State Coordination in Multidistrict Litigations*, 89 UMKC L. Rev. 861 (2021) ...............................................................................5

Judge Barbara Rothstein et al., *A Model Mass Tort: The PPA Experience*, 54 Drake L. Rev. 621 (2006) ...................................................................................................3

National Judicial College, *Resource Guide for Managing Complex Litigation* (2010)......................................................................................................................2

William W. Schwarzer et al., *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 Va. L. Rev. 1689 (1992)................2, 3

This Court has every right to participate in a joint hearing with the federal MDL court to determine the admissibility of expert testimony in the *Depo-Provera* cases before it. Coordination aligns with well-accepted principles and practices in multi-jurisdictional case management. Indeed, state and federal courts routinely preside over this type of joint hearing to efficiently manage complex litigation. There is no constitutional or procedural bar to coordination. To the contrary, this Court's inherent power permits its participation in a joint hearing in the *Depo-Provera* cases.

**I.      Effective management of mass tort litigation requires coordination.**

State and federal coordination "is not only advised, it is advised often." *Dunlavey v. Takeda Pharms. Am., Inc.*, 2012 WL 3715456, at *2 (W.D. La. Aug. 23, 2012). The Manual for Complex Litigation "encourages" coordination as a "widely embraced … necessary tool for effective case management." Federal Judicial Center, *Manual for Complex Litigation* § 20.32 (4th ed. 2004) ("Manual for Complex Litigation"). State-law authorities echo the same teaching. *See, e.g.*, Alexander B. Aikman, *Managing Mass Tort Cases: A Resource Book for State Court Trial Judges* § 3.4 (1995) ("State Manual") ("Coordination between state and federal courts has proven to be highly advantageous to the courts."). It is therefore "abundantly clear and without question" that "interaction between and among the federal court and the multiple state courts is not only not improper in any fashion, but welcomed and encouraged by both courts." *Dunlavey*, 2012 WL 3715456, at *3.

State and federal coordination promotes "economy, efficiency, and fairness in the litigation process." William W. Schwarzer et al., *Judicial Federalism in Action: Coordination of Litigation in State and Federal Courts*, 78 Va. L. Rev. 1689, 1750 (1992). The earlier coordination occurs between state and federal courts in mass tort litigation, "the greater the benefits and the less the resistance." Manual for Complex Litigation § 20.312. Thus, at the outset, federal and state judges should "discuss mutual concerns and suggestions" and consider coordination of pretrial discovery, motions and hearings. *Id.* §§ 20.312, 20.313; *see, e.g.*, Federal Judicial Center, *Managing Multidistrict Litigation in Products Liability Cases: A Pocket Guide for Transferee Judges* at 22 (2011); Federal Judicial Center, *Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Judges* § VII (2009). State-court guidance is similar. *See* State Manual at 31 (recommending state court judges to "contact the [federal] judge to advise him or her that you are handling [related mass tort] cases and to learn what coordination is underway and possible").

**II.    State and federal courts frequently hold joint hearings to determine the admissibility of expert testimony under differing standards.**

To minimize "the costs, delays, and duplication of effort that often stem from such dispersed litigation," Manual for Complex Litigation § 20.31, state and federal courts have frequently held joint hearings to determine the admissibility of expert testimony. *See* National Judicial College, Resource Guide for Managing Complex

2

Litigation, at 19 (2010) (directing state courts to "[c]ooperate with the federal court judge to coordinate discovery and … [hold] joint *Daubert* or *Frye* hearings"). Joint hearings "achieve many of the benefits of consolidation before one judge while maintaining the involvement and preserving the distinct interests of both the federal and state courts." Schwarzer, *Judicial Federalism*, *supra*, at 1722. The Manual for Complex Litigation therefore recommends that when "scheduling *Daubert* proceedings in a dispersed mass tort case, an MDL judge should explore opportunities to coordinate scheduling with state courts handling parallel cases." Manual for Complex Litigation § 22.87. "Federal and state judges have successfully conducted joint *Daubert* hearings creating a record that other judges might use." *Id.*

State and federal courts hold joint expert-admissibility hearings even when various courts' ultimate legal standards differ. Consider *In re PPA*. There, like here, the federal MDL court invited state courts to jointly preside in the court's *Daubert* hearing. *In re Phenylpropanolamine (PPA)*, 2003 WL 22417238, at *1 (N.J. Super. Ct. Law Div. July 21, 2003). Eleven state courts joined, and the MDL court provided video recordings of the hearing to those who could not attend. Judge Barbara Rothstein et al., *A Model Mass Tort: The PPA Experience*, 54 Drake L. Rev. 621, 632–33 (2006). Though several of the state courts were required to apply *Frye*, "[t]he presentation of evidence by counsel took into account the different standards of admissibility being applied by judges from different states." *Id.* at 633.

3

*In re Welding Fume Products Liability Litigation* is another paragon of coordination. In that MDL, the federal court held a multi-day *Daubert* hearing on the admissibility of testimony from "core experts" who offered "generally applicable" opinions in more than one of the consolidated cases. Like in *PPA*, the MDL court invited state court judges presiding over related cases to attend the hearing. 2005 WL 1868046, at *2 n.3 (N.D. Ohio Aug. 8, 2005). Judges from California and Texas attended the hearing in person, while several other state court judges received video and transcript recordings of the proceeding. *Id.* "[T]he parties presented argument and expert testimony." *Id.* at *2. Questioning came from the various venues, as the attorneys and experts answered questions from the federal court, the federal court's special master, and the special master appointed by the California state court. *Id.*

The list of coordinated expert-admissibility hearings goes on. *See, e.g.*, *In re Bextra & Celebrex Mktg. Sales Pracs. & Prod. Liab. Litig.*, 524 F. Supp. 2d 1166, 1170–71 (N.D. Cal. 2007) (joint hearing on the admissibility of the parties' experts under *Frye* and *Daubert*); *In re Neurontin Prod. Liab. Litig.*, 897 N.Y.S.2d 671 (Sup. Ct. 2009) (same); *In re Bausch & Lomb Contacts Lens Sol. Prod. Litig.*, 906 N.Y.S.2d 778 (Sup. Ct. 2009) (same).

