# EXHIBIT C

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN RE: DEPO-PROVERA CASES

This Document Relates to:
All Cases

C.A. No. N25C-10-202 DEP

## DEFENDANTS' BRIEF IN SUPPORT OF A JOINT RULE 702 HEARING

Dated: March 27, 2026


OF COUNSEL:

Joseph G. Petrosinelli
Jessica Bodger Rydstrom
Annie E. Showalter
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5547
jpetrosinelli@wc.com
jrydstrom@wc.com
ashowalter@wc.com

Daniel J. Brown (#4688)
Dumonde Slam Dunkley (#7507)
Max G. Gioffre (#7596)
**MCCARTER & ENGLISH, LLP**
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6309
djbrown@mccarter.com
ddunkley@mccarter.com
mgioffree@mccarter.com

*Attorney for Defendants Pfizer Inc.,*
*Pharmacia LLC, and Pharmacia &*
*Upjohn Company LLC*

## TABLE OF CONTENTS

Introduction ........................................................................................................1

I.      Joint Hearings Are Common and Appropriate in These Circumstances ........2

II.     The MDL Court Would Not Exercise Jurisdiction over Delaware

        Plaintiffs' Claims .................................................................................7

III.    This Court May Participate in a Joint Hearing in Florida for

        Coordination and Efficiency Purposes ..........................................................10

Conclusion ......................................................................................................13

**TABLE OF AUTHORITIES**

**CASES**

*Biden v. Texas*, 597 U.S. 785 (2022) ....................................................................8

*Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787 (Del. 2006)..............7

*Dunlavey v. Takeda Pharmaceuticals America, Inc.*,
   2012 WL 3715456 (W.D. La. Aug. 23, 2012)...........................................3, 4, 5, 8

*Hudson v. State*, 312 A.3d 615 (Del. 2024)...........................................................10

*In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*,
   MDL No. 1785, 2009 WL 2750462 (D.S.C. Aug. 26, 2009)...............................3

*In re Welding Fume Prods. Liab. Litig.*,
   2005 WL 1868046 (N.D. Ohio Aug. 8, 2005).....................................................3

*In re Zantac (Ranitidine) Litig.*, 342 A.3d 1131 (Del. 2025) ..................................6

*Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020) ........................9

*M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513 (Del. 1999) .........................6

*Mathes v. General Motors, L.L.C.*, No. CL12001623-00,
   2015 WL 13567738 (Cir. Ct. Va. Sept. 4, 2015)...........................................9, 10

*Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826 (Del. Super. Ct. 2000)............10

*Scottoline v. Women First, LLC*, 342 A.3d 373 (Del. 2025) ..................................10

*State v. Wright*, 821 A.2d 330 (Del. Super. Ct. 2003) ............................................11

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ...................................8

**RULES**

Federal Rule of Evidence 702.........................................................................*passim*

Delaware Rule of Evidence 702 .....................................................................*passim*

# OTHER AUTHORITIES

Alexander B. Aikman, *Managing Mass Tort Cases: A Resource Book for State Court Trial Judges* § 3.4 (1995) ....................................................................5

Barbara J. Rothstein & Catherine R. Borden, *Managing Multidistrict Litigation in Products Liability Litigation Cases, A Pocket Guide for Transferee Judges* 27 (2011) ...............................................................................4

Barbara J. Rothstein, et al., *A Model Mass Tort: The* PPA *Experience*, DRAKE L. REV. 621 (2006) ............................................................................3, 5

Federal Judicial Center, *Manual for Complex Litigation* (4th ed.) § 20.313 ........4, 5

*In re: Abilify (Aripiprazole) Prods. Liab. Litig.*, 3:16-md-2734, Amended Order, ECF No. 796 (N.D. Fla. Mar. 15, 2018)...................................3

*In re: Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, Pretrial Order 143, ECF No. 1878 (E.D. Pa. October 21, 2011)..........................3

*In re Depo-Provera Cases*, C.A. No. N25C-10-202 (Del. Super. Ct. Mar. 11, 2026) (Vavala, J.).........*passim*

*In re: Incretin-Based Therapies Prods. Liab. Litig.*, 13-md-2452-AJB-MDD, Omnibus Order, ECF No. 4048 (S.D. Cal. Mar. 9, 2021)...................................3

