# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>All Cases; including:<br>*Toney v. Pfizer*, No. 3:24-cv-624<br>*Schmidt v. Pfizer*, No. 3:25-cv-81<br>*Valera-Arceo v. Pfizer*, No. 3:25-cv-98<br>*Wilson v. Pfizer*, No. 3:25-cv-100<br>*Blonski v. Pfizer*, No. 3:25-cv-167 | Case No. 3:25-md-3140<br><br>Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. KURT T. BARNHART PURSUANT TO FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

MOTION .............................................................................................................. 1

PRELIMINARY STATEMENT ........................................................................... 1

LEGAL STANDARD ........................................................................................... 3

ARGUMENT ........................................................................................................ 5

I.   DR. BARNHART'S OPINION THAT DEPO-PROVERA ONLY CAUSES GROWTH OF EXISTING MENINGIOMAS LACKS A RELIABLE BASIS AND WILL NOT ASSIST THE TRIER OF FACT ................................................................. 7

II.  DR. BARNHART'S OPINION ON CAUSATION MORE THAN TWO YEARS AFTER CEASING DEPO-PROVERA LACKS A RELIABLE BASIS .............................................................. 10

III. DR. BARNHART'S OPINION THAT DEPO-PROVERA TAKEN FOR LESS THAN ONE YEAR CANNOT CAUSE MENINGIOMA IS UNRELIABLE ........................................... 12

IV.  DR. BARNHART'S OPINION THAT NO RELIABLE EVIDENCE EXISTED BEFORE 2024 IS IRRELEVANT TO GENERAL CAUSATION AND UNRELIABLE ...................... 15

CONCLUSION ................................................................................................... 16

LOCAL RULE 7.1(B) CERTIFICATION

CERTIFICATE OF COMPLIANCE

i

# TABLE OF AUTHORITIES

Page

CASES

*3M Combat Arms Earplug Prods. Liab. Litig.*, *In re*, 2022 WL 1223232
(N.D. Fla. Mar. 10, 2022) ........................................................................4

*Abilify (Aripiprazole) Prods. Liab. Litig.*, *In re*, 299 F. Supp. 3d 1291
(N.D. Fla. 2018).....................................................4, 5, 8, 9, 13, 15

*Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296
(11th Cir. 2014) ...............................................................................1, 4, 8, 9

*Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) ...............................1, 3

*Deepwater Horizon Belo Cases*, *In re*, 2020 WL 6689212 (N.D. Fla.
Nov. 4, 2020), *aff'd*, 2022 WL 104243 (11th Cir. Jan. 11, 2022) ............1, 16

*General Elec. Co. v. Joiner*, 522 U.S. 136 (1997)........................................5, 12, 15

*Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010)...................5, 6

*McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233 (11th Cir. 2005).....................1, 16

*McDowell v. Brown*, 392 F.3d 1283 (11th Cir. 2004) ......................................12, 14

*Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005)....................................3, 4

RULES

Fed. R. Civ. P.:

Rule 26..............................................................................................14

Rule 26(a) ........................................................................................3, 6

Fed. R. Evid.:

Rule 401.............................................................................................3

Rule 702.........................................................................................1, 2, 3

Rule 702(a) .........................................................................................3

Rule 702(c) ....................................................................................3, 6

Rule 702(d) ........................................................................................6

advisory committee's note to 2023 amendment ...................................5

N.D. Fla. Loc. R. 7.1 ............................................................................1

## MOTION

Pursuant to Local Rule 7.1, Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), plaintiffs move to exclude the testimony of Dr. Kurt T. Barnhart.

