# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

|  |  |
|---|---|
| IN RE: DEPO-PROVERA (DEPOT MEDROXYPROGESTERONE ACETATE) PRODUCTS LIABILITY LITIGATION | Case No. 3:25-md-3140 |
| This Document Relates to:<br>All Cases; including:<br>*Toney v. Pfizer*, No. 3:24-cv-624<br>*Schmidt v. Pfizer*, No. 3:25-cv-81<br>*Valera-Arceo v. Pfizer*, No. 3:25-cv-98<br>*Wilson v. Pfizer*, No. 3:25-cv-100<br>*Blonski v. Pfizer*, No. 3:25-cv-167 | Judge M. Casey Rodgers<br>Magistrate Judge Hope T. Cannon |

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXCLUDE TESTIMONY OF DR. CRAIG HORBINSKI PURSUANT TO FEDERAL RULE OF EVIDENCE 702 AND *DAUBERT*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................. ii

MOTION.................................................................................................................1

PRELIMINARY STATEMENT..............................................................................1

LEGAL STANDARD .............................................................................................2

ARGUMENT ..........................................................................................................4

    I.    Dr. Horbinski's Lack of Epidemiological Expertise Renders His Opinions that Rely on Epidemiological Literature Unreliable .......................................4

    II.    Dr. Horbinski's Opinions Lack an Adequate Scientific Foundation and Fail to Apply a Reliable Methodology....................................................................8

        A.  Dr. Horbinksi's opinion that meningioma risk is limited to "prolonged" Depo-Provera use lacks a reliable basis.......................................................8

        B.  Dr. Horbinski's opinion that meningioma growth ceases when the patient stops taking Depo-Provera is unreliable and unhelpful..............................11

        C.  Dr. Horbinski's opinion that meningioma risk is limited to a subset of intracranial tumors lacks a reliable basis ....................................................15

        D.  Dr. Horbinski's opinion that Depo-Provera cannot initiate meningiomas is unreliable .......................................................................................................16

        E.  Dr. Horbinski's opinion that no reliable evidence of the association between Depo-Provera and meningioma existed before 2023 is irrelevant to general causation and unreliable...........................................................18

CONCLUSION .....................................................................................................19

LOCAL RULE 7.1(B) CERTIFICATION

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

i

# TABLE OF AUTHORITIES

CASES                                                                                    Page

*Chapman v. Proctor & Gamble Dist., LLC*,
   766 F.3d 1296 (11th Cir. 2014) ................................................................ 3, 4, 18

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................ 1, 2, 3

*Davis v. Lockheed Martin Corp.*,
   705 F. Supp. 3d 1345 (M.D. Fla. 2023) ............................................................ 10

*Doctors Licensure Grp., Inc. v. Continental Cas. Co.*,
   2011 WL 13182969 (N.D. Fla. Sept. 26, 2011) ..................................................... 4

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) ...................................................................................... 4

*Hendrix ex rel. G.P. v. Evenflo Co.*,
   609 F.3d 1183 (11th Cir. 2010) .............................................................. 4, 11, 17

*In re Abilify (Aripiprazole) Prods. Liab. Litig.*,
   299 F. Supp. 3d 1291 (N.D. Fla. 2018) ..................................................... 1, 3, 4, 7

*In re Deepwater Horizon BELO Cases*,
   2022 WL 17734414 (N.D. Fla. Dec. 15, 2022) ................................................... 19

*In re Nuvaring Prods. Liab. Litig.*,
   2013 WL 791846 (E.D. Mo. Mar. 4, 2013) .......................................................... 7

*McClain v. Metabolife Int'l, Inc.*,
   401 F.3d 1233 (11th Cir. 2005) .................................................................. 13, 14

*Milward v. Acuity Specialty Prods. Grp., Inc.*,
   969 F. Supp. 2d 101 (D. Mass. 2013) ............................................................. 5, 7

*Rink v. Cheminova, Inc.*,
   400 F.3d 1286 (11th Cir. 2005) ................................................................... 2, 3

*United States v. Frazier*,
  387 F.3d 1244 (11th Cir. 2004) ..................................................................................4

RULES

Fed. R. Evid. 403 ..................................................................................... 4

Fed. R. Evid. 702 ..................................................................................Passim

Fed. R. Evid. 702(b)................................................................................. 8

Fed. R. Evid. 702(d)................................................................................. 4

## MOTION

Pursuant to Local Rule 7.1, Federal Rule of Evidence 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), Plaintiffs move to exclude the testimony of Dr. Craig Horbinski.

