# EXHIBIT B

THE DEPO PROVERA COMMON BENEFIT QUALIFIED SETTLEMENT FUND

# THE QUALIFIED SETTLEMENT FUND AGREEMENT

## ARTICLE I

## NAME AND PURPOSE OF THE CB FUND

1-1 Name. This Qualified Settlement Fund shall be known as the Depo Provera Common Benefit Qualified Settlement Fund (hereinafter "CB Fund," "CB Trust," or "CB QSF") and is intended to qualify as a Qualified Settlement Fund within the meaning of Section 468B of the United States Internal Revenue Code and United States Treasury Regulations §§ 1.468B-1 *et seq*. The CB Fund also constitutes a trust under Florida state law. The CB Fund shall be deposited a bank that is a federally insured depository institution ("Custody Bank").

1-2 Purpose. The purpose of the CB Fund is to accept, hold, and distribute attorneys' fees and expenses heldback/assessed from settlement proceeds which arise from alleged injuries and damages sustained by plaintiffs ("Claimants") to be paid from Pfizer, Inc. (hereinafter "Pfizer" or "Defendant") in consideration of the settlement of all claims relating to MPA Products, as defined in the Confidential Master Settlement Agreement ("MSA") with Claimants and Claimants' Counsel in the Program pursuant to Amended Common Benefit Order No. 1, Common Benefit Order No. 2, and future Court orders. Pfizer, Claimants, and Claimants' Counsel are each a "Party" and are collectively referred to as the "Parties." The settlement program created pursuant this Agreement is referred to herein as the "Program."

The legal entity known as a Qualified Settlement Fund is authorized under Section 468B of the Internal Revenue Code of 1986 (Title 26, United States Code), as amended ("IRC") and Income Tax Regulations ("Regulations") §§ 1.468B-1, *et seq.* This fund exists to resolve or satisfy the claims, actions, and lawsuits arising out of an alleged tort, or violation of law, as provided for in Regulations § 1.468B-1.

1-3 Duties. The duties of the administrator for the CB Fund are defined in this Agreement ("Agreement").

1-4 Government Authority. This Fund and its QSF Administrator remain under the continuing jurisdiction of the United States District Court, Northern District of Florida, Pensacola Division, and this Fund shall be administered and operated pursuant to this Agreement, the Order Approving the Establishment of the Depo Provera Qualified Settlement Fund (the "QSF Order") and the terms of the MSA and any other applicable Court orders.

## ARTICLE II

## PAYMENTS TO THE CB FUND

2-1 MDL Court Approval. The MDL Court approved the establishment of the CB Fund pursuant to IRC section 468B, United States Treasury Regulations §§ 1.468B-1 *et seq*. and the terms of this Agreement.

2-2 Payment. In accordance with the MSA or amendments thereto and the Court's Common Benefit Orders, Defendant shall deposit all heldback/assessed common benefit fees and expenses into the CB Fund as they become due. Those payments will be held by the CB Fund until disbursed to counsel for Claimants pursuant to future Court order.

2-3 No Further Obligation. Following the above contributions of settlement Proceeds to the CB Fund, Defendant shall not have any further obligation to contribute to the CB Fund. For the avoidance of doubt, Defendant shall not be liable for any losses or mismanagement of any Proceeds deposited in the CB QSF. The Claimants' Counsel, the QSF Administrator, and the Plaintiffs indemnify and hold harmless Defendant for all potential claims related to any Proceeds deposited into the CB QSF, including but not limited to any and all activity, losses, harm, or gains and Defendant cannot be liable for any activity related to Proceeds deposited into the CB QSF.

2-4 Nature of Contributions. All contributions to the CB Fund shall be made in immediately available funds as described in the MSA and pursuant to Amended Common Benefit Order No. 1, Common Benefit Order No. 2, and future Court orders. Contributions made to the CB Fund shall not be construed as fines, penalties, monetary sanctions, or punitive damages.

## ARTICLE III

## DISPOSITION OF THE CB FUND

3-1 Corpus of the CB Fund. The corpus of the CB Fund shall include all sums transferred to the CB Fund pursuant to the terms of the MSA or amendments thereto, Amended Common Benefit Order No. 1, Common Benefit Order No. 2, and future Court orders, and this Agreement.

3-2 Payment of Principal. Distributions of principal from the CB Fund shall be made solely in accordance with the terms of this Agreement and as authorized in the MSA with approval of the MDL Court.

3-3 No Authority to Conduct Business. The purpose of the CB Fund is limited to the matters set forth in Article III hereof, and this Agreement shall not be construed to confer on the QSF Administrator or CPA any authority to carry on any business or activity for profit.