It is no surprise that state and federal courts routinely hold joint expert-admissibility hearings, as the practice offers clear benefits. For example, the

4

esteemed Judge Barbara Rothstein recently highlighted the advantages in time- and

cost-efficiency:

> The use of common experts creates another opportunity for efficiencies in federal-state coordination. In sophisticated MDL-type litigation, usually a limited number of experts are available to provide pertinent opinions. Additionally, and undoubtedly, such rare expertise can be accompanied by high expert fees. This is an added incentive to consolidate federal and state expert discovery, where possible. Cutting down on the time taken for such experts to duplicate their efforts between an MDL and state court proceedings can create huge financial and time savings for the parties.
>
> […]
>
> An additional ever-important, and thus ever-time consuming, aspect of expert evidence is ruling on its admissibility. *Daubert* motions, hearings, and orders can also be an area of fruitful federal-state coordination.
>
> Federal and state judges have presided over joint hearings on *Daubert* motions and used joint briefing to prepare for such hearings. Such briefings can be supplemented to account for variations in the applicable laws and choice-of-law questions…. And, as we all become increasingly familiar with internet conferencing programs like Zoom, the possibility of joint hearings bringing together parties from across the country only becomes greater…. The advantages of joint hearings are clear. It was so much more efficient than having substantially the same hearing in eleven or more different jurisdictions.

Judge Barbara Rothstein, *Federal-State Coordination in Multidistrict Litigations*, 89

UMKC L. Rev. 861, 863–64 (2021).

### III.    Coordination presents no offense to comity or jurisdiction.

Certain counsel in this litigation apparently believe that coordination between

federal and state courts somehow offends federalism. Quite the opposite. Joint

5

hearings to determine the admissibility of expert testimony only enhance comity between our courts. "The exchange of ideas, cooperation, and coordination *is* the exercise of comity within a MDL context and is not only desirable, but also essential to effective case management." *Dunlavey*, 2012 WL 3715456, at \*5. By fostering "[r]eciprocity and cooperation," joint federal and state hearings "create trust and mutual respect so that attempts to coordinate are not perceived as attempts to dominate." Manual for Complex Litigation, § 20.311.

Nor is there any specter of "domination" here. This Court's participation in the federal court's *Daubert* hearing would be strictly voluntary. The MDL court has never compelled this Court's participation, enjoined its proceedings, or otherwise interfered with its administration of the Delaware *Depo-Provera* cases. *See Dunlavey*, 2012 WL 3715456, at \*4–5. If this Court decides to participate in the joint hearing, it will of course determine the admissibility of the expert testimony under Delaware—not federal—law. *See* Del. Judges' Code of Judicial Conduct Canons 1, 2. Joint administration of the hearing does not offend our system of federalism.

Nor would a joint hearing exceed this Court's jurisdiction or other authority. In exercising its jurisdiction over the Delaware cases, this Court may participate in the joint hearing to "to secure the just, speedy and inexpensive determination of every proceeding." Del. Super. Ct. Civ. R. 1. It may "formulate procedural rules not specifically required by the Constitution or the legislature," "guided by

6

considerations of justice, and in the exercise of [its] inherent powers." *In re Asbestos Litig.*, 2014 WL 7150472, at *2 n.8 (Del. Super. Ct. Dec. 4, 2014) (citing *State v. Wright*, 821 A.2d 330, 333 (Del. Super. Ct. 2003)). The Court's "inherent power is not *per se* restricted by the Court's rules of procedure." *Wright*, 821 A.2d at 333.

In sum, the Court's participation in the joint hearing is a valid exercise of its jurisdiction over the Delaware *Depo-Provera* cases. *Cf. In re Phenylpropanolamine (PPA)*, 2003 WL 22417238, at *1; *In re Welding Fume*, 2005 WL 1868046, at *2, n.3; *In re Bextra & Celebrex,* 524 F. Supp. 2d 1166, 1170–71; *In re Neurontin*, 897 N.Y.S.2d 671; *In re Bausch & Lomb*, 906 N.Y.S.2d 778. It would not be the first time—and it surely will not be the last—where state and federal courts have coordinated proceedings to maximize efficiencies, reduce costs, and mitigate delay.

## Conclusion

For these reasons, this Court may jointly preside over the May 26-28 hearing regarding the admissibility of expert testimony in the *Depo-Provera* litigation.

Dated: March 20, 2026

Of Counsel:

Jennifer M. Hoekstra
Alystock, Witkin, Kreis & Overholtz
17 E. Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
jhoekstra@awkolaw.com

Christopher A. Seeger
Caleb Seeley (*Pro Hac Vice*)
Seeger Weiss LLP
Telephone: (973) 639-9100
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
cseeger@seegerweiss.com
cseeley@seegerweiss.com

/s/ Elazar A. Kosman
David Felice (#4090)
Elazar A. Kosman (#7077)
Bailey & Glasser, LLP
3801 Kennett Pike, Suite D-300
Wilmington, Delaware 19808
Telephone: (302) 504-6333
dfelice@baileyglasser.com
ekosman@baileyglasser.com

*Attorneys for Plaintiffs Bratcher, Cutshaw, Eddy, Hillary, Irwin, Smith, and Thornton*

8