**Introduction**

Coordination between judges presiding over federal multidistrict litigations and state coordinated proceedings has long been encouraged and implemented to promote judicial economy, reach efficient resolution of common issues, and reduce the burden on all parties to complex mass tort litigations.  A joint hearing with the MDL and New York courts on Rule 702 motions directed to the parties' general causation experts is a classic example where such coordination makes sense.  "[T]his is an opportunity to have a hearing regarding common issues that are relevant to all the plaintiffs and the defendants in this matter."  *In re Depo-Provera Cases*, C.A. No. N25C-10-202, at 28:4-11 (Del. Super. Ct. Mar. 11, 2026) (Vavala, J.) (hereinafter "3/11/26 Status Conf. Tr.").  This Court and the MDL court are considering the same issue—whether and under what circumstances Depo-Provera could cause the development of meningioma.  This Court and the MDL court will consider the same opinions from substantially the same experts, as non-objecting Plaintiffs' counsel have submitted the same reports from the same five experts (out of eight total Plaintiff experts) in both Delaware and the MDL, and Pfizer has submitted all five of its experts in both jurisdictions.  And this Court and the MDL court will apply the identical legal standard, Delaware Rule of Evidence 702 and Federal Rule of Evidence 702, which mirror one another, to determine the admissibility of expert testimony.

1

Requiring separate hearings would force the same experts to testify on the same topics in three different courts, at significant cost and inconvenience to Plaintiffs, Defendants, and each party's experts.  A joint Rule 702 motions hearing will avoid unnecessary duplication and save time and expense for all parties.  And because each court will independently evaluate the expert evidence, apply the particular case law of its jurisdiction, and issue separate rulings impacting only the cases pending before it, both the federal court and state courts can participate in a joint hearing entirely consistent with the bounds of their jurisdiction.  The Keller Plaintiffs' claim that if a joint hearing occurs, cases pending in Delaware will somehow be transformed into cases pending in federal court, is unsupported by any legal authority and is wrong.

Accordingly, Pfizer respectfully submits this Brief in Support of a Joint Rule 702 Hearing, in response to the Keller Plaintiffs' Objections to a Joint Rule 702 Hearing (hereinafter "Objecting Plaintiffs' Brief").

## I.  Joint Hearings Are Common and Appropriate in These Circumstances

Joint hearings on the admissibility of general causation expert testimony are a well-established and common feature of nationwide products liability litigation pending in both federal MDL and state-court coordinated proceedings.  To promote judicial economy and avoid duplicative efforts, judges in parallel proceedings frequently coordinate to address the admissibility of expert testimony,

2

including by presiding over joint hearings on these motions.  *See, e.g.*, *In re: Incretin-Based Therapies Prods. Liab. Litig.*, 13-md-2452-AJB-MDD, Omnibus Order, ECF No. 4048 at 4 n.3 (S.D. Cal. Mar. 9, 2021) (noting the joint hearing on "nearly identical summary judgment and evidentiary motions pending in the state and federal proceedings"); *In re: Abilify (Aripiprazole) Prods. Liab. Litig.*, 3:16-md-2734, Amended Order, ECF No. 796, at 2 (N.D. Fla. Mar. 15, 2018) (stating that a "four-day evidentiary hearing [on general causation] was conducted" with the New Jersey Superior Court); *In re: Avandia Marketing, Sales Practices and Prods. Liab. Litig.*, 2:07-md-01871-CMR, Pretrial Order 143, ECF No. 1878, at 1 (E.D. Pa. October 21, 2011) (inviting state court liaison judges to participate in *Daubert* proceedings); *In re Bausch & Lomb, Inc. Contact Lens Sol. Prods. Liab. Litig.*, MDL No. 1785, 2009 WL 2750462, at *3 n.23 (D.S.C. Aug. 26, 2009) ("The joint *Frye*/*Daubert* hearing was held in recognition of the importance of coordinating related Federal and State litigation in order to reduce costs and delays."); Barbara J. Rothstein, et al., *A Model Mass Tort: The* PPA *Experience*, DRAKE L. REV. 621, 632-33 (2006) (describing coordinated *Daubert* hearing involving eleven judges from seven states in MDL No. 1407, *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*); *In re Welding Fume Prods. Liab. Litig.*, 2005 WL 1868046, at *2 n.3 (N.D. Ohio Aug. 8, 2005) (describing *Daubert* hearing involving two state court judges); *see also Dunlavey v. Takeda Pharms.*

3

*America, Inc.*, 2012 WL 3715456, at *2 (W.D. La. Aug. 23, 2012) (recognizing the "plethora of cases where coordination has been utilized" in MDL and mass tort litigation). These myriad examples demonstrate that joint hearings are a commonplace tool to promote efficiency in mass tort litigation involving parallel proceedings in state and federal courts. Objecting Plaintiffs' position that such hearings are improper is not supported by any case law. Indeed, Objecting Plaintiffs fail to cite a single case finding that participation in a joint hearing in these circumstances exceeds the bounds of a court's authority.