## PRELIMINARY STATEMENT

All experts in this litigation, including Pfizer's general-causation expert Dr. Kurt Barnhart, agree that there is a causal association between Pfizer's drug, injectable Depo-Provera (150mg),[1] and the growth of brain tumors, known as meningiomas.  This answers the question of general causation, which "refers to the 'general issue of whether a substance has the potential to cause the plaintiff's injury.'"  *Chapman v. Proctor & Gamble Distrib., LLC*, 766 F.3d 1296, 1306 (11th Cir. 2014) (citation omitted); *see In re Deepwater Horizon Belo Cases*, 2020 WL 6689212, at *8 (N.D. Fla. Nov. 4, 2020) (Rodgers, J.) ("General causation . . . is concerned with whether a 'drug or chemical *can* cause the harm plaintiff alleges,' that is, whether a chemical agent 'increases the incidence of disease in a group[.]'") (quoting *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005)) (emphasis in *McClain*), *aff'd*, 2022 WL 104243 (11th Cir. Jan. 11, 2022).

Pfizer's experts attempt to limit this fundamental consensus on general causation at the margins, but their opinions do not meet the standards for reliability

---

[1] Depo-Provera is the brand name for Depot injection of medroxyprogesterone acetate ("DMPA"), sometimes written as dMPA.

under Federal Rule of Evidence Rule 702.  Pfizer's expert Dr. Barnhart, a professor of obstetrics, gynecology, and epidemiology, concedes the existence of "a causal association between prolonged and current (or very recent) use of dMPA and the diagnosis of cerebral meningioma."  Ex. 1 (Barnhart Report 3).[2]  In concert with Pfizer's other experts, he seeks to chip away at general causation on several grounds, each of which is unreliable and should be rejected.

First, Dr. Barnhart argues that scientific evidence only supports a conclusion that Depo-Provera causes existing meningiomas to grow, but not that Depo-Provera can cause a new meningioma.  Besides lacking any foundation in scientific evidence and failing to employ a reliable methodology, this opinion is irrelevant to the general-causation inquiry:  can Depo-Provera cause plaintiffs' injuries?  Second, Dr. Barnhart argues evidence is insufficient to show that the increased risk of meningioma persists for more than two years after women stop using Depo-Provera. No study supports this conclusion, as Dr. Barnhart conceded.  Third, Dr. Barnhart seeks to opine that there is insufficient evidence of an increased risk for women who have used Depo-Provera for less than a year, a conclusion he reaches by ignoring and discounting contrary evidence.

---

[2] *See also* Ex. 2 (Barnhart Dep. Tr. 100:10-17) ("Q. And Opinion No. 1 is 'There appears to be a causal association between prolonged and current (or very recent) use of dMPA in the diagnosis of cerebral meningioma.'  Did I read that correctly?  A. Yes, you did.  Q. And you stand by that opinion today?  A. Yes, I do.").

Dr. Barnhart's opinions are deficient for other reasons as well. Dr. Barnhart admitted at his deposition that he did not disclose all of the articles he considered, in violation of Rule 26(a)'s disclosure requirements. His opinion that no reliable evidence of the causal association between Depo-Provera and meningioma existed before 2024 has no bearing on the question of general causation. It thus fails to meet Federal Rule of Evidence 401's relevance bar and will not help the factfinder, under Rule 702(a). It is also unreliable under Rule 702(c), because Dr. Barnhart failed to consider early biomechanism evidence supporting a causal association. Dr. Barnhart likewise failed to consider recent studies. Dr. Barnhart should be precluded from offering opinions on the biomechanism of meningioma, because he did not disclose any basis for an opinion on that issue and is unqualified to do so.

The Court should exclude Dr. Barnhart's opinions.

### LEGAL STANDARD[3]

The analytical framework for determining whether expert testimony is admissible under Federal Rule of Evidence 702 is set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. *See Rink v.*

---

[3] An extensive discussion of the factual background underlying this litigation can be found in Dkt. 427, Plaintiffs' Memorandum in Support of Their Opposition to Pfizer Inc., Pharmacia LLC, and Pharmacia & Upjohn Co. LLC's Motion for Summary Judgment Based on Federal Preemption (filed Sept. 19, 2025). This motion assumes familiarity with the background on Depo-Provera and meningiomas.

*Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005).  To be admissible, expert testimony must be offered by an expert "sufficiently qualified to testify about the matters he intends to address"; the expert must use a "sufficiently reliable" methodology "as determined by the sort of inquiry mandated in *Daubert*"; and "the testimony [must] assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *In re 3M Combat Arms Earplug Prods. Liab. Litig.*, 2022 WL 1223232, at *1 (N.D. Fla. Mar. 10, 2022) (Rodgers, J.); *see also Chapman*, 766 F.3d at 1304. The party offering the expert has the burden of showing, by a preponderance of the evidence, that each of these requirements is met.  *See Rink*, 400 F.3d at 1292.

To be reliable, "an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue." *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1305 (N.D. Fla. 2018) (Rodgers, C.J.).  Reliability depends on "several factors, including: (1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique is generally accepted in the relevant community." *Id.*

To assist the trier of fact, expert testimony must be relevant to an issue in the case, in that it "logically advances a material aspect of the proposing party's case"

and "fits" the disputed facts. *Id.* Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). An expert's opinion must "stay within the bounds" of what can be concluded from a reliable application of the expert's methodology. Fed. R. Evid. 702(d) advisory committee's note to 2023 amendment. Opinions that lack a reliable factual basis or are not supported by scientific literature may be excluded. *See Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1199-1200 (11th Cir. 2010).

## ARGUMENT

Undercutting the reliability of Dr. Barnhart's opinions is his failure to consider, cite, disclose, or rely upon the evidence – some published decades before 2024 – detailing the biomechanism whereby progestins like DMPA contribute to meningioma growth. Dr. Barnhart cited no article on the biomechanism of meningioma growth published before 2024. Ex. 2 (Barnhart Tr. 116:16-24, 117:19-118:10). He disclaimed knowledge of key studies, published in the 1990s, elucidating this biomechanism. Ex. 2 (Barnhart Tr. 117:3-11).

Dr. Barnhart's failure to address this evidence is unsurprising, considering that he has never previously testified about, spoken on, treated, or published on meningiomas. Ex. 2 (Barnhart Tr. 45:13-15, 81:3-5, 18-20). As such, he lacks the qualifications to offer an opinion on the biomechanism behind Depo-Provera's effect

on meningioma growth.  *See Hendrix*, 609 F.3d at 1193 (an expert must have sufficient "knowledge, skill, experience, training, or education . . . [to] form . . . an opinion" about an "issue before the court").  Yet Dr. Barnhart agreed that literature existed before 2024 regarding other progestins and progestin receptors and that this literature provided plausible biological mechanism evidence before 2024.  Ex. 2 (Barnhart Tr. 124:21-126:20).

Further, despite testifying that he disclosed all the studies he considered in forming his opinions, Ex. 2 (Barnhart Tr. 48:15-19, 61:19-22, 121:16-20), Dr. Barnhart admitted repeatedly under questioning that he failed to disclose all the articles that he considered in forming his opinions, Ex. 2 (Barnhart Tr. 68:3-72:17, 121:22-122:18).  In fact, Dr. Barnhart estimated that he failed to disclose "at least" as many articles as he disclosed – *i.e.*, 36.  Ex. 2 (Barnhart Tr. 73:6-16).  As such, his disclosed opinions run afoul of Rule 26(a)'s disclosure requirements.

While testifying it was important to stay abreast of relevant literature, Dr. Barnhart also conceded that he had not reviewed recent studies, including Chen 2026 and Maharani 2026.  Ex. 2 (Barnhart Tr. 52:1-19).  These cross-cutting failures demonstrate that his opinions are not based on reliable principles or methods, as Rule 702(c) and Rule 702(d) require.  In addition to those infirmities, Dr. Barnhart's specific opinions should be excluded for the following additional reasons.

## I. DR. BARNHART'S OPINION THAT DEPO-PROVERA ONLY CAUSES GROWTH OF EXISTING MENINGIOMAS LACKS A RELIABLE BASIS AND WILL NOT ASSIST THE TRIER OF FACT

Dr. Barnhart's Opinion #4 – that the causal association "is limited to the growth of an already-existing meningioma" and that the evidence does not suggest a causal association with new meningioma, Ex. 1 (Barnhart Report 4) – should be excluded. This opinion lacks a reliable basis and is irrelevant to the general-causation inquiry. Dr. Barnhart also failed to disclose the basis for this opinion.