## PRELIMINARY STATEMENT

Depo-Provera can cause brain tumors, known as meningiomas. Pfizer's general-causation experts, including neuropathologist Dr. Craig Horbinski, concede it: "certain meningiomas do arise disproportionately, or come to clinical attention, at least, in the Depo-Provera exposed group." Ex. 1 (Horbinski Dep.) at 88:5-10; *see id.* at 22:14-19 (Q: "In reviewing [the] epidemiology, sir, you saw a repeated and consistent increased risk of meningioma or surgery related to meningioma with Depo-Provera exposure, correct?" A: "Yeah. Overall.").[1] That answers the question of "general causation—whether [Depo-Provera] is capable of causing" Plaintiffs' injuries. *In re Abilify (Aripiprazole) Prods. Liab. Litig.*, 299 F. Supp. 3d 1291, 1306 (N.D. Fla. 2018) (Rodgers, J.).

Notwithstanding his admissions, Dr. Horbinski tries to erect qualifiers and made-for-litigation limitations on the risk caused by Depo-Provera, but his opinions do not meet *Daubert's* reliability standards. To start, Dr. Horbinski's self-professed lack of epidemiological expertise and inability to engage with the epidemiological

---

[1] Referenced exhibits are to the Declaration of Heather M. McElroy, filed herewith.

1

literature make his opinions based on that literature unreliable and unhelpful. Beyond that, his opinions fail Rule 702 because they lack an adequate scientific foundation and fail to employ a reliable methodology. Dr. Horbinski ignores contrary studies and known biomechanistic evidence in favor of untested and speculative hypotheses. Further, Dr. Horbinski provides no reliable basis for his proposed general-causation qualifiers because, as the science demonstrates, they do not apply across the board to all Plaintiffs in the MDL.

The Court should exclude Dr. Horbinski's opinions that: (1) the increased meningioma risk is limited to "prolonged" use; (2) meningiomas stop growing once the drug leaves the bloodstream; (3) the increased meningioma risk is limited to a subset of intracranial tumors; (4) Depo-Provera can only grow, not initiate a meningioma; and (5) that the increased risk was first apparent in 2023.[2]

## LEGAL STANDARD

The analytical framework for determining whether expert testimony is admissible under Federal Rule of Evidence 702 is set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny. *Rink v.*

---

[2] An extensive discussion of the factual background underlying this litigation can be found in Dkt. 427, Plaintiffs' Memorandum in Support of Their Opposition to Pfizer Inc., Pharmacia LLC, and Pharmacia & Upjohn Co. LLC's Motion for Summary Judgment Based on Federal Preemption (filed Sept. 19, 2025). This motion assumes familiarity with the background on Depo-Provera and meningiomas.

*Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). "Expert testimony is reliable and relevant—and therefore, admissible—when the following criteria are met: (1) the expert is sufficiently qualified to testify about the matters he intends to address; (2) the methodology used is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue." *Abilify*, 299 F. Supp. 3d at 1304. The proponent of the expert testimony has the burden of showing, by a preponderance of the evidence, that each of these requirements is met. *Rink*, 400 F.3d at 1292.

To be qualified, the expert must have "sufficient knowledge, skill, experience, training, or education to form a reliable opinion about an issue that is before the court." *Abilify*, 299 F. Supp. 3d at 1305 (citation omitted).

To be reliable, "an expert's opinion must be based on scientifically valid principles, reasoning, and methodology that are properly applied to the facts at issue." *Id.* Reliability depends on "several factors, including: (1) whether the scientific technique can be or has been tested; (2) whether the theory or technique has been subjected to peer review or publication; (3) whether the technique has a known or knowable rate of error; and (4) whether the technique is generally accepted in the relevant community." *Id.* Opinion evidence "connected to existing data only by the *ipse dixit* of the expert" should be excluded. *Chapman v. Proctor & Gamble*

3

*Dist., LLC*, 766 F.3d 1296, 1305 (11th Cir. 2014). The "opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology." Fed. R. Evid. 702(d) advisory comm. note (2023). Opinions that lack a reliable factual basis or are not supported by the scientific literature may be excluded. *Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183, 1199 (11th Cir. 2010).