3-4 Termination of the CB Fund. The CB Fund shall only terminate on Order of the MDL Court. Upon Order of the MDL Court, the QSF Administrator and CPA shall finalize distributions to Claimants, counsel for Claimants, Lienholders, and any other persons or entities entitled to share in such distributions, including amounts reasonably necessary and approved by the Claimants' Counsel to compensate the QSF Administrator and CPA and its professional agents for unpaid services and costs of administration, and any funds that may be reserved for the payment of taxes or outstanding charges or fees, upon termination of the CB Fund. Once the MDL Court has terminated the CB Fund, then the QSF Administrator and CPA are discharged from any further responsibility with respect to the CB Fund.

3-5 Amendments, Alterations, and Revocation. The CB Fund may be amended or altered

from time to time or revoked by an instrument in writing executed by the Lead Counsel for Claimants and the QSF Administrator and CPA upon approval by Order of the MDL Court; provided, however, that any such change does not affect (a) the qualification of the CB Fund as a Qualified Settlement Fund within the meaning of Section 468B of the United States Internal Revenue Code and United States Treasury Regulation 1.468B-1, or (b) the contemplated tax benefits to Defendant.

3-6 Allocation Plan and Distributions. Amended Common Benefit Order No. 1, Common Benefit Order No. 2, and future Court orders will set forth the distribution plan for common benefit fees and expenses from the CB Fund . The QSF Administrator shall distribute to the qualifying Common Benefit Counsel the amounts due and owing them from the CB Fund in accordance with the Court's Orders.

3-7 Interests in the CB Fund. No interest in this Fund may be assigned or transferred in any manner, unless approved in writing by the Claimants' Counsel and ordered by the MDL Court. In addition, such interests shall not be voluntarily or involuntarily subject to any type of encumbrance, to the maximum extent allowable by law. This shall include, but not be limited to, encumbrances associated with claims of any creditor (in or outside of bankruptcy or other insolvency statutory schemes) under any federal, state, or local laws. Any such interest, if any, shall be made available only upon termination of the CB Fund.

## ARTICLE IV

## ADMINISTRATOR MANAGEMENT

4-1 Initial Administrator. The initial Administrator of this CB Fund shall be Randall L. Sansom, C.P.A., P.A., 87 Baybridge Dr, Gulf Breeze, FL 32561 ("QSF Administrator" and MDL Court-Appointed Certified Public Accountant or "CPA"). The QSF Administrator and CPA is independent of the Parties, and are MDL Court appointed.

4-2 Investment of Trust Assets. The QSF Administrator is allowed to invest and reinvest the principal and income of the Trust Assets in such manner as is set forth in the Order establishing the QSF and any subsequent Court Orders. To the extent the QSF Administrator invests any funds in the manner provided for in this paragraph ("Eligible Investments"), Claimants' Counsel, Defendant, QSF Administrator, and CPA shall not be liable for any loss(es) which may be incurred by reason of any such investment (or reinvestment) including, but not limited to, loss(es) that occur due to decreases in account value as a result of negative yields on direct or indirect investments in Eligible Investments. Such funds should be invested such that the following investment policy is implemented, as appropriate: (i) safety of principal; (ii) zero bank balance exposure through use of custodial/trust accounts (to avoid the risk of bank deposit forfeiture); and (iii) zero sweep disbursement accounts; and (iv) only in direct US Treasury obligations maturing in no more than 6 months, recognized money market funds with assets of more than $10 billion, or short-term treasury funds or ETFs with assets of more than $10 billion.. In no instance will securities held pursuant to this agreement be lent or hypothecated. Upon receipt of directions to distribute funds,

the QSF Administrator may liquidate appropriate Fund investments and place the CB Funds in an FDIC-insured demand deposit account established with the Custody Bank, which shall be a zero-balance account used solely for the purpose of making distributions from the CB Fund.

4-2-1 Any and all earnings, interest, or other investment income realized on the investment of Trust Assets shall be allocated, at the direction of the QSF Administrator, first to pay applicable Taxes, if any, then Settlement and Trust Administration Costs, then to the CB Fund Beneficiaries (Common Benefit Counsel) if any excess earnings remain in the CB QSF.

4-2-2 In investing, reinvesting, exchanging, selling, and managing Trust Assets, the QSF Administrator must perform its duties solely in the interest of the CB Fund Beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent investor, acting in a like capacity and familiar with such matters, would exercise in the conduct of an enterprise of like character and with like aims.