To the contrary, this type of coordination has been widely recognized and encouraged as a means of creatively managing complex litigation. *See Dunlavey*, 2012 WL 3715456, at *2 (observing coordination is "not a novel thing; it is not improper; rather, it is advised, encouraged and welcomed by the federal and state courts"); *see also* Barbara J. Rothstein & Catherine R. Borden, *Managing Multidistrict Litigation in Products Liability Litigation Cases, A Pocket Guide for Transferee Judges* 27 (2011) (hereinafter "Pocket Guide for Transferee Judges") (recognizing positive effects of coordination including diffusion of natural tension arising during concurrent proceedings and promotion of efficient procedures). Federal judicial guidance favors coordination under these circumstances to minimize "the costs, delays, and duplication of effort that often stem from such dispersed litigation." Federal Judicial Center, *Manual for Complex Litigation*

4

§ 20.31 (4th ed. 2004) (hereinafter "Manual for Complex Litigation"); *see also*

*Dunlavey*, 2012 WL 3715456, at \*3 (quoting Alexander B. Aikman, *Managing*

*Mass Tort Cases: A Resource Book for State Court Trial Judges* § 3.4 (1995))

(explaining state court judicial authorities similarly view coordination as "highly

advantageous"). Suggested coordination efforts include, among other things,

"hearings at which *all involved judges preside*." Pocket Guide for Transferee

Judges, at 22 (emphasis added); *see also* Manual for Complex Litigation, at §

22.87 (encouraging MDL judges to "explore opportunities to coordinate

scheduling with state courts handling parallel cases" and noting some judges "have

successfully conducted joint *Daubert* hearings creating a record that other judges

might use"). In fact, this type of coordination has "become accepted as a model

case management technique" for the resolution of scientific issues in complex

litigation. Rothstein, *A Model Mass Tort*, at 638. Thus, far from being a "lawless"

proceeding, as Objecting Plaintiffs claim, a joint hearing here reflects the type of

federal-state judicial cooperation and coordination that is "not only advised, [but]

advised often." *Dunlavey*, 2012 WL 3715456, at \*2.

The Depo-Provera proceedings in particular are ideally suited for

coordination. The issues to be litigated are identical across the MDL and

Delaware: both courts must address the issue of general causation—namely,

whether and under what circumstances Depo-Provera could cause the development

5

of meningioma—and both courts will confront the same questions concerning the various experts' qualifications, their methodologies, and the relevance of their proffered opinions. A joint hearing offers the most efficient path to resolving these issues, especially given that the five experts proffered by the non-objecting Plaintiffs and all five of Pfizer's experts will present the same reports, opinions, and testimony in both Delaware and the MDL. That the Objecting Plaintiffs have submitted reports from three additional experts is immaterial; those experts follow the same methodology, cite the same literature as the other Plaintiffs' experts, and likewise can be efficiently addressed at a joint hearing. Requiring separate hearings where all issues (and ten of the thirteen experts) overlap would be a waste of time, resources, and expense for the parties, the experts, and the courts.

This is especially true where the applicable legal standard is substantially the same in Delaware and the MDL. Delaware Rule of Evidence ("DRE") 702, which governs the admissibility of expert testimony, is "identical to its federal counterpart," Rule 702 of the Federal Rules of Evidence. *M.G. Bancorporation, Inc. v. Le Beau*, 737 A.2d 513, 521 (Del. 1999). As the Delaware Supreme Court recently confirmed, because Delaware follows FRE 702 and views official comments to the federal rule as helpful authority in construing DRE 702, Delaware courts "appropriately look to federal case law and commentary in discharging their gatekeeping function regarding expert testimony." *In re Zantac (Ranitidine) Litig.*,

6

342 A.3d 1131, 1144 (Del. 2025); *see also Bowen v. E.I. DuPont de Nemours & Co., Inc.*, 906 A.2d 787, 794 (Del. 2006) (explaining that "D.R.E. 702 is substantially similar to Federal Rule of Evidence 702" and applying *Daubert* standards).  Additionally, because a joint Rule 702 motions hearing turns on evidentiary determinations, it does not implicate substantive issues of Delaware state law.  It therefore will not affect any plaintiff's substantive rights (indeed, over 95% of plaintiffs with cases pending in this Court are not from Delaware).  A joint hearing thus avoids the senseless duplication that would result from holding separate hearings where both courts apply the same legal framework to the same legal issues with respect to the same experts.[1]