Dr. Barnhart conceded that epidemiological studies like those he reviewed cannot determine whether a meningioma that is diagnosed was initiated by Depo-Provera. Ex. 2 (Barnhart Tr. 148:11-149:9). He conceded he had seen no epidemiological study assessing participants at baseline to determine if they had a meningioma before starting Depo-Provera. Ex. 2 (Barnhart Tr. 149:22-150:2). Indeed, no study (cited by Dr. Barnhart or otherwise) supports a conclusion that Depo-Provera only contributes to the growth of existing meningiomas, as opposed to new meningiomas. Dr. Barnhart concedes in his report that "[o]bservational studies do show dMPA use predates diagnosis of meningioma," Ex. 1 (Barnhart Report 31), but he notes this may be because the meningiomas existed but were not diagnosed before DMPA use.

Because his review is limited to epidemiological studies not designed to address the opinion he is offering (which he readily admits), Dr. Barnhart is

incapable of determining when a meningioma began.  Dr. Barnhart's methodology is not "sufficiently reliable" to answer the question, and his opinion on this question should be excluded.  *Chapman*, 766 F.3d at 1304.  Due to delayed diagnosis of meningiomas and the fact that women are not routinely giving MRIs before taking contraception, observational data alone cannot tell us whether Depo-Provera can initiate meningiomas – evidence about the biomechanism of Depo-Provera's effect on meningiomas at the molecular level is required.  Dr. Barnhart's "methodology" of reviewing only certain epidemiological studies is not "properly applied to the facts at issue" – in this case, whether a meningioma existed, or could have existed, before Depo-Provera accelerated its growth.  *Abilify*, 299 F. Supp. 3d at 1305.

Dr. Barnhart's opinion is unreliable for the further reason that he failed to consider or disclose the types of studies that *could* answer the question on which he proposes to opine.  He did not consider any molecular studies addressing the question whether DMPA caused initiation of a meningioma.  Dr. Barnhart conceded that he would need to see such studies to answer the question.  Ex. 2 (Barnhart Tr. 143:6-145:1).  He testified that he had not done a "comprehensive search" of medical literature for such studies.  Ex. 2 (Barnhart Tr. 145:20-146:5).  He reviewed no study concluding that DMPA does not cause initiation of a meningioma.  Ex. 2 (Barnhart Tr. 146:23-147:6).

Moreover, although Dr. Barnhart neglected to disclose "specific references or a specific study" on the biomechanism underlying Depo-Provera's effect on meningioma growth, Ex. 2 (Barnhart Tr. 69:9-70:17), he seeks to include opinions on biomechanism as part of his opinion that Depo-Provera cannot initiate growth of a new meningioma. Yet Dr. Barnhart conceded that he has not seen any biomechanism or molecular study on this topic. Ex. 2 (Barnhart Tr. 144:11-145:1); *see also supra* pp. 5-6 (detailing Dr. Barnhart's lack of qualifications to offer an opinion on biomechanism). Moreover, he is unqualified to assess such research, because he lacks expertise in meningiomas. Ex. 2 (Barnhart Tr. 45:9-22) (never testified on or treated brain tumors).

Finally, Dr. Barnhart's opinion on meningioma growth vs. initiation should be excluded because it is irrelevant in determining general causation. Dr. Barnhart admits – indeed, offers the opinion – that "dMPA is actually associated with meningioma" "through promotion of an existing meningioma with progesterone receptors." Ex. 2 (Barnhart Tr. 142:17-25). The question on general causation is whether Depo-Provera "has the potential to cause the plaintiff's injury." *Chapman*, 766 F.3d at 1306; *see Abilify*, 299 F. Supp. 3d at 1306 (general causation concerns whether the drug "can, in general, cause the type of harm alleged by the plaintiff"). If Depo-Provera can accelerate meningioma growth, as Dr. Barnhart concedes, his

unsupported opinion on initiation versus promotion is an unhelpful distraction from that general-causation analysis.