Finally, to be helpful, expert testimony must be relevant, in that it "logically advances a material aspect of the proposing party's case" and "fits" the disputed facts. *Abilify*, 299 F. Supp. 3d at 1305. Expert testimony does not "fit" when there is "too great an analytical gap" between the facts and the proffered opinion. *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 147 (1997). Even if expert testimony satisfies *Daubert* and Rule 702, it may still be excluded under Rule 403 if its probative value "is substantially outweighed by its potential to confuse or mislead the jury." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

## ARGUMENT

### I.    Dr. Horbinski's Lack of Epidemiological Expertise Renders His Opinions that Rely on Epidemiological Literature Unreliable

An expert must "ha[ve] sufficient knowledge, skill, experience, training, or education to form a reliable opinion." *Abilify*, 299 F. Supp. 3d at 1305. When an expert admits he lacks expertise in a discipline, the witness cannot provide opinion testimony in that area. *Doctors Licensure Grp., Inc. v. Continental Cas. Co.*, 2011 WL 13182969, at *4-5 (N.D. Fla. Sept. 26, 2011). A self-professed inability to

4

engage with the epidemiological literature disqualifies the witness from basing his opinions on it. *Milward v. Acuity Specialty Prods. Grp., Inc.*, 969 F. Supp. 2d 101, 112 (D. Mass. 2013).

Dr. Horbinski relies on epidemiological studies for several opinions, including his opinions that: (1) the increased risk of meningioma is limited to "prolonged" use; (2) Depo-Provera no longer promotes meningioma growth once a patient stops using it; and (3) "there was no reliable evidence of a statistically significant association between Depo-Provera use and meningiomas" until 2023. Ex. 2 (Horbinski Rpt.) at 3, 11; *see* Ex. 1 at 107:5-8 (agreeing there are "a lot of epidemiology opinions and references" in report). But when asked questions about the studies he cited in purported support of his opinions, Dr. Horbinski disclaimed relevant expertise and suggested Plaintiffs consult "somebody who *is an expert*." Ex. 1 at 103:23-104:6 (emphasis added), 107:2-8; *see id.* at 14:10-11, 22:8-13, 23:23-24:2, 128:1-2.

For example, Dr. Horbinski cited Roland for his opinion that only "prolonged" use of Depo-Provera can increase meningioma risk, but he could not state how many injections were needed to be "prolonged." *Id.* at 103:14-22. He responded: "Well, insofar as I'm not an epidemiologist, that level of granularity in these studies may be best handled by somebody who is an expert." *Id.* at 103:23-104:6. Regarding Griffin, he did not know if Griffin found a "safe duration of use": "That is getting a little too granular for my expertise. That might be best answered by an

5

epidemiologist." *Id.* at 118:17-21. And when asked to describe the effect of failing to control for race in Griffin (an issue he criticized), he responded "I'm afraid I'm just not qualified to know or answer that. I don't know." *Id.* at 120:9-21.

Plaintiffs' counsel was unable to interrogate the basis for Dr. Horbinski's opinions due to his lack of familiarity with epidemiological concepts. Dr. Horbinski could not evaluate the impact of confounding variables, *id.* at 24:15-21, define a "Type 2" error, *id.* at 130:18-23, identify a "point estimate," *id.* at 127:19-25, or answer whether a study was powered to look at individual slices, *id.* at 130:10-17. He struggled to explain straightforward epidemiological principles: Q: "And the findings of a study are generalizable to the population being studied, correct?" A: "My apologies but [it's] a question that I think a trained expert like an epidemiologist would best be able to answer." *Id.* at 213:18-214:3.

The extent to which Dr. Horbinski drafted his own report is not clear. He testified that counsel "edit[ed]" it and provided "formatting." *Id.* at 274:15-16. But apparently counsel did so in the same way they "edited" Dr. Jeyaretna's opinions—by copying and pasting the *same* sentences and the *same* typos. *Id.* at 272:8-273:2; Ex. 3 *comparing* Horbinski Rpt. at 33, *with* Jeyarenta Rpt. at 29.  Dr. Horbinski's and Dr. Jeyaretna's reports share dozens of other identical or near-identical sentences and opinions, particularly when describing the epidemology. *See* Ex. 3. During his deposition, Dr. Horbinski could not identify "what words" were his and "which ones

6

[we]ren't," given that it has "undergone a lot of iterations." *Id.* at 275:25-276:7.[3]

Although a non-epidemiologist may opine using epidemiology, some "specialized education and experience with epidemiology" is needed, *Abilify*, 299 F. Supp. 3d at 1354, and the expert should be able to explain the studies he cites. Dr. Horbinski's "professed inability to engage with" the "epidemiological literature makes [his] opinion based on that literature unreliable and unhelpful." *See Milward*, 969 F. Supp. 2d at 112; *see also Abilify*, 299 F. Supp. 3d at 1360 & n.150 (opinion of expert who when questioned said he "did not know" much about and "would not hold himself up as an expert" on the subject was not reliable); *In re Nuvaring Prods. Liab. Litig.*, 2013 WL 791846, at *4 (E.D. Mo. Mar. 4, 2013) (credentialed pharmacologist who disclaimed expertise in epidemiology could not "give expert testimony pertaining to epidemiology").