4-2-3 To facilitate structured settlements, if any, the Fund, by and through the QSF Administrator, may purchase and assign structured settlements whether "qualified" or "non-qualified". Any "qualified" structured settlement shall be issued by a life insurance company that holds an issuer credit rating equivalent to a National Association of Insurance Commissioners NAIC 1 designation.

4-3 Creation of Sub-Accounts. In implementing the allocation and distribution plan pursuant to the MSA and/or in implementing the Court's Common Benefit Orders, the QSF Administrator may create Sub-Accounts within the CB QSF which shall, together with the CB Fund constitute a single qualified settlement fund within the meaning of the Internal Revenue Code § 468B and Treasury Regulations § 1.468B-1 *et seq.*_the CB Fund

4-4 Reporting to the MDL Court. The QSF Administrator shall provide quarterly reports to the Court, unless otherwise directed by the MDL Court. The CPA shall report to the MDL Court in writing with respect to any matter arising from the administration of the CB Fund that the QSF Administrator deems advisable to bring to the attention of the MDL Court or upon request of the MDL Court. The QSF Administrator shall create and maintain records of the CB QSF Administrator activities arising from this Agreement and any Orders of the MDL Court. The records shall be created and maintained in a manner that is ordinary and customary for the obligations imposed by any MDL Court Order, and this Agreement. Upon termination of the CB Fund, all privileged or otherwise protected records shall be maintained, returned destroyed or distributed as directed by the MDL Court.

## ARTICLE V

## EXPRESS POWERS OF QSF ADMINISTRATOR

Without in any way limiting the power and discretion conferred upon the QSF Administrator by the other provisions of this Agreement, the QSF Administrator is expressly

authorized and empowered as hereinafter set forth:

5-1 Payment of Administrative Expenses and Costs. As agreed and approved in writing by the MDL Court, the CPA shall pay charges, taxes and expenses imposed upon or incurred in connection with the administration of the CB Fund in the discharge of its obligations under this Agreement, including, without limitation, the fees and costs associated with investment advisors, accountants, agents, managers, attorneys, actuaries, auditors, or insurers, which are incurred to maintain and administer the CB Fund. All such payments shall be made from Fund assets.

5-2 Retention of Property. The CB Fund shall hold the property in the manner delineated in this Agreement. As agreed and approved in writing by Claimants' Counsel and ordered by the MDL Court, the QSF Administrator can hold a different type of property in the CB Fund than anticipated by this Agreement. If the MDL Court so orders such a holding, the QSF Administrator is not responsible for loss in the value of said holding (e.g. a transfer of a Bond to the CB Fund which is ordered held and interest rates move in a manner which cause a loss of principal).

5-3 Preservation of Principal. Notwithstanding any other provision in this Agreement, the QSF Administrator shall at all times hold and manage the assets of the CB Fund in a manner designed to preserve the principal of the CB Fund for the purposes set forth in this Agreement. QSF Administrator shall not be liable for any loss(es) which may be incurred by reason of the Federal Reserve bringing its benchmark rate into negative territory.

5-4 Grant of Powers Limited. The QSF Administrator shall not be empowered to dispose of the CB Fund for less than adequate and full consideration in money or money's worth unless expressly ordered by the MDL Court.

5-5 Retention of Investment Advisor and Other Consultants. The QSF Administrator has the power to engage the services of investment advisors, accountants, custodians, managers, attorneys, or other consultants or agents, as is reasonably necessary to assist with the management of investments and the administration of the CB Fund, subject to MDL Court approval. Payment for such services will be made from Fund assets and fees charged by any professionals engaged must be in agreement with average market rates for like-kind professional services rendered. The QSF Administrator are authorized to change the depository bank only with MDL Court approval.

5-6 Execution of Documents. The QSF Administrator has express authority to make, execute, acknowledge, and deliver any and all documents of transfer and conveyance. Such agreements may also include settlement agreements and qualified assignment agreements to effect settlements governed by IRC §§ 104(a)(2) and 130, as may be necessary or appropriate to carry out the powers herein granted or other assignments as ordered by the MDL Court.

5-7 Litigation. In coordination with and approval of the MDL Court, the QSF Administrator may initiate or defend, at the expense of the CB Fund and with notice to the Claimants' Counsel, any litigation relating to or affecting the CB Fund, or the QSF Administrator' obligations under the CB Fund, and to initiate or defend any litigation relating to the CB Fund, and to compromise, arbitrate, or otherwise adjust claims in favor of or against the CB Fund.

5-8 Compliance with Law. The QSF Administrator is empowered to comply with all requirements imposed by applicable law, rule, or regulation in conformity with the QSF Order and this Agreement.