## II.    The MDL Court Would Not Exercise Jurisdiction over Delaware Plaintiffs' Claims

The Objecting Plaintiffs introduce a non-issue by arguing that the MDL Court has no subject matter jurisdiction over Delaware Plaintiffs' claims.  No one in this litigation has argued anything to the contrary.  In conducting a joint hearing simply for efficiency purposes, the MDL Court would not be exercising jurisdiction over Delaware (or New York) cases or deciding anything about those

---

[1] Objecting Plaintiffs take issue with the fact that the current deadline for replies falls after the proposed Rule 702 hearing.  *See* Opposing Plaintiffs' Brief at 5 n.13. Defendants are happy to meet and confer with Objecting Plaintiffs to ensure that all parties file replies prior to the hearing.

cases.  The participating federal and state judges would each make their own evaluations of the evidence, each independently apply the law of their jurisdiction, and each issue their own written decisions on the motions pending before them applying only to the cases pending in their court.  Because the MDL court would not adjudicate any cases that are not pending before it, issues related to its subject matter jurisdiction over state cases are not implicated.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (defining subject matter jurisdiction as a court's power to adjudicate a case); *Biden v. Texas*, 597 U.S. 785, 798 (2022) (same).

This Court is not the first to consider jurisdictional issues as they relate to coordination between federal MDLs and related state coordinated proceedings.  In response to a letter from plaintiffs' counsel objecting to coordination with state courts, an MDL court endorsed comity between state and federal courts in mass tort proceedings and clarified that coordination does not involve federal court exercise of jurisdiction over state court cases:

> It is wholly without question this court does not have jurisdiction over state court cases, nor has it, nor will it, attempt to in any way, exercise improper jurisdiction over state courts and the cases within those courts.  However, as the federal judge tasked with managing this behemoth litigation, history, guidance, comity and necessity have proven it is desirable for fairness to all parties and in promotion of equitable and efficient resolution, that this court reach out to the other judges who, also, have cases in their courts, in order to discuss possible coordination.

*Dunlavey*, 2012 WL 3715456, at *2.

8

This Court has similarly clarified that a joint Rule 702 hearing does ***not*** mean that "Judge Rodgers is going to exercise jurisdiction and issue a ruling impacting [Delaware Plaintiffs][,]" and that this Court will "be issuing separate determinations from the MDL and from New York or any other state that chooses to participate in the matter." 3/11/26 Status Conf. Tr., at 27:21-28:9. The parties will be free to make any jurisdiction-specific arguments to the relevant courts, and each judge will determine how to handle objections, additional questioning of the experts, and other logistical concerns.[2]

The cases Objecting Plaintiffs cite in an attempt to manufacture an issue related to subject matter jurisdiction arose in entirely different circumstances. Objecting Plaintiffs' Brief at 10, 14. For example, in *Johnson v. NPAS Solutions, LLC*, the court stated that few courts have "paused to consider the legal authority for *incentive awards*" for class representatives. 975 F.3d 1244, 1259 (11th Cir. 2020) (emphasis added). In *Mathes v. General Motors, L.L.C.*, the Virginia state court declined to require a single plaintiff to conduct discovery before a federal MDL judge in New York where the federal judge's decisions regarding discovery would govern the state-court plaintiff's claims. *See* No. CL12001623-00, 2015

---

[2] In Rule 702 hearings, where the rules of evidence like hearsay, etc., do not apply, there are rarely any objections. And if there were in this litigation, each judge would decide how to handle such objections under the relevant procedural rules.

9

WL 13567738, at *2-3 (Cir. Ct. Va. Sept. 4, 2015).  The facts of *Mathes* are distinguishable because, here, the MDL Court will not issue any decisions governing the Delaware Plaintiffs.  Instead, a joint hearing is strictly a means of promoting judicial economy and reducing the burden on the parties, the experts, and the courts.

**III.    This Court May Participate in a Joint Hearing in Florida for Coordination and Efficiency Purposes**

As Objecting Plaintiffs concede, "this court is not required to hold a *Daubert* hearing."  3/11/26 Status Conf. Tr., at 20:21-23; *see also Minner v. Am. Mortg. & Guar. Co.*, 791 A.2d 826, 845 (Del. Super. Ct. 2000) ("While the matter is always discretionary, absent a special reason and need to have the hearings, requests for them should generally be denied."); *Hudson v. State*, 312 A.3d 615, 628-29 (Del. 2024) ("As an initial matter, these hearings are discretionary…. As long as the trial judge can gather sufficient information to fulfill its gatekeeping duties, the form of the proceeding is within their discretion."); *Scottoline v. Women First, LLC*, 342 A.3d 373, 385 (Del. 2025) (same).  "Oral argument is discretionary," and the Court noted it would not "enter a default" or any other sanction against any plaintiff whose counsel decided not to attend the joint hearing.  3/11/26 Status Conf. Tr., at 22:12-14; *id.* at 22:18-21 ("I'm not going to hold that as a default against you, and I will consider anything that you file on the papers consistent with our rules.").  The Court told Objecting Plaintiffs, "you need not appear," *id.* at 22:23-23:1;

10

accordingly, "there's no compulsion by this court requiring [Objecting Plaintiffs] to attend a hearing in Florida." *Id.* at 23:21-22.  Counsel for all of the other Delaware Plaintiffs, in contrast, have stated they will appear, and indeed they fully support a joint hearing.