## II.   DR. BARNHART'S OPINION ON CAUSATION MORE THAN TWO YEARS AFTER CEASING DEPO-PROVERA LACKS A RELIABLE BASIS

Dr. Barnhart's Opinion #6 – that there is no evidence of an association between DMPA use and meningioma after two years since stopping use, Ex. 1 (Barnhart Report 4) – is likewise unsupported.  The Court should exclude it.

Dr. Barnhart does not try to conceal the fact that not a single study shows that Depo-Provera's acknowledged elevated risk of meningioma disappears two years after the patient stops taking the drug.  He concedes in his report that "none of the dMPA-specific literature" he reviewed "specifically evaluates or measures the risk of meningioma after cessation of use (in that the studies combine women diagnosed with meningioma while taking dMPA with those diagnosed after stopping dMPA)." Ex. 1 (Barnhart Report 13).  He testified that no study has considered whether the increased risk of meningioma stops after two years, and he agreed he has seen no evidence showing risk goes away after two years.  Ex. 2 (Barnhart Tr. 175:19-25).

In the absence of such evidence, Dr. Barnhart instead relies, puzzlingly, on two studies concluding that there *is* an increased risk of meningioma for women who have ceased taking Depo-Provera one year ago and two years ago.  Ex. 2 (Barnhart Tr. 171:4-13) (discussing Ex. 3 (Griffin & Arend (2025)) and Ex. 4 (Reynolds

2025)).  Dr. Barnhart indicated these are the only two studies that quantify risk based on duration of time *after* exposure.  Ex. 2 (Barnhart Tr. 171:14-20).  But Griffin & Arend does not report, as an odds ratio, data for women who stopped taking Depo-Provera more than two years ago.  Ex. 2 (Barnhart Tr. 172:16-173:5).  Dr. Barnhart relies on what he refers to as "indirect evidence" to conclude that there is no statistically significant increased risk *after* two years of discontinuation.  Ex. 2 (Barnhart Tr. 175:7-14).  But studies showing an increased risk at one year and two years after cessation, which did not report odds ratios for the level of risk after that, hardly support a conclusion that the increased risk disappears after two years.

Dr. Barnhart justified this conclusion by stating his belief that, if the studies he cited had reported risk after two years of discontinuation, those results would not have been statistically significant.  Ex. 2 (Barnhart Tr. 172:16-173:15).  But he offered no evidence for this view, which in any event contradicts his testimony.  Even if the risk after two years were not statistically significant if reported, Dr. Barnhart testified that, in determining whether or not there was a causal association, he *would* consider studies showing an increased risk, even if not statistically significant.  Ex. 2 (Barnhart Tr. 105:25-106:5).

Under questioning, Dr. Barnhart disavowed the opinion that a meningioma goes away after stopping DMPA, stating instead that it may stabilize or shrink.  "I'm not suggesting that the meningioma which preexisted is going to disappear."  Ex. 2

(Barnhart Tr. 178:14-179:25). And he acknowledged that it can take years to be diagnosed with meningioma. Yet he offers no affirmative evidence that a meningioma diagnosed three years after a patient stops taking it cannot be attributed to her use of Depo-Provera.

Besides lacking a reliable basis, this opinion fails the "helpfulness" criterion, because it is not a "fit" with the general-causation inquiry of whether Depo-Provera can cause meningioma growth. This opinion is more appropriately considered, if at all, at the specific-causation stage, when a plaintiff with a meningioma must show that *her* meningioma was caused by her exposure to Depo-Provera under applicable state-law standards. *See Joiner*, 522 U.S. at 146 (an expert's opinion does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion); *see also McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004) ("Under *Daubert*, scientific testimony does not assist the trier of fact unless the testimony has a justified scientific relationship to the pertinent facts.").