"Without the ability to explain how and why [certain] epidemiological literature . . . should be trusted over conflicting views," the expert opinion is not "arrived at in a scientifically sound and methodologically reliable fashion." *Milward*, 969 F. Supp. 2d at 112. Dr. Horbinski's opinions that rely on an assessment and

---

[3] Through late February 2026, Dr. Horbinski testified that he spent little more than *50 hours* total on this retention, purportedly searching for relevant literature, reading 600-plus pages of expert reports, reviewing at least 100 scientific articles, case reports, and other documents, and writing his report. Ex. 1 at 30:11-32:2.

interpretation of epidemiological literature should be excluded.[4]

## II.    Dr. Horbinski's Opinions Lack an Adequate Scientific Foundation and Fail to Apply a Reliable Methodology

The following opinions lack a factually and scientifically reliable basis and/or are not helpful and should be excluded under Rule 702 and *Daubert*.

### A.    Dr. Horbinksi's opinion that meningioma risk is limited to "prolonged" Depo-Provera use lacks a reliable basis

In his report, Dr. Horbinski concedes that contraception "containing progestins such as medroxyprogesterone acetate," i.e., Depo-Provera, "ha[s] been associated with an increased risk of meningioma." Ex. 2 at 10-11. He does not offer a standalone duration opinion, but rather, consistent with the established dose and duration-response relationship, explains that "[t]he risk [of meningioma] appears *to be higher* with prolonged[5] and/or high-dose exposure." *Id.* at 11; *see id.* at 19 ("The risk of meningioma increases with prolonged use[.]").

At his deposition, however, Dr. Horbinski inserted a duration qualifier,

---

[4] Dr. Horbinski should also be precluded from offering criticisms of Plaintiffs' experts (e.g., Ex. 2 at 14-18) because he admitted he did not even read Plaintiffs' expert reports "cover to cover." Ex. 1 at 33:10-23. Rule 702(b) requires that expert testimony be "based on sufficient facts or data," meaning evidence Dr. Horbinski *actually considered*. His failure to comprehensively review these opinions precludes him from offering opinions in opposition to them.

[5] Dr. Horbinski did not define "prolonged" in his report. At his deposition, he testified that "prolonged" use is over one year of continuous use. Ex. 1 at 46:18-22. "High-dose" refers to a single 150-milligram Depo-Provera shot. *Id.* at 39:3-10.

8

limiting meningioma risk to Depo-Provera use of one year or more. *See, e.g.*, Ex. 1 at 23:8-14. Dr. Horbinski cited three studies in purported support of his "prolonged" use opinion: Roland, Griffin, and Xiao. As discussed above, he disclaimed the ability to engage with these studies, disqualifying himself from offering an opinion based on them. Nevertheless, none of these studies supports his claims.

- Pinpointing Roland as establishing "prolonged" use, Dr. Horbinski did not know how many injections of Depo-Provera were needed for study inclusion. *Id.* at 103:23-104:6. He ignored that Roland made no findings regarding the subgroup of "short-term" users, Ex. 4 at 6, and professed surprise upon learning that Roland, which he heralded as "reliable evidence of the association between Depo-Provera and meningioma," Ex. 1 at 105:5-13, included persons who had taken only *a single shot* in the past year, *id.* at 104:22-24; Ex. 4 at 3.

- The same goes for Griffin (2024), which found a statistically significant increased meningioma risk from *any* use of the drug at *any* time prior to the meningioma diagnosis, including *a single shot*. Ex. 5 at 3, 5; Ex. 1 at 116:24-117:20, 119:15-19. Indeed, for Griffin, which unlike Roland was powered to evaluate the "short term" subgroup (i.e., had a sufficient sample size to detect a true effect), Dr. Horbinski agreed that it found a "statistically significant increased risk" between *less than one year of* Depo-Provera use and meningiomas. Ex. 1 at 118:10-13. Despite crediting the study's reliability, *id.* at 113:22-25, nowhere in his report does he

9

acknowledge this finding, much less try to distinguish it. Worse, he cites Griffin as reporting a "significantly increased risk in women with prolonged use of injectable MPA," Ex. 2 at 19, but *omits* that Griffin found a statistically significant increased risk for all duration of use subgroups, including short-term use. *See Davis v. Lockheed Martin Corp.*, 705 F. Supp. 3d 1345, 1351 (M.D. Fla. 2023) ("pick the studies that agree with you" and "ignore the ones that disagree with you" is "the definition of an unreliable 'it's true because I said so' opinion).