5-9 Discretion in Exercise of Power. Subject to the QSF Order, the QSF Administrator may do any other acts it deems proper to effectuate the purpose hereof and to exercise the powers specifically conferred upon it by this Agreement.

5-10 Modification of This Agreement. The QSF Administrator shall be empowered to petition the MDL Court for modification of the Articles of this Agreement (including Attachments hereto) if the QSF Administrator determines that such modifications are necessary to conform to legal, tax, or administrative requirements.

## ARTICLE VI

## ADVICE OF COUNSEL

The QSF Administrator may from time to time consult with counsel with respect to any question arising as to compliance with this Agreement. The QSF Administrator shall be fully protected, to the extent permitted by law in acting in reliance upon the advice of counsel.

## ARTICLE VII

## SUCCESSOR QSF ADMINISTRATOR

7-1 Vacancy Caused by Resignation or Removal. The QSF Administrator may resign at any time only upon MDL Court approval. Such resignation shall become effective upon the written acceptance of the appointment of a successor QSF Administrator and Order of the MDL Court. The Claimants' Counsel, subject to approval by the MDL Court, shall have the power to appoint a successor QSF Administrator. If a successor QSF Administrator is not appointed within sixty (60) days, the QSF Administrator shall have the power to petition the MDL Court to appoint its successor. All of the QSF Administrator's fees and expenses (including reasonable attorneys' fees) attributable to the appointment of a successor QSF Administrator may be paid by the CB Fund, if approved by the MDL Court. Any successor QSF Administrator shall have the same powers, authorities, and discretions as though originally named as the QSF Administrator.

7-2 Acceptance of Appointment by Successor QSF Administrator. Acceptance of appointment as a successor QSF Administrator shall be in writing and shall become effective upon Order by the MDL Court. Each successor QSF Administrator shall have all the rights, powers, duties, authority, and privileges as if initially named as a QSF Administrator hereunder.

7-3 Preservation of Record of Changes to QSF Administrator. A copy of each instrument of resignation, removal, appointment, and acceptance of appointment shall be attached to an executed counterpart of this Agreement in the custody of the MDL Court.

ARTICLE VIII

INDEMNIFICATION

Each QSF Administrator, whether initially named or appointed as a successor QSF Administrator, acts as a QSF Administrator and not personally. With respect to any contract, obligation, or liability made or incurred by the QSF Administrator in good faith, while the QSF Administrator is complying with the terms of this QSF Agreement, the prudent investor rule, or any valid MDL Court order, all persons shall look solely to the CB Fund and not to the QSF Administrator personally. The QSF Administrator shall not incur any liability, personal or corporate, of any nature in connection with any act or omission of the QSF Administrator in the administration of the CB Fund or otherwise pursuant to this QSF Agreement unless the QSF Administrator commits fraud, acts negligently, or otherwise breaches a term of appointment. The QSF Administrator initially named, and any successor QSF Administrator shall be indemnified and held harmless by the CB Fund, so long as the QSF Administrator comply with the terms of this QSF Agreement, the prudent investor rule, and any valid MDL Court Order. This indemnification and hold-harmless provision shall cover all expenses reasonably incurred by such QSF Administrator in defense of the aforementioned acts or omissions of the QSF Administrator, after application and approval of the MDL Court.

ARTICLE IX

CHOICE OF LAW

This agreement has been created and accepted by the QSF Administrator and this Agreement's validity, construction, and interpretation, and the rights created hereunder, shall be governed by the laws of the State of Florida.

ARTICLE X

INTERPRETATION

As used in this Agreement, words in the singular include words in the plural and words in the plural include the singular, and the masculine and neuter genders shall be deemed to include the masculine, feminine, and neuter. The descriptive headings for each article of this Agreement shall not affect the interpretation or legal efficacy of this Agreement. It is agreed that neither the act of entering into this Agreement nor any contribution to the CB Fund nor any action taken under this Agreement shall be deemed to constitute an admission of any liability or fault on the part of the Administrator or Defendant, nor does it continue a commitment or agreement, either express or implied, by any or all of them to undertake any further activities outside the scope of this Agreement.

ARTICLE XI

SEPARATE DOCUMENTS

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Each provision in this Agreement is valid and severable and enforceable to the fullest extent permitted by law.