The Court has the inherent power to participate in a hearing in Florida to promote judicial economy in these parallel proceedings.  *See, e.g.*, *State v. Wright*, 821 A.2d 330, 333 (Del. Super. Ct. 2003) ("Indeed, guided by considerations of justice, and 'in the exercise of [inherent] powers, [ ] courts may, within limits, formulate procedural rules not specifically required by the Constitution or the [legislature].'") (alterations in original) (internal citations omitted).  Objecting Plaintiffs initially argue that the Court must be physically located in Delaware to participate in a joint hearing, asserting that the Court does not have the authority to attend a hearing in Florida because that would put plaintiffs "in" federal court.  *See* Objecting Plaintiffs' Brief at 13 n.41.  For the reasons discussed above, that is wrong—the Delaware Plaintiffs' cases are pending in Delaware, and nothing about a joint hearing would change that fact.  Beyond that, if physical location were truly an issue, then under Objecting Plaintiffs' logic, the Court could sit in its chambers in Delaware and join a joint hearing by Zoom.  But in addressing exactly that fact pattern, Objecting Plaintiffs say that this would still put Delaware plaintiffs "in" federal court, *id.*, which shows that physical location is irrelevant to their

11

argument.  Instead, Objecting Plaintiffs' argument is that under no circumstances can this Court participate in a joint Rule 702 hearing with any other court.  For the reasons explained, that argument is wrong and unsupported by any law.

Under Objecting Plaintiffs' view, if the state courthouse in Wilmington were closed due to flooding, this Court would not be permitted to hold a hearing in this litigation in the federal courthouse in Wilmington, even as a matter of convenience.  No one could seriously argue that such a situation would cause the cases to be "in" federal court.

Finally, Objecting Plaintiffs argue that a joint hearing in Florida would force them to travel to a "distant tribunal" or "send[] their lawyers to argue in a courthouse 1,000 miles away from this Court."  Objecting Plaintiffs' Brief at 3, 16. This argument is disingenuous.  Counsel from Keller Postman, Matthews & Associates, and Pulaski Kherkher are not from Delaware, and having a hearing in Florida is no prejudice to them.  To the contrary, for Matthews & Associates and Pulaski Kherkher (who are both located in Houston, Texas), Pensacola, Florida is actually 1,000 miles *closer* to their offices than Wilmington, Delaware. Accordingly, Plaintiffs' argument that the Court's logic would extend to holding a hearing "in [Pfizer's] C Suite or atop the Eiffel Tower," *see* Objecting Plaintiffs' Brief at 17, is inapplicable because those places would not be efficient, would (in

the former case) suggest bias, would not be agreed to by the other judges, and would impose significant extra costs on the parties.  None of that is true here.

### Conclusion

"This court has made it clear and the Supreme Court has affirmed this court that it will be conducting coordinated proceedings."  3/11/26 Status Conf. Tr., at 24:23-25:2.  Objecting Plaintiffs' attempt to sidestep such coordination is unfounded.  Their objection to a joint Rule 702 motions hearing should be denied.

DATED: March 27, 2026

**MCCARTER & ENGLISH, LLP**

*/s/ Daniel J. Brown*

OF COUNSEL:

Joseph G. Petrosinelli
Jessica Bodger Rydstrom
Annie E. Showalter
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5547
jpetrosinelli@wc.com
jrydstrom@wc.com
ashowalter@wc.com

Daniel J. Brown (#4688)
Dumonde Slam Dunkley (#7507)
Max G. Gioffre (#7596)
405 N. King Street, 8th Floor
Wilmington, DE 19801
(302) 984-6309
djbrown@mccarter.com
ddunkley@mccarter.com
mgioffree@mccarter.com

*Attorney for Defendants Pfizer Inc.,
Pharmacia LLC, and Pharmacia &
Upjohn Company LLC*

13

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2026, a true and correct copy of the

foregoing document was served upon all counsel of record via File & ServeXpress.

*/s/ Daniel J. Brown*
Daniel J. Brown (#4688)