## III.  DR. BARNHART'S OPINION THAT DEPO-PROVERA TAKEN FOR LESS THAN ONE YEAR CANNOT CAUSE MENINGIOMA IS UNRELIABLE

Dr. Barnhart's Opinion #5 – that taking Depo-Provera for less than one year cannot cause meningioma growth – is unreliable, because it discounts contrary evidence, Ex. 1 (Barnhart Report 4), without sufficient basis. Dr. Barnhart did not dispute that the Griffin 2024 study found an increased risk of developing

meningioma within one year while on Depo-Provera.  Ex. 2 (Barnhart Tr. 154:8-155:4) (agreeing "in that one finding in that one paper, that was statistically significant"); *accord* Ex. 1 (Barnhart Report 20) (acknowledging that the Griffin study "reported a statistically significant increase in risk for dMPA use less than one year"); *see also* Ex. 2 (Barnhart Tr. 156:14-157:11) (discussing Table 4 of Ex. 5 (Griffin (2024)), which was Exhibit 9 to Dr. Barnhart's deposition), confirming an odds ratio of 1.35 for injection use of less than or equal to one year).  He could identify no study establishing short-term use carries no risk or that the risk was limited to long term, and he acknowledged that the Roland study merely lacked enough data to report an odds ratio for patients who used Depo-Provera for less than one year.  Ex. 2 (Barnhart Tr.114:9-116:2) (discussing Ex. 7 (Roland (2024), which was Exhibit 8 to Dr. Barnhart's deposition).  Yet he failed to include an analysis of the Bradford Hill factors concerning exposure to Depo-Provera for less than one year.  Ex. 2 (Barnhart Tr. 104:2-15).

This is not a reliable methodology.  *See Abilify*, 299 F. Supp. 3d at 1307 (causation inquiry is guided by the "well-established" Bradford Hill factors).  Dr. Barnhart gave no reliable reason for discounting the Griffin evidence, saying that "I think in totality, that that one data point is not reliable enough to make that conclusion that the association is real."  Ex. 2 (Barnhart Tr. 105:14-16).  He also gave no meaningful answer as to why he excluded that study's results from Table 1

of his report. Ex. 2 (Barnhart Tr. 155:14-19) ("Generally speaking, because this table is generic for lots of studies, and that's one of the few -- I don't know. I just -- trying to put a lot of information in one table. I don't know why I didn't put it in.").

Dr. Barnhart also discounted the Xiao study, which he agreed showed a 48% increased risk of developing meningioma for people on Depo-Provera for less than two years; Dr. Barnhart speculated that it was "possible" that this risk was "driven by the risk for people from one to two years and not zero to one." Ex. 2 (Barnhart Tr. 161:15-162:1); *see* Ex. 6 (Xiao (2025)), which was Exhibit 10 to Dr. Barnhart's deposition). Picking a number based on speculation is not a methodology, reliable or otherwise. *See McDowell*, 392 F.3d at 1300-01 (holding that "testimony [that is] more of a guess than a scientific theory . . . simply fails the tests for expert opinion").

Notwithstanding one study showing an increased risk for patients taking Depo-Provera for less than a year and another showing an increased risk for patients taking the drug for less than two years, Dr. Barnhart stuck with his "theory" that "[o]ne year is probably in too short a time to have a significant change." Ex. 2 (Barnhart Tr. 166:13-21). This conclusion by Dr. Barnhart is unreliable, as he was unable to point to a single biological mechanism study supporting his conclusion, nor did he disclose any such studies within his report or his materials considered list, as required by Rule 26.

When considering the weight to give scientific evidence, an expert must "describe each step in the process by which he gathered and assessed the relevant scientific evidence." *Abilify*, 299 F. Supp. 3d at 1311 (citation omitted).

> To be considered reliable, the expert's weighing process must have been based on methods and procedures of science, rather than on subjective belief or unsupported speculation. Otherwise, the methodology amounts to nothing more than the expert's *ipse dixit*, which the Supreme Court has admonished district courts against admitting into evidence.

*Id.* (citing *Joiner*, 522 U.S. at 146; internal quotation marks omitted). But Dr. Barnhart identified no reason for excluding Griffin from his table summarizing results ("I don't know"), and his discounting of the Xiao evidence amounted to an unsupported "theory" – the epitome of *ipse dixit*. The Court should exclude this opinion.