- That leaves Xiao, a 2025 study that Dr. Horbinski failed to substantively discuss in his report because he "missed it." Ex. 1 at 122:14-123:8. But again, Xiao's findings do not reliably support Dr. Horbinski's "prolonged' use opinion. Xiao in fact found a 48% increased risk of meningioma incidence with zero to two years of Depo-Provera use.  Ex. 6 at 4.

Perhaps Dr. Horbinski's misplaced reliance on these studies and his pattern of conveniently ignoring and "miss[ing]" study findings that disagree with his opinion (such as Griffin (2024) and Xiao) is understandable because, as he professed, he is not well-versed in epidemiology. But that does not excuse him; it only underscores the limits of his qualifications and highlights the unreliability of his methodology. *See Davis*, 705 F. Supp. 3d at 1351 ("process problems" with what expert "included and omitted from his report" required exclusion of opinion as unreliable).

Even worse, Dr. Horbinski's "prolonged" use qualifier is incompatible with

his own biomechanism testimony. Dr. Horbinski acknowledged Depo-Provera is "high-dose," Ex. 1 at 39:3-10, that one shot persists in the blood stream for months, *id.* at 100:5-10, and that progestin-sensitive meningioma cells grow in the presence of a progestin, *id.* at 232:14-19. The bio-mechanistic process he describes has no magical one-year lag period. Indeed, he concedes that any use of Depo-Provera poses a risk of meningioma, a risk that only "increases" with "prolonged" use. Ex. 2 at 19.[6] Dr. Horbinski has no reliable basis to tell the jury that a plaintiff must have taken Depo-Provera for one year or more for it to have a causal effect. *See Hendrix*, 609 F.3d at 1199 (opinion not supported by the scientific literature may be excluded).

**B.    Dr. Horbinski's opinion that meningioma growth ceases when the patient stops taking Depo-Provera is unreliable and unhelpful**

Dr. Horbinski seeks to testify that once a patient stops taking Depo-Provera and it exits the bloodstream, "it no longer exerts a growth-promoting effect on meningiomas." Ex. 2 at 3. This opinion rests on nothing more than his own say-so and should be excluded.

The paper-thin foundation for this opinion crumbled under questioning. At his deposition, Dr. Horbinski conceded that meningiomas (whether diagnosed or not) do not simply go away when the drug is stopped, acknowledging at least three

---

[6] *See* Ex. 1 at 173:19-24 (Q: "I mean, there [] could be a likelihood of it developing but it becomes greater and greater and more likely the longer you take it. That's what you have seen in the studies, right?" A: "That's what the data do seem to indicate, yes.").

possible outcomes: continued growth, stability, or partial regression. Ex. 1 at 154:6-10 ("some regress, some are stable, and *some grow*" (emphasis added)). There is no assurance of shrinkage, *id.* at 147:25-148:10, and for those that do regress, Dr. Horbinski was not aware of any study that showed the meningiomas "return[ed] to the pre-Depo-Provera" baseline or "went away." *Id.* at 147:25-148:10, 155:12-14.

Indeed, the same dechallenge studies that Dr. Horbinski cited to support his opinion on tumor shrinkage show that how tumors react upon cessation of Depo-Provera varies widely and, in some cases, the symptoms progress off the drug. For example, Dr. Horbinski cites Abou al Shaar, but based on a loss of study participants, only 50% of the tumors were known to have regressed, and the study did not indicate by how much. *Id.* at 153:9-154:5; Ex. 7. Nor did the study indicate whether the tumors in fact "remained problematic" for the patients. Ex. 1 at 155:16-19.

Voormolen revealed "different effects on different lesions:" 188 tumors shrank, 51 remained the same, and 13 grew. *Id.* at 164:15-24; Ex. 8 at 1. For three patients, *after* stopping cyproterone acetate ("CPA"), their symptoms progressed to the point that they required radiation. Ex. 1 at 166:20-24; Ex. 8 at 4. In Pozzati, a woman whose baseline MRI before taking Depo-Provera showed no evidence of a meningioma, was diagnosed with multiple meningiomas months *after* she ceased taking Depo-Provera, when she began having facial seizures. Ex. 1 at 157:23-159:13; Ex. 9 at 2. Weill found an 80% increased risk of a meningioma requiring

12

brain surgery one year *after* stopping CPA. Ex. 1 at 192:21-195:7; Ex.10 at 1, 6.