ARTICLE XII

TAX ISSUES

12-1 Generally. The parties intend that the CB Fund shall be a Qualified Settlement Fund under IRC § 468B and United States Treasury Regulations §§ 1.468B-1, *et seq*. No Transferor shall make the grantor trust election for the CB Fund, under United States Treasury Regulations Section 1.468B-1(k). The QSF Administrator shall take no actions that are inconsistent with the CB Fund's status as a Qualified Settlement Fund under Section 468B of the Internal Revenue Code, 26 U.S.C. Section 468B, and the Regulations promulgated pursuant thereto and codified at 26 C.F.R. Sections 1.468B-1 through 1.468B-5. Further, the QSF Administrator may petition the MDL Court to amend, either in whole or in part, any administrative Article of this Agreement, which causes unanticipated tax consequences or liabilities inconsistent with the foregoing. Each Defendant shall be classified as a "transferor" within the meaning of Regulation Section 1.468B-1(d)(1), 26 C.F.R. Section 1.468B-1(d)(1). The QSF Administrator shall be classified as the "administrator" within the meaning of Regulation Section 1.468B-2(k)(3), 26 C.F.R. Section 1.468B-2(k)(3).

It is further intended that all transfers to the CB Fund will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Internal Revenue Code, 26 U.S.C. Section 461(h)(1), and Regulation Section 1.461-1(a)(2), 26 C.F.R. Section 1.461-1(a)(2). As such, Defendant shall not be taxed on the income of the CB Fund. The CB Fund shall be taxed on its modified gross income. In computing the CB Fund's modified gross income, deductions shall be allowed for, *inter alia*, administrative costs and other incidental deductible expenses incurred in connection with the operation of the CB Fund, including, without limitation, state and local taxes, and legal, accounting, and actuarial fees relating to the operation of the CB Fund. All such computations of the CB Fund's modified gross income, as well as any exclusions or deductions thereto, shall be compliant and consistent with Treasury Regulation Section 1.468B-2(b)(1)-(4), 26 C.F.R. Section 1.468B-2(b)(1)-(4). The QSF Administrator shall pay all taxes and associated expenses with those taxes from the CB Fund without the need of a MDL Court Order.

The CB Fund shall be treated as a Qualified Settlement Fund from the earliest date possible, and the QSF Administrator and Defendant shall fully cooperate in filing a relation-back election under Treasury Regulation Section 1.468B-1(j)(2), 26 C.F.R. § 1.468B-1(j)(2), to treat the CB Fund as a qualified settlement fund as of the earliest possible date.

12-2 Tax Preparation, Reporting, and Withholding Requirements. The QSF Administrator shall cause to be filed, on behalf of the CB Fund, all required federal, state, and local tax returns

in accordance with the provisions of Treasury Regulation Section 1.468B-2(k), 26 C.F.R. Section 1.468B-2(k). Furthermore, in accordance with the provisions of Treasury Regulation Section 1.468B-2(l), 26 C.F.R. Section 1.468B-2(l), the QSF Administrator shall cause to be filed all required federal, state, and local information returns and ensure compliance with withholding requirements. The QSF Administrator may retain independent, certified public accountants to consult with and advise the Administrator with respect to the preparation of any and all appropriate income tax returns, information returns, or compliance withholding requirements. Defendant (or some other person on behalf of Defendant) shall supply to the QSF Administrator and to the Internal Revenue Service the statement described in Treasury Regulation Section 1.468B-3(e)(2), 26 C.F.R. Section 1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which Defendant make a transfer to the CB Fund. The QSF Administrator shall, upon request, prepare and deliver to Defendant and the Claimants' Counsel, within ten days of any such request, financial statements for the CB Fund, including receipts and disbursements and earnings.

12-3 Savings Provision. Notwithstanding anything herein to the contrary, in the event that any portion of this Agreement shall at any time be considered not to be in compliance with Internal Revenue Code Section 468B, as amended, together with any and all Treasury Regulations and Internal Revenue Service Notices, Announcements and directives thereunder, such offending Article of this Agreement shall be considered null, void, and of no effect, without any action by any court or by the QSF Administrator. The overarching purpose of this Agreement is to create a qualified settlement fund that is at all times in compliance with Internal Revenue Code Section 468B and all administrative authority and announcements thereunder. In the event that this Section 13-3 applies to render an offending Section null, void, or of no effect, the remainder of this Agreement shall not be affected thereby, and each remaining term and Section of the Agreement shall be valid and enforced to the fullest extent permitted by law.

## ACCEPTANCE OF FUND

Randall L. Sansom, C.P.A., P.A., named as the QSF Administrator of the Depo Provera Qualified Settlement Fund, accepts this appointment and the assets to be transferred to the CB Fund to be held, administered and distributed as provided in this Agreement.

WITNESS the execution hereof of the QSF Administrator on this 26th day of October 2026.

By: /s/
Randall L. Sansom, C.P.A., P.A.

Approved on behalf of Lead Counsel for Claimants

/s/
Christopher A. Seeger