## IV. DR. BARNHART'S OPINION THAT NO RELIABLE EVIDENCE EXISTED BEFORE 2024 IS IRRELEVANT TO GENERAL CAUSATION AND UNRELIABLE

Dr. Barnhart's admission that he did not consider and was not even aware of the biomechanism evidence from the 1990s showing progestins can cause meningiomas dooms his opinion that no reliable evidence of causation existed before 2024. *See supra* pp. 5-6. And Dr. Barnhart admitted that, "[i]n retrospect, there probably is evidence before Roland [Ex. 8 (Roland 2024)] that suggests that there are progesterone receptors on meningioma and that it's known before that that

progesterone can have a growth effect on nongynecologic tissues. So, I mean, that is known." Ex. 2 (Barnhart Tr. 124:21-125:9).

Beyond that point, however, this opinion should be excluded at this stage, because it has nothing to do with the general-causation inquiry: "whether a 'drug or chemical *can* cause the harm plaintiff alleges,' that is, whether a chemical agent 'increases the incidence of disease in a group.'" *Deepwater Horizon Belo Cases*, 2020 WL 6689212, at *8 (quoting *McClain*, 401 F.3d at 239) (emphasis in *McClain*). *When* the evidence of the causal association was published is irrelevant to that question. The Court should exclude it for purposes of a general-causation analysis.

## CONCLUSION

Plaintiffs' Motion to exclude the testimony of Dr. Kurt T. Barnhart should be granted.

Dated: April 22, 2026

/s/ *Christopher A. Seeger*
Christopher A. Seeger
(admitted *pro hac vice*)
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com

*Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Blonski*

David C. Frederick
(admitted *pro hac vice*)
Ariela M. Migdal
(admitted *pro hac vice*)
Jimmy A. Ruck
(admitted *pro hac vice*)
Kellogg, Hansen, Todd,
   Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
amigdal@kellogghansen.com
jruck@kellogghansen.com

Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
   Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Toney*

Ellen Relkin
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
erelkin@weitzlux.com

Michael A. Sacchet
(admitted *pro hac vice*)
Heather McElroy
(admitted *pro hac vice*)
Eli M. Temkin (*pro hac vice pending*)
Ciresi Conlin LLP
225 S. 6th Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 361-8220
Fax: (612) 314-4760
mas@ciresiconlin.com
hmm@ciresiconlin.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Schmidt*

*Co-Chairs Law & Briefing*

17

Tracy A. Finken, Esq.
Anapol Weiss
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
(215) 735-0773 (Direct Dial)
tfinken@anapolweiss.com

*Counsel for Plaintiff Valera-Arceo*

Virginia M. Buchanan
Levin, Papantonio, Proctor, Buchanan,
  O'Brien, Barr & Mougey, P.A.
316 South Baylen Street (32502)
P.O. Box 12308
Pensacola, FL 32591
Telephone: (850) 435-7023
vbuchanan@levinlaw.com

*Counsel for Plaintiff Wilson*

## LOCAL RULE 7.1(B) CERTIFICATION

**I HEREBY CERTIFY** that, pursuant to Local Rule 7.1(B), counsel for plaintiffs made a good-faith effort to resolve the issue addressed in this Motion by telephone conference with Pfizer's counsel on April 16, 2026. Pfizer opposes the relief sought by this Motion.

Dated:  April 22, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Toney*

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that the foregoing document complies with Local Rule 5.1(C) because it was prepared using Times New Roman 14-point font. This document also complies with Local Rule 7.1(F) because, excluding those portions of the document exempted by Local Rule 7.1(F), it does not exceed 8,000 words (3,712 words).

Dated:  April 22, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Toney*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 22nd day of April 2026, a true and correct copy of this **Motion and Memorandum of Law in Support of Motion to Exclude Testimony of Kurt Barnhart Pursuant to Federal Rule of Evidence 702 and Daubert** was filed electronically with the Clerk of Court and served upon all parties via CM/ECF.

Dated: April 22, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com
*Co-Lead Counsel for Plaintiffs and
Counsel for Plaintiff Toney*