Dr. Horbinski ignored other relevant studies, including Pourhadi, a case-controlled study finding that exposure to menopausal hormone therapy "up to 10 years prior to diagnosis" was associated with an "increased risk" of developing a meningioma. Ex. 1 at 201:3-203:12; Ex. 11 at 11. And he acknowledged—but could not engage with—the "ever-never" studies that compare *never* having been exposed to Depo-Provera with *ever* having been exposed at any time prior to diagnosis. *Id.* at 210:11-211:9. Dr. Horbinski admitted the studies showed "marked elevated risks and significant findings" without *any* restriction on timing of exposure, *id.* at 211:10-15, but lacked expertise to draw conclusions about them, *id*. 213:14-214:3, 215:1-10.

Each of these studies undermines Dr. Horbinski's broad-based opinion that Depo-Provera does not pose off-drug risk, and in their totality, doom it. *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1247, 1255 (11th Cir. 2005) (excluding opinion where analysis of studies did not authorize it because "there is simply too great an analytical gap between the data and the opinion proffered"). Based on this literature, Dr. Horbinski cannot reliably conclude that only current or recent Depo-Provera use can cause plaintiffs' injuries.

Confronted with the litany of studies, Dr. Horbinski eventually backed off his opinion, conceding that "a subset of these meningiomas [referring to "progestin-sensitive meningiomas"] will continue, as you indicated, to grow and progress,

despite withdrawal of the progestin." Ex. 1 at 184:8-17. At the very least, and by his own admission, whether a tumor remains stable, regresses, or grows is patient-specific and cannot reliably support the across-the-board rule on off-drug risk that Dr. Horbinski offers as a qualifier to general causation.

Dr. Horbinski briefly (and unsuccessfully) sought to resuscitate his view by claiming that "meningiomas that continue to grow despite cessation of progestin therapy are likely those that were not influenced by progestins initially." Ex. 2 at 33. But he does not cite a single study, case report, published article, or experimental data to support this undocumented and untested "hypothesis." Ex. 1 at 167:18-24. All he had was his own circular logic: his "evidence" that tumors that grow were "progestin-independent from the get-go," is that "the tumors continued to grow after . . . the progestin was withdrawn." *Id.* at 167:5-11. But tumor biology does not compel that conclusion. Dr. Horbinksi agreed it is "biologically plausible" that a tumor that was once progestin-sensitive may no longer depend on progestins to grow. *Id.* at 169:11-18. His speculation and untested hypotheses do not provide a reliable opinion. *See McClain*, 401 F.3d at 1244 (the Court cannot "simply tak[e] the expert's word for it.").

For similar reasons, Dr. Horbinski's opinion is unhelpful and potentially misleading. *First*, his assertion that once Depo-Provera is removed, the meningioma can no longer grow, is not sufficiently reliable to apply to all Plaintiffs in the MDL.

14

Studies demonstrate, and Dr. Horbinski admits, that tumors behave differently in different patients and growth trajectories are not uniform. Ex. 1 at 154:6-10.

*Second*, even if the tumor did not continue to grow after cessation of Depo-Provera, that doesn't mean the patient wasn't injured. The meningioma did not disappear and remained capable of causing the injuries plaintiff sustained. *Id.* at 146:5-10 (agreeing patient may still have a "much bigger meningioma"); 184:8-17 ("a subset of these meningiomas [referring to "progestin-sensitive meningiomas"] will continue . . . to progress, despite withdrawal of the progestin").

*Third*, there is a real risk of misleading the jury. If Dr. Horbinski were permitted to tell the factfinder that meningiomas can only grow while the patient is on the drug, a layperson may reasonably assume that the patient is safe once Depo-Provera leaves the bloodstream—which is demonstrably false. Dr. Horbinski's opinion is unhelpful (and potentially misleading), and the Court should exclude it.

### C. Dr. Horbinski's opinion that meningioma risk is limited to a subset of intracranial tumors lacks a reliable basis

This qualification—that meningiomas caused by Depo-Provera are confined to the anterior skull base—is unreliable and should be excluded.

Dr. Horbinski could not identify one study limiting the observed risk to this (or any) subset of intracranial meningiomas. *Id.* at 44:4-9; *see also* 228:3-15 (Q: "Are you aware of any study that . . . characterize[s] the risk of Depo-Provera with regard to meningioma . . . as limited to only those meningiomas in the skull base?

15

A: "I do not recall that specific conclusion being drawn from any of the studies.") Nor could Dr. Horbinski identify any study that excluded non-anterior skull-based meningiomas when evaluating Depo-Provera's meningioma risk. *Id.* at 42:18-42:24. Eventually, Dr. Horbinski conceded that "the epidemiology studies . . . were holistic, insofar as they included assessment of meningiomas arising *everywhere in the central nervous system*," *id.* at 43:23-44:2 (emphasis added), and the study "end points" were meningioma diagnoses *without regard to location*, *id.* at 44:15-18.

Moreover, Dr. Horbinski agreed that, as a biological matter, progestin-sensitive meningioma tissue "in other parts" of the brain would also be "susceptible to meningioma growth in the presence of progestins." *Id.* at 56:12-18. He conceded that "if the meningioma was progestin-sensitive, then yes, it should be able to respond *wherever it is in the brain*." *Id.*; *see also id.* at 232:14-19.

After repeatedly cabining his causation opinion to a "subset" of intracranial tumors in the skull base, he finally relented: "I don't believe I ever said that the risk was exclusively limited to skull-based meningiomas." *Id.* at 225:21-23. Should Dr. Horbinski attempt to revive his opinion that meningioma risk from Depo-Provera is confined to a subset of intracranial tumors, he should be precluded from doing so.

### D. Dr. Horbinski's opinion that Depo-Provera cannot initiate meningiomas is unreliable

Although he concedes that Depo-Provera can cause meningioma growth, Dr. Horbinski opines that "there is no reliable scientific evidence that Depo-Provera is

16

capable of initiating meningiomas." Ex. 2 at 1. That opinion does not accurately reflect the scientific literature.

Multiple peer-reviewed publications and authors from respected journals (including some cited by Dr. Horbinski for other reasons) describe progestins as "initiating" meningiomas. *See, e.g.*, Ex. 12 at 4 (Peyre) ("This relationship between exogenous hormone use and multiple meningioma formation suggests a critical role of progestin to *induce the tumoral initiation* of multiple specific meningeal cells" (emphasis added)); Ex. 8 at 5 (Vermoolen) (Peyre "suggests that *progestin induces the initiation of tumors* from multiple meningeal cells" (emphasis added)); Ex. 13 at 6 (Samoyeau) ("Taken together, this reinforces the hypothesis of a critical *role of progestin intake in inducing tumoral initiation* of multiple specific meningeal cells in several locations." (emphasis added)). Indeed, Dr. Horbinski acknowledged that the "respected" Journal of Neuro-Oncology reported findings that progestins are "capable of inducing de novo meningiomas." Ex. 1 at 255:4-25.

Dr. Horbinski was forced to concede that with respect to Depo-Provera's role in initiating meningiomas "there is heterogeneity of opinion on the subject," Ex. 1 at 256:14-15, and could not name any publication stating that a "progestin can't be involved in tumoral initiation of meningioma cells," *id.* at 257:6-10. Dr. Horbinski's opinion does not comport with the scientific literature and should be excluded. *See Hendrix*, 609 F.3d at 1199.

17

Beyond that, a purported lack of evidence that Depo-Provera provides the *initial* spark for meningioma development is not relevant to general causation. Dr. Horbinski agrees that Depo-Provera can cause meningiomas to grow, regardless of whether it initiated a new meningioma or exacerbated an existing one. Ex. 1 at 57:7-17, 146:5-17. That demonstrates that Depo-Provera "has the potential to cause" Plaintiffs' injuries and thus establishes general causation. *Chapman*, 766 F.3d at 1306. As to a specific Plaintiff, a meningioma's origin, including whether it was initiated by Depo-Provera, might bear on how Depo-Provera caused injuries. Still, Dr. Horbinski's opinion does not reliably undercut general causation.

E. **Dr. Horbinski's opinion that no reliable evidence of the association between Depo-Provera and meningioma existed before 2023 is irrelevant to general causation and unreliable**

Dr. Horbinski did not apply a sound methodology—or any methodology at all—in reaching this opinion. As Dr. Horbinski recognized, opining on when the scientific literature provided reasonable evidence of a causal association requires a robust analysis of all "epidemiologic literature concerning Depo-Provera," including information dating back decades. *See* Ex. 2 at 3; Ex. 1 at 238:4-12 (acknowledging importance of considering "all of the studies" related to the drug's risks). But Dr. Horbinski demonstrated little familiarity with even the most recent epidemiological studies, let alone the universe. *See supra* Section I.

In his report, Dr. Horbinski did not critically evaluate individual studies.

18

Instead, he hand-picked categories of studies, Ex. 2 at 39-40, discussed them in the aggregate, *id.*, and, from there, drew unsubstantiated conclusions about the purported failure of "earlier investigations" to show a causal association, *id* at 3, 36. Tellingly, the report sections discussing the epidemiological literature track nearly verbatim the discussion in Dr. Jeyaretna's expert report, raising questions about who drafted them. Ex. 3, *comparing* Horbinski Rpt. 40-41, *with* Jeyaretna Rpt. 33-34.

Dr. Horbinski ignored key evidence from the early 2000s. *See, e.g.*, Ex. 14 at 19 (2004 Mayo Clinic study showing significant increased risk of meningioma from HRT); Ex. 15 at 3 (Wigertz (2006) finding significant association between injectable progestins and an increased risk of meningioma); Ex. 1 at 238:16-239:13, 245:6-17. Dr. Horbinski also categorically dismissed the Indonesian epidemiological studies, while conceding the studies had more exposed cases than Roland. *Id.* at 236:9-22.

Beyond that, this opinion should be excluded at this stage because it has nothing to do with general causation. The question before the Court is: "whether a drug or chemical *can* cause the harm plaintiff alleges." *In re Deepwater Horizon BELO Cases*, 2022 WL 17734414, at *4 (N.D. Fla. Dec. 15, 2022). *When* the evidence of the causal association was published is irrelevant to that inquiry.

## CONCLUSION

Plaintiffs' motion to exclude the testimony of Dr. Craig Horbinski should be granted.

Dated: April 22, 2026

/s/ *Christopher A. Seeger*
Christopher A. Seeger
(admitted *pro hac vice*)
Seeger Weiss LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: (973) 639-9100
cseeger@seegerweiss.com

*Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Blonski*

David C. Frederick
(admitted *pro hac vice*)
Ariela M. Migdal
(admitted *pro hac vice*)
Jimmy A. Ruck
(admitted *pro hac vice*)
Kellogg, Hansen, Todd,
  Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Telephone: (202) 326-7900
dfrederick@kellogghansen.com
amigdal@kellogghansen.com
jruck@kellogghansen.com

Michael A. Sacchet
(admitted *pro hac vice*)
Heather M. McElroy
(admitted *pro hac vice*)
Eli M. Temkin (*pro hac vice pending*)
Ciresi Conlin LLP
225 S. 6th Street, Suite 4000
Minneapolis, MN 55402
Telephone: (612) 361-8220
mas@ciresiconlin.com
hmm@ciresiconlin.com
emt@ciresiconlin.com

*Co-Chairs Law & Briefing*

Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
  Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Toney*

Ellen Relkin
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Telephone: (212) 558-5500
erelkin@weitzlux.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Schmidt*

20

Tracy A. Finken, Esq.
Anapol Weiss
One Logan Square
130 N. 18th Street
Suite 1600
Philadelphia, PA 19103
Telephone: (215) 735-1130
(215) 735-0773 (Direct Dial)
tfinken@anapolweiss.com

*Counsel for Plaintiff Valera-Arceo*

Virginia M. Buchanan
Levin, Papantonio, Proctor, Buchanan,
  O'Brien, Barr & Mougey, P.A.
316 South Baylen Street (32502)
P.O. Box 12308
Pensacola, FL 32591
Telephone: (850) 435-7023
vbuchanan@levinlaw.com

*Counsel for Plaintiff Wilson*

21

## LOCAL RULE 7.1(B) CERTIFICATION

I hereby certify that, pursuant to Local Rule 7.1(B), counsel for Plaintiffs made a good-faith effort to resolve the issue addressed in this Motion by telephone with Pfizer's counsel on April 16, 2026.  Pfizer opposes the relief sought by this Motion.

Dated:  April 22, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
    Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Toney*

## CERTIFICATE OF COMPLIANCE

**I HEREBY CERTIFY** that the foregoing memorandum complies with Local Rule 5.1(C) because it was prepared using Times New Roman 14-point font. This memorandum also complies with Local Rule 7.1(F) because, excluding those portions of the memorandum exempted by Local Rule 7.1(F), it contains 4,637 words.

Dated:  April 22, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
   Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Toney*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 22nd day of April 2026, a true and correct copy of this **Motion and Memorandum of Law in Support of Motion to Exclude Testimony of Craig Horbinski Pursuant to Federal Rule of Evidence 702 and Daubert** was filed electronically with the Clerk of Court and served upon all parties via CM/ECF.

Dated:  April 22, 2026

/s/ *Bryan F. Aylstock*
Bryan F. Aylstock
State Bar No. 078263
Aylstock, Witkin, Kreis &
  Overholtz, PLLC
17 East Main Street, Suite 200
Pensacola, FL 32502
Telephone: (850) 202-1010
baylstock@awkolaw.com

*Co-Lead Counsel for Plaintiffs and*
*Counsel for Plaintiff